UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 16-cv-61511-WJZ

| | |
|---|---|
| CAROL WILDING; STANLEY RIFKEN; SHARON CRAWFORD; WILLIAM SCOTT FRANZ; DAVID PULASKI; MARY JASMINE WELCH; JOSE ALBERTO GONZALEZ; JANE ELLEN PLATTNER; KIM MARIE HOULE; TIMOTHY BINGEN; SUSAN REED; ANGELA MONSON; AIMEE R. COLEMAN; ELESHA SNYDER; MATTHEW SHAW; ZACHARY JAMES HANEY; ESTRELLA GONZALEZ; CATHERINE G. CYKO; LAURA GENNA; MARIANNE BLAIR; TAMARA L. JOHNSTON; VALERIE ELYSE RASCH; BRETT TEEGARDIN; DANIEL O'MEARA; PEGGY LEW; DANIEL J. REYNOLDS; BRENDA LEE SMITH; MARLOWE ST. CLOUD PRIMACK; PATRICIA D. CASSIDY; BRITTANY R. MUSICK; HARRIS BIERHOFF; FELICIA MICHELLE TAYLOR; SUSAN L. SINGER; KYLE G. BRAUND; LAUREN HALE; WILLIAM CRANDALL; KIRSTEN HURST; DUFFY ROBERT WEISS; CONNIE ANDERSON; GREGORY WITKOWSKI; ELIZABETH FIGUEROA; BRANDY KINCAID; KIMBERLY ALBERTS; RACHEL RODERICK; LAURA MICHELLE VAUGHN; LISA GALE; TAMMY DEITCH-COULTER; KAYITE ASHCRAFT; ALECIA R. DAVIS; DOMINIC RONZANI; LUKE GRIM; ROSALIE CONSIGLIO; EDWIN LUGO; HEATHER DADE; MICHAEL S. REED; RHIANNON CRANDALL; RYAN GHAN; LISA SETTLE; YALONDA DYE COOPER; DANIEL S. COOPER; MATTHEW JOSEPH BRADY; ANDREW ROUSSEAU; SUSAN CATTERALL; JULIE | FIRST AMENDED COMPLAINT – CLASS ACTION  DEMAND FOR JURY TRIAL |

1

HAMPTON; CHRIS BUBB; ERIK
FURREBOE; ZEKE SHAW; BENJAMIN
ILARRAZA; LUCILLE GROOMS;
CHRISTINE MAIURANO; LEWIS L.
HUMISTON, IV; JOHN LYNCH; JAMES
SIMON; LESTER JOHN BATES, III;
JEFFREY GOLDBERG; RICK WASHIK;
RICHARD BOOKER; KARLIE COLE;
ERICH SPARKS; PRABU
GOPALAKRISHNAN; CARLOS
VILLAMAR; CAROLYN JACOBSON;
DAN ELLIS DUDLEY; LISA ANNE
MENEELY; D.J. BUSCHINI; RAYMOND
D. MAXWELL; DAVID L. MEULI;
KENNETH E. PUCKETT; DAVID N.
PYLES; CYNTHIA T. CHAN; STEFANIE
BIRDSONG; AMBER RAE KNOWLTON;
TIMO A. JOHANN; JEFF ROGERS;
HEATHER JORDAN; RANA KANGAS-
KENT; SUSAN FRISBIE; BAKH INAMOV;
THEDA LARSON-WRIGHT; KIRSTEN
HOFFMAN; ANTHONY GRUDIN; BRUCE
BUSTO; SUZANNE M. CORK; EMMA L.
YOUNG; SEAN LYNCH; SHERRY DAVIS;
NANCY BERNERS-LEE; PHYLLIS
CRIDDLE; MELISSA LIANG; JOSEPH
GLEASON; GRETA MICKEY; DIANE
EMILY DREYFUS; KATHLEEN L.
DODGE; CATHERINE WILLOTT;
TRISTAN BURGENER; ERIK MICHAEL
FERRAGUT; VINCENT CAUCHI; JOSEPH
CALLAN; MARK BEDARD; BARBARA
BOWEN; STEVE PHILIPP; SUSAN
PHILLIPS; RICHARD J. BOYLAN; TERI
MONACO; TUKOI JARRETT; ANNMARIE
WILSON; ANDREW ORRINO; CRAIG
CURRIER; JARATH HEMPHILL; GEORGE
THOMAS; REBECCA WHITE-HAYES;
ALAINA TALBOY; SARAH LOPEZ;
ELIZA FEERO; REBECCA HOHM; GAYLE
A. HARROD; ERIKA SITZER; STEPHEN
HOUSEKNECHT; DIANE ROBINSON; JEN
BETTERLEY; AMALIE DUVALL; JOHN
CROWE; CARL MILLER; SUSAN
ROPPEL; DIANA FLORES; JULIANNA
SEYMOUR; MELISSA MARCOTTE;

DANIELLE INGRASSIA; ALETTE
PRICHETT; and TORSHA CHILDS,
individually, and on behalf of all those
similarly situated,

      Plaintiffs,

vs.

DNC SERVICES CORPORATION, d/b/a
DEMOCRATIC NATIONAL COMMITTEE;
and DEBORAH "DEBBIE" WASSERMAN
SCHULTZ,

      Defendants.

PLAINTIFFS CAROL WILDING; STANLEY RIFKEN; SHARON CRAWFORD;

WILLIAM SCOTT FRANZ; DAVID PULASKI; MARY JASMINE WELCH; JOSE

ALBERTO GONZALEZ; JANE ELLEN PLATTNER; KIM MARIE HOULE; TIMOTHY

BINGEN; SUSAN REED; ANGELA MONSON; AIMEE R. COLEMAN; ELESHA SNYDER;

MATTHEW SHAW; ZACHARY JAMES HANEY; ESTRELLA GONZALEZ; CATHERINE

G. CYKO; LAURA GENNA; MARIANNE BLAIR; TAMARA L. JOHNSTON; VALERIE

ELYSE RASCH; BRETT TEEGARDIN; DANIEL O'MEARA; PEGGY LEW; DANIEL J.

REYNOLDS; BRENDA LEE SMITH; MARLOWE ST. CLOUD PRIMACK; PATRICIA D.

CASSIDY; BRITTANY R. MUSICK; HARRIS BIERHOFF; FELICIA MICHELLE TAYLOR;

SUSAN L. SINGER; KYLE G. BRAUND; LAUREN HALE; WILLIAM CRANDALL;

KIRSTEN HURST; DUFFY ROBERT WEISS; CONNIE ANDERSON; GREGORY

WITKOWSKI; ELIZABETH FIGUEROA; BRANDY KINCAID; KIMBERLY ALBERTS;

RACHEL RODERICK; LAURA MICHELLE VAUGHN; LISA GALE; TAMMY DEITCH-

COULTER; KAYITE ASHCRAFT; ALECIA R. DAVIS; DOMINIC RONZANI; LUKE GRIM;

ROSALIE CONSIGLIO; EDWIN LUGO; HEATHER DADE; MICHAEL S. REED;

RHIANNON CRANDALL; RYAN GHAN; LISA SETTLE; YALONDA DYE COOPER;

DANIEL S. COOPER; MATTHEW JOSEPH BRADY; ANDREW ROUSSEAU; SUSAN

CATTERALL; JULIE HAMPTON; CHRIS BUBB; ERIK FURREBOE; ZEKE SHAW;

BENJAMIN ILARRAZA; LUCILLE GROOMS; CHRISTINE MAIURANO; LEWIS L.

HUMISTON, IV; JOHN LYNCH; JAMES SIMON; LESTER JOHN BATES, III; JEFFREY

GOLDBERG; RICK WASHIK; RICHARD BOOKER; KARLIE COLE; ERICH SPARKS;

PRABU GOPALAKRISHNAN; CARLOS VILLAMAR; CAROLYN JACOBSON; DAN

ELLIS DUDLEY; LISA ANNE MENEELY; D.J. BUSCHINI; RAYMOND D. MAXWELL;

DAVID L. MEULI; KENNETH E. PUCKETT; DAVID N. PYLES; CYNTHIA T. CHAN;

STEFANIE BIRDSONG; AMBER RAE KNOWLTON; TIMO A. JOHANN; JEFF ROGERS;

HEATHER JORDAN; RANA KANGAS-KENT; SUSAN FRISBIE; BAKH INAMOV;

THEDA LARSON-WRIGHT; KIRSTEN HOFFMAN; ANTHONY GRUDIN; BRUCE BUSTO;

SUZANNE M. CORK; EMMA L. YOUNG; SEAN LYNCH; SHERRY DAVIS; NANCY

BERNERS-LEE; PHYLLIS CRIDDLE; MELISSA LIANG; JOSEPH GLEASON; GRETA

MICKEY; DIANE EMILY DREYFUS; KATHLEEN L. DODGE; CATHERINE WILLOTT;

TRISTAN BURGENER; ERIK MICHAEL FERRAGUT; VINCENT CAUCHI; JOSEPH

CALLAN; MARK BEDARD; BARBARA BOWEN; STEVE PHILIPP; SUSAN PHILLIPS;

RICHARD J. BOYLAN; TERI MONACO; TUKOI JARRETT; ANNMARIE WILSON;

ANDREW ORRINO; CRAIG CURRIER; JARATH HEMPHILL; GEORGE THOMAS;

REBECCA WHITE-HAYES; ALAINA TALBOY; SARAH LOPEZ; ELIZA FEERO;

REBECCA HOHM; GAYLE A. HARROD; ERIKA SITZER; STEPHEN HOUSEKNECHT;

DIANE ROBINSON; JEN BETTERLEY; AMALIE DUVALL; JOHN CROWE; CARL

MILLER; SUSAN ROPPEL; DIANA FLORES; JULIANNA SEYMOUR; MELISSA

MARCOTTE; DANIELLE INGRASSIA; ALETTE PRICHETT; and TORSHA CHILDS (collectively, "Plaintiffs"), individually and on behalf of all those similarly situated, by and through undersigned counsel, hereby sue Defendants, DNC SERVICES CORPORATION d/b/a DEMOCRATIC NATIONAL COMMITTEE and DEBORAH "DEBBIE" WASSERMAN SCHULTZ (collectively, "Defendants"), and allege the following:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. §1332(d), as amended in February 2005 by the Class Action Fairness Act.  Alternatively, this Court has original jurisdiction under 28 U.S.C. §1332(a).  Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed classes are citizens of a state different from that of Defendants.  Personal jurisdiction is proper as both Defendants have purposefully availed themselves of the privilege of conducting business activities within this District, and Defendant, Deborah "Debbie" Wasserman Schultz resides in and is a Congresswoman representing portions of this District.  Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because both Defendants are deemed to reside in this District and under 28 U.S.C. §1391(b)(2) because both Defendants conduct business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## THE PARTIES AND CERTAIN RELEVANT NON-PARTIES

### Plaintiffs

2.      Plaintiff Carol Wilding ("Wilding") is a resident of Pompano Beach, Florida.  She contributed a total of $445.50 to Bernie Sanders' presidential campaign via ActBlue.

3.      Plaintiff Stanley Rifken ("Rifken") is a resident of New York, New York.  He contributed a total of $552.00 to Bernie Sanders' presidential campaign via ActBlue.

4.      Plaintiff Sharon Crawford ("Crawford") is a resident of Ashville, North Carolina. She contributed a total of $600.00 to Bernie Sanders' presidential campaign via ActBlue.

5.      Plaintiff William Scott Franz ("Franz") is a resident of Costa Mesa, California. He contributed a total of $2,447.00 to Bernie Sanders' presidential campaign via ActBlue.

6.      Plaintiff David Pulaski ("Pulaski") is a resident of Houston, Texas.  He contributed a total of $254.10 to Bernie Sanders' presidential campaign via ActBlue.

7.      Plaintiff Mary Jasmine Welch ("Welch") is a resident of Portland, Oregon.  She contributed a total of $2,447.00 to Bernie Sanders' presidential campaign via ActBlue.

8.      Plaintiff Jose Alberto Gonzalez ("J. Gonzalez") is a resident of Pharr, Texas.  He contributed a total of $25.00 to Bernie Sanders' presidential campaign via ActBlue.

9.      Plaintiff Jane Ellen Plattner ("Plattner") is a resident of Golden, Colorado.  She contributed a total of $1,700.00 to Bernie Sanders' presidential campaign via ActBlue.

10.      Plaintiff Kim Marie Houle ("Houle") is a resident of Brooklyn, Connecticut.  She contributed a total of $445.00 to Bernie Sanders' presidential campaign via ActBlue.

11.      Plaintiff Timothy Bingen ("Bingen") is a resident of Minot, North Dakota.  He contributed a total of $379.00 to Bernie Sanders' presidential campaign via ActBlue.

12.      Plaintiff Susan Reed ("S. Reed") is a resident of Rockville, Maryland.  She contributed a total of $1,289.00 to Bernie Sanders' presidential campaign via ActBlue.

13.      Plaintiff Angela Monson ("Monson") is a resident of Dassel, Minnesota.  She contributed a total of $350.00 to Bernie Sanders' presidential campaign via ActBlue.

14.     Plaintiff Aimee R. Coleman ("Coleman") is a resident of Chattanooga, Tennessee. She contributed a total of $2,544.13 to Bernie Sanders' presidential campaign via ActBlue.

15.     Plaintiff Elesha Snyder ("Snyder") is a resident of Dayton, Ohio.  She contributed a total of $365.50 to Bernie Sanders' presidential campaign via ActBlue.

16.     Plaintiff Matthew Shaw ("M. Shaw") is a resident of Leawood, Kansas.  He contributed a total of $222.00 to Bernie Sanders' presidential campaign via ActBlue.

17.     Plaintiff Zachary James Haney ("Haney") is a resident of Roxbury, Massachusetts. He contributed a total of $91.50 to Bernie Sanders' presidential campaign via ActBlue.

18.     Plaintiff Estrella Gonzalez ("E. Gonzalez") is a resident of Fostoria, Ohio.  She contributed a total of $5.00 to Bernie Sanders' presidential campaign via ActBlue.

19.     Plaintiff Catherine G. Cyko ("Cyko") is a resident of Aurora, Illinois.  She contributed a total of $1,156.00 to Bernie Sanders' presidential campaign via ActBlue.

20.     Plaintiff Laura Genna ("Genna") is a resident of Bloomfield, New Jersey.  She contributed a total of $87.80 to Bernie Sanders' presidential campaign via ActBlue.

21.     Plaintiff Marianne Blair ("Blair") is a resident of Chicago, Illinois.  She contributed a total of $2,669.50 to Bernie Sanders' presidential campaign via ActBlue.

22.     Plaintiff Tamara L. Johnston ("Johnston") is a resident of Ozark, Missouri.  She contributed a total of $87.00 to Bernie Sanders' presidential campaign via ActBlue.

23.     Plaintiff Valerie Elyse Rasch ("Rasch") is a resident of Genoa City, Wisconsin. She contributed a total of $47.00 to Bernie Sanders' presidential campaign via ActBlue.

24.     Plaintiff Brett Teegardin ("Teegardin") is a resident of Woodinville, Washington. He contributed a total of $192.00 to Bernie Sanders' presidential campaign via ActBlue.

25.    Plaintiff Daniel O'Meara ("O'Meara") is a resident of Laconia, New Hampshire. He contributed a total of $153.00 to Bernie Sanders' presidential campaign via ActBlue.

26.    Plaintiff Peggy Lew ("Lew") is a resident of Renton, Washington.  She contributed a total of $480.00 to Bernie Sanders' presidential campaign via ActBlue.

27.    Plaintiff Daniel J. Reynolds ("Reynolds") is a resident of Fort Smith, Arkansas. He contributed a total of $182.81 to Bernie Sanders' presidential campaign via ActBlue.

28.    Plaintiff Brenda Lee Smith ("Smith") is a resident of Tallahassee, Florida.  She contributed a total of $4.00 to Bernie Sanders' presidential campaign via ActBlue.

29.    Plaintiff Marlowe St. Cloud Primack ("Primack") is a resident of Mountain View, California.  She contributed a total of $1,082.58 to Bernie Sanders' presidential campaign via ActBlue.

30.    Plaintiff Patricia D. Cassidy ("Cassidy") is a resident of Blandon, Pennsylvania. She contributed a total of $1,036.00 to Bernie Sanders' presidential campaign via ActBlue.

31.    Plaintiff Brittany R. Musick ("Musick") is a resident of Bremen, Georgia.  She contributed a total of $19.00 to Bernie Sanders' presidential campaign via ActBlue.

32.    Plaintiff Harris Bierhoff ("Bierhoff") is a resident of Brentwood, California.  He contributed a total of $215.00 to Bernie Sanders' presidential campaign via ActBlue.

33.    Plaintiff Felicia Michelle Taylor ("Taylor") is a resident of West Valley City, Utah.  She contributed a total of $82.00 to Bernie Sanders' presidential campaign via ActBlue.

34.    Plaintiff Susan L. Singer ("Singer") is a resident of Niles, Illinois.  She contributed a total of $223.00 to Bernie Sanders' presidential campaign via ActBlue.

35.    Plaintiff Kyle G. Braund ("Braund") is a resident of Dadeville, Alabama.  He contributed a total of $54.00 to Bernie Sanders' presidential campaign via ActBlue.

36.     Plaintiff Lauren Hale ("Hale") is a resident of Portland, Maine.  She contributed a total of $35.00 to Bernie Sanders' presidential campaign via ActBlue.

37.     Plaintiff William Crandall ("W. Crandall") is a resident of Redwood City, California.  He contributed a total of $1,705.34 to Bernie Sanders' presidential campaign via ActBlue.

38.     Plaintiff Kirsten Hurst ("Hurst") is a resident of Nampa, Idaho.  She contributed a total of $2,447.00 to Bernie Sanders' presidential campaign via ActBlue.

39.     Plaintiff Duffy Robert Weiss ("Weiss") is a resident of Fargo, North Dakota.  He contributed a total of $121.00 to Bernie Sanders' presidential campaign via ActBlue.

40.     Plaintiff Connie Anderson ("Anderson") is a resident of Houston, Texas.  She contributed a total of approximately $900.00 to Bernie Sanders' presidential campaign via ActBlue.

41.     Plaintiff Gregory Witkowski ("Witkowski") is a resident of Highland, New York. He contributed a total of $445.00 to Bernie Sanders' presidential campaign via ActBlue.

42.     Plaintiff Elizabeth Figueroa ("Figueroa") is a resident of Los Gatos, California. She contributed a total of $246.50 to Bernie Sanders' presidential campaign via ActBlue.

43.     Plaintiff Brandy Kincaid ("Kincaid") is a resident of Clarksville, Tennessee.  She contributed a total of $314.24 to Bernie Sanders' presidential campaign via ActBlue.

44.     Plaintiff Kimberly Alberts ("Alberts") is a resident of Pittsburgh, Pennsylvania. She contributed a total of $24.48 to Bernie Sanders' presidential campaign via ActBlue.

45.     Plaintiff Rachel Roderick ("Roderick") is a resident of Warwick, Rhode Island. She contributed a total of $599.15 to Bernie Sanders' presidential campaign via ActBlue.

46.     Plaintiff Laura Michelle Vaughn ("Vaughn") is a resident of Juneau, Alaska.  She contributed a total of $238.80 to Bernie Sanders' presidential campaign via ActBlue.

47.     Plaintiff Lisa Gale ("Gale") is a resident of Hendersonville, North Carolina.  She contributed a total of $730.37 to Bernie Sanders' presidential campaign via ActBlue.

48.     Plaintiff Tammy Deitch-Coulter ("Deitch-Coulter") is a resident of Lapeer, Michigan.  She contributed a total of $228.00 to Bernie Sanders' presidential campaign via ActBlue.

49.     Plaintiff Kayite Ashcraft ("Ashcraft") is a resident of Charlottesville, Virginia.  He contributed a total of $2,447.00 to Bernie Sanders' presidential campaign via ActBlue.

50.     Plaintiff Alecia R. Davis ("A. Davis") is a resident of Eureka, Montana.  She contributed a total of $531.00 to Bernie Sanders' presidential campaign via ActBlue.

51.     Plaintiff Dominic Ronzani ("Ronzani") is a resident of Deerfield Beach, Florida.  He contributed a total of $38.54 to Bernie Sanders' presidential campaign via ActBlue.

52.     Plaintiff Luke Grim ("Grim") is a resident of Harrisburg, Pennsylvania.  He contributed a total of $30.00 to Bernie Sanders' presidential campaign via ActBlue.

53.     Plaintiff Rosalie Consiglio ("Consiglio") is a resident of Columbia, Maryland.  She contributed a total of $260.00 to Bernie Sanders' presidential campaign via ActBlue.

54.     Plaintiff Edwin Lugo ("Lugo") is a resident of New York City, New York.  He contributed a total of $53.00 to Bernie Sanders' presidential campaign via ActBlue.

55.     Plaintiff Heather Dade ("Dade") is a resident of Washington, DC.  She contributed a total of $110.00 to Bernie Sanders' presidential campaign via ActBlue.

56.     Plaintiff Michael S. Reed ("M. Reed") is a resident of Cheyenne, Wyoming.  He contributed a total of $75.00 to Bernie Sanders' presidential campaign via ActBlue.

57.     Plaintiff Rhiannon Crandall ("R. Crandall") is a resident of El Paso, Texas.  She contributed a total of approximately $1.00 to Bernie Sanders' presidential campaign via ActBlue.

58.     Plaintiff Ryan Ghan ("Ghan") is a resident of Reno, Nevada.  He contributed a total of $431.25 to Bernie Sanders' presidential campaign via ActBlue.

59.     Plaintiff Lisa Settle ("Settle") is a resident of Newport Beach, California.  She contributed a total of $1,255.40 to Bernie Sanders' presidential campaign via ActBlue.

60.     Plaintiff Yalonda Dye Cooper ("Y. Cooper") is a resident of Flint, Michigan.  She contributed a total of 139.00 to Bernie Sanders' presidential campaign via ActBlue.

61.     Plaintiff Daniel S. Cooper ("D. Cooper") is a resident of Flint, Michigan.  He contributed a total of $110.00 to Bernie Sanders' presidential campaign via ActBlue.

62.     Plaintiff Matthew Joseph Brady ("Brady") is a resident of Wilmington, Delaware. He contributed a total of $1,220.00 to Bernie Sanders' presidential campaign via ActBlue.

63.     Plaintiff Andrew Rousseau ("Rousseau") is a resident of North Hero, Vermont. He contributed a total of $290.00 to Bernie Sanders' presidential campaign via ActBlue.

64.     Plaintiff Susan Catterall ("Catterall") is a resident of Hamilton, Indiana.  She contributed a total of $127.00 to Bernie Sanders' presidential campaign via ActBlue.

65.     Plaintiff Julie Hampton ("Hampton") is a resident of Fairfield, Iowa.  She contributed a total of $277.00 to Bernie Sanders' presidential campaign via ActBlue.

66.     Plaintiff Chris Bubb ("Bubb") is a resident of Denton, North Carolina.  He contributed a total of $92.39 to Bernie Sanders' presidential campaign via ActBlue.

67.     Plaintiff Erik Furreboe ("Furreboe") is a resident of Mesa, Arizona.  He contributed a total of $13.00 to Bernie Sanders' presidential campaign via ActBlue.

68.     Plaintiff Zeke Shaw ("Z. Shaw") is a resident of Acworth, Georgia.  He contributed a total of $3.00 to Bernie Sanders' presidential campaign via ActBlue.

69.     Plaintiff Benjamin Ilarraza ("Ilarraza") is a resident of Fort Worth, Texas.  He contributed a total of $225.00 to Bernie Sanders' presidential campaign via ActBlue.

70.     Plaintiff Lucille Grooms ("Grooms") is a resident of Boise, Idaho.  She contributed a total of $284.00 to Bernie Sanders' presidential campaign via ActBlue.

71.     Plaintiff Christine Maiurano ("Maiurano") is a resident of Gilbertsville, New York.  She contributed a total of $530.50 to Bernie Sanders' presidential campaign via ActBlue.

72.     Plaintiff Lewis L. Humiston, IV ("Humiston") is a resident of Auburn, Washington.  He contributed a total of $108.00 to Bernie Sanders' presidential campaign via ActBlue.

73.     Plaintiff John Lynch ("J. Lynch") is a resident of Stuart, Florida.  He contributed a total of $1,349.00 to Bernie Sanders' presidential campaign via ActBlue.

74.     Plaintiff James Simon ("Simon") is a resident of New York, New York.  He contributed a total of $2,700.00 to Bernie Sanders' presidential campaign via ActBlue.

75.     Plaintiff Lester John Bates, III ("Bates") is a resident of Kurtistown, Hawaii.  He contributed a total of approximately $390.00 to Bernie Sanders' presidential campaign via ActBlue.

76.     Plaintiff Jeffrey Goldberg ("Goldberg") is a resident of Cascade, Colorado.  He contributed a total of $82.00 to Bernie Sanders' presidential campaign via ActBlue.

77.     Plaintiff Rick Washik ("Washik") is a resident of Potsdam, New York.  He contributed a total of $304.20 to Bernie Sanders' presidential campaign via ActBlue.

78.     Plaintiff Richard Booker ("Booker") is a resident of Hampton, Virginia.  He contributed a total of $228.37 to Bernie Sanders' presidential campaign via ActBlue.

79.     Plaintiff Karlie Cole ("Cole") is a resident of Minneapolis, Minnesota.  She contributed a total of $226.00 to Bernie Sanders' presidential campaign via ActBlue.

80.     Plaintiff Erich Sparks ("Sparks") is a resident of Cazenovia, New York.  He contributed a total of $382.80 to Bernie Sanders' presidential campaign via ActBlue.

81.     Plaintiff Prabu Gopalakrishnan ("Gopalakrishnan") is a resident of Chicago, Illinois.  He contributed a total of $191.00 to Bernie Sanders' presidential campaign via ActBlue.

82.     Plaintiff Carlos Villamar ("Villamar") is a resident of Falls Church, Virginia.  He contributed a total of $195.00 to Bernie Sanders' presidential campaign via ActBlue.

83.     Plaintiff Carolyn Jacobson ("Jacobson") is a resident of Pasadena, California.  She contributed a total of $300.00 to Bernie Sanders' presidential campaign via ActBlue.

84.     Plaintiff Dan Ellis Dudley ("Dudley") is a resident of Douglas, Massachusetts.  He contributed a total of $773.50 to Bernie Sanders' presidential campaign via ActBlue.

85.     Plaintiff Lisa Anne Meneely ("Meneely") is a resident of Napa, California.  She contributed a total of $105.00 to Bernie Sanders' presidential campaign via ActBlue.

86.     Plaintiff D.J. Buschini ("Buschini") is a resident of Somerville, Massachusetts.  He contributed a total of $13.00 to Bernie Sanders' presidential campaign via ActBlue.

87.     Plaintiff Raymond D. Maxwell ("Maxwell") is a resident of Washington, District of Columbia.  He contributed a total of $114.00 to Bernie Sanders' presidential campaign via ActBlue.

88.     Plaintiff David L. Meuli ("Meuli") is a resident of Fairbanks, Alaska.  He contributed a total of $423.50 to Bernie Sanders' presidential campaign via ActBlue.

89.     Plaintiff Kenneth E. Puckett ("Puckett") is a resident of Portland, Oregon.  He contributed a total of $1,972.26 to Bernie Sanders' presidential campaign via ActBlue.

90.     Plaintiff David N. Pyles ("Pyles") is a resident of Nelson, New Hampshire.  He contributed a total of $1,005.50 to Bernie Sanders' presidential campaign via ActBlue.

91.     Plaintiff Cynthia T. Chan ("Chan") is a resident of Athens, Georgia.  She contributed a total of $111.00 to Bernie Sanders' presidential campaign via ActBlue.

92.     Plaintiff Stefanie Birdsong ("Birdsong") is a resident of Denver, Colorado.  She contributed a total of $159.00 to Bernie Sanders' presidential campaign via ActBlue.

93.     Plaintiff Amber Rae Knowlton ("Knowlton") is a resident of Lancaster, Massachusetts.  She contributed a total of $277.50 to Bernie Sanders' presidential campaign via ActBlue.

94.     Plaintiff Timo A. Johann ("Johann") is a resident of Mebane, North Carolina.  He contributed a total of $35.00 to Bernie Sanders' presidential campaign via ActBlue.

95.     Plaintiff Jeff Rogers ("Rogers") is a resident of Seattle, Washington.  He contributed a total of $160.00 to Bernie Sanders' presidential campaign via ActBlue.

96.     Plaintiff Heather Jordan ("Jordan") is a resident of Rogers, Arkansas.  She contributed a total of $26.50 to Bernie Sanders' presidential campaign via ActBlue.

97.     Plaintiff Rana Kangas-Kent ("Kangas-Kent") is a resident of Greenbrae, California.  She contributed a total of $156.00 to Bernie Sanders' presidential campaign via ActBlue.

98.     Plaintiff Susan Frisbie ("Frisbie") is a resident of Grass Valley, California.  She contributed a total of $1,456.80 to Bernie Sanders' presidential campaign via ActBlue.

99.     Plaintiff Bakh Inamov ("Inamov") is a resident of Greenbrae, California.  He contributed a total of $187.00 to Bernie Sanders' presidential campaign via ActBlue.

100.    Plaintiff Theda Larson-Wright ("Larson-Wright") is a resident of Arenas Valley, New Mexico.  She contributed a total of $1,012.65 to Bernie Sanders' presidential campaign via ActBlue.

101.    Plaintiff Kirsten Hoffman ("Hoffman") is a resident of Boston, Massachusetts.  She contributed a total of $2,700.00 to Bernie Sanders' presidential campaign via ActBlue.

102.    Plaintiff Anthony Grudin ("Grudin") is a resident of Burlington, Vermont.  He contributed a total of $64.00 to Bernie Sanders' presidential campaign via ActBlue.

103.    Plaintiff Bruce Busto ("Busto") is a resident of Ormond Beach, Florida.  He contributed a total of $375.00 to Bernie Sanders' presidential campaign via ActBlue.

104.    Plaintiff Suzanne M. Cork ("Cork") is a resident of Battle Mountain, Nevada.  She contributed a total of $10 to the Defendant, DNC Services Corporation D/B/A Democratic National Committee (the "DNC") in 2016.

105.    Plaintiff Emma L. Young ("Young") is a resident of Chicago, Illinois.  She contributed a total of $15 to the DNC between December 2015 and January 2016.  She contributed online.

106.    Plaintiff Sean Lynch ("S. Lynch") is a resident of Wichester, Virginia.  He contributed a total of $3 to the DNC in 2016.  He contributed online.

107.    Plaintiff Sherry Davis ("S. Davis") is a resident of Longview, Washington.  She contributed a total of $173 to the DNC in 2015-2016.  She contributed in various ways, including online at www.democrats.org.

108.    Plaintiff Nancy Berners-Lee ("Berners-Lee") is a resident of Lexington, Massachusetts.  She contributed a total of $100 to the DNC on or about July 20, 2015.  She contributed by check.

109.    Plaintiff Phyllis Criddle ("Criddle") is a resident of North Adams, Massachusetts. She contributed a total of $18 to the DNC on or about May 16, 2016.  She contributed by check.

110.    Plaintiff Melissa Liang ("Liang") is a resident of Royal Oak, Michigan.  She is a registered Democrat, and has been for the past 16 years.

111.    Plaintiff Joseph Gleason ("Gleason") is a resident of Seattle, Washington.  He is a registered Democrat, and has been for the past eight years.

112.    Plaintiff Greta Mickey ("Mickey") is a resident of Kingston, New York.  She is a registered Democrat, and has been for over 10 years.

113.    Plaintiff Diane Emily Dreyfus ("Dreyfus") is a resident of Baltimore, Maryland. She is a registered Democrat, and has been for over 40 years.

114.    Plaintiff Kathleen L. Dodge ("Dodge") is a resident of Turners Falls, Massachusetts.  She is a registered Democrat, and has been for 46 years.

115.    Plaintiff Catherine Willott ("Willott") is a resident of Thousand Oaks, California. She is a registered Democrat, and has been for 32 years.

116.    Plaintiff Tristan Burgener ("Burgener") is a resident of Meza, Arizona.  He is a registered Democrat, and has been for three years.

117.    Plaintiff Erik Michael Ferragut ("Ferragut") is a resident of Oak Ridge, Tennessee. He is a registered Democrat, and has been for 20 years.

118.    Plaintiff Vincent J. Cauchi, Jr. ("Cauchi") is a resident of Oregon House, California.  He is a registered Democrat, and has been for 40 years.

119.     Plaintiff Joseph Callan ("Callan") is a resident of Nipomo, California.  He is a registered Democrat, and has been for over five years.

120.     Plaintiff Mark Bedard ("Bedard") is a resident of New York, New York.  He is a registered Democrat, and has been for eight years.

121.     Plaintiff Barbara Bowen ("Bowen") is a resident of Mer Rouge, Louisiana.  She is a registered Democrat, and has been for the past 15 years.

122.      Plaintiff Steve Philipp ("Philipp") is a resident of Brooklyn, New York.  He is a registered Democrat, and has been for the past 16 years.

123.     Plaintiff Susan Phillips ("Phillips") is a resident of Cottage Grove, Wisconsin. She is a registered Democrat, and has been for over 40 years.

124.     Plaintiff Richard Boylan ("Boylan") is a resident of Placerville, California.  He is a registered Democrat, and has been for over 35 years.

125.     Plaintiff Teri Monaco ("Monaco") is a resident of Jacksonville, Florida.  She is a registered Democrat, and has been for over 10 years.

126.     Plaintiff Tukoi Jarrett ("Jarrett") is a resident of Chicago, Illinois.  He is a registered Democrat, and has been for 22 years.

127.     Plaintiff AnnMarie Wilson ("Wilson") is a resident of Garland, Texas.  She is a registered Democrat, and has been for 41 years.

128.     Plaintiff Andrew Orrino ("Orrino") is a resident of Fairfield, Connecticut.  He is a registered Democrat, and has been for nine years.

129.     Plaintiff Craig Richard Currier ("Currier") is a resident of Albany, Oregon.  He is a registered Democrat, and has been for approximately 12 years.

130.    Plaintiff Jarath Hemphill ("Hemphill") is a resident of Syracuse, New York.  He is a registered Democrat, and has been for the past 34 years.

131.    Plaintiff George Thomas ("Thomas") is a resident of Seattle, Washington.  He is a registered Democrat, and has been for the past 35 years.

132.    Plaintiff Rebecca White-Hayes ("White-Hayes") is a resident of Bradley, Illinois. She is a registered Democrat, and has been for the past 22 years.

133.    Plaintiff Alaina Talboy ("Talboy") is a resident of Wesley Chapel, Florida.  She is a registered Democrat, and has been for over 10 years.

134.    Plaintiff Sarah López ("López") is a resident of Hillsboro, Oregon.  She is a registered Democrat, and has been for the past 16 years.

135.    Plaintiff Eliza Feero ("Feero") is a resident of Scotia, New York.  She is a registered Democrat, and has been for the past 13 years.

136.    Plaintiff Rebecca Hohm ("Hohm") is a resident of St. Louis, Missouri.  She is a registered Democrat, and has been for the past 30 years.

137.    Plaintiff Gayle Ann Harrod ("Harrod") is a resident of Westminster, Maryland. She is a registered Democrat, and has been for approximately 30 years.

138.    Plaintiff Erika Sitzer ("Sitzer") is a resident of Louisburg, North Carolina.  She is a registered Democrat, and has been for approximately eight years.

139.    Plaintiff Stephen Houseknecht ("Houseknecht") is a resident of Buffalo, New York.  He is a registered Democrat, and has been for the past 44 years.

140.    Plaintiff Diane Robinson ("Robinson") is a resident of Mill Valley, California. She is a registered Democrat, and has been for approximately 28 years.

141.    Plaintiff Jen Betterley ("Betterley") is a resident of Seattle, Washington.  She is a registered Democrat, and has been for at least 10 years.

142.    Plaintiff Amalie Duvall ("Duvall") is a resident of Boonville, Missouri.  She is a registered Democrat, and has been for approximately 23 years.

143.    Plaintiff John Crowe ("Crowe") is a resident of Omaha, Nebraska.  He is a registered Democrat, and has been for approximately five years.

144.    Plaintiff Carl Miller ("Miller") is a resident of Mint Hill, North Carolina.  He is a registered Democrat, and has been for the past 24 years.

145.    Plaintiff Susan Roppel ("Roppel") is a resident of Wyandotte, Michigan.  She is a registered Democrat, and has been for approximately 32 years.

146.    Plaintiff Diana Flores ("Flores") is a resident of Antioch, Tennessee.  She is a registered Democrat, and has been for the past eight years.

147.    Plaintiff Julianna Seymour ("Seymour") is a resident of Huntington Station, New York.  She is a registered Democrat, and has been for the last 13 years.

148.    Plaintiff Melissa Marcotte ("Marcotte") is a resident of Providence, Rhode Island.  She is a registered Democrat, and has been for approximately 13 years.

149.    Plaintiff Danielle Ingrassia ("Ingrassia") is a resident of Vacaville, California.  She is a registered Democrat, and has been for over eight years.

150.    Plaintiff Alette Prichett ("Prichett") is a resident of Hollister, California.  She is a registered Democrat, and has been for over 15 years.

151.    Plaintiff Torsha Childs ("Childs") is a resident of Brooklyn, New York.  She is a registered Democrat, and has been for over 25 years.

152.    Plaintiffs represent only a fraction of the individuals who are willing and able to serve as class representatives in this action.  In the past several weeks, over 1,000 additional members of the proposed classes have volunteered to be class representatives, and have retained undersigned counsel in order to do so.  Within the same timeframe, undersigned counsel have received over 13,000 inquiries from potential class members seeking information about the suit, and inquiries continue to come in.

**<u>Defendants</u>**

153.    Defendant, DNC Services Corporation, d/b/a Democratic National Committee (the "DNC"), at all times relevant hereto, was and is a not-for-profit corporation organized under the laws of the District of Columbia and is the operating body of the United States Democratic Party.  The DNC maintains its principal place of business at 430 South Capitol Street Southeast in Washington, District of Columbia.

154.    Defendant, Deborah "Debbie" Wasserman Schultz ("Wasserman Schultz") has been the Chairperson of the DNC since 2011.  Wasserman Schultz maintains offices in Pembroke Pines, Florida, and Aventura, Florida, in addition to offices in Washington, D.C.

**<u>Non-Party</u>**

155.    Non-party ActBlue is a United States political action committee established in June 2004 that enables online fundraising for Democratic Party campaigns.  ActBlue charges a 3.95% "processing" fee for each contribution.  Some Plaintiffs utilized ActBlue's online services to make the contributions referred to herein.

## **GENERAL FACTS**

156.    The DNC is the formal governing body for the United States Democratic Party. The DNC is responsible for coordinating strategy in support of Democratic Party candidates for local, state, and national office.

157.    As part of its duties, the DNC organizes the Democratic National Convention every four years to nominate and confirm a candidate for President, and establishes rules for the state caucuses and primaries that choose delegates to the convention.

158.    Since 2011, Wasserman Schultz has been Chairperson of the DNC.  Wasserman Schultz has also served as the U.S. Representative for Florida's 23rd congressional district since 2013; before then, she represented Florida's 20th district in the U.S. House of Representatives starting in 2005.

159.    The DNC is governed by the Charter and Bylaws of the Democratic Party.  These governing documents expressly obligate the DNC to maintain a neutral posture with respect to candidates seeking the party's nomination for President during the nominating process.  Article 5, Section 4 of the Charter states:

> The National Chairperson shall serve full time and shall receive such compensation as may be determined by agreement between the Chairperson and the Democratic National Committee.  In the conduct and management of the affairs and procedures of the Democratic National Committee, particularly as they apply to the preparation and conduct of the Presidential nominating process, the Chairperson ***shall exercise impartiality and evenhandedness*** as between the Presidential candidates and campaigns.  The Chairperson shall be responsible for ensuring that the national officers and staff of the Democratic National Committee ***maintain impartiality and evenhandedness*** during the Democratic Party Presidential nominating process.

(emphasis added).

160.     Consistent with what the Charter requires, the DNC, through Wasserman Schultz and other employees, and from the very beginning of the presidential race, has consistently and publicly affirmed its impartiality and evenhandedness with respect to the nominating process for the Democratic nominee for President in 2016.  For example:

a)     A September 3, 2015 article in *Politico* reporting on Wasserman Schultz's relationships with Hillary Clinton and Joe Biden quoted Wasserman Schultz as saying, "I count both Secretary Clinton and Vice President Biden as dear friends, but no matter who comprises our field of candidates it's my job to run a neutral primary process and that's what I am committed to doing[.]"[1]

b)     A September 16, 2015 article in *The Daily Beast* on the Democratic candidate debate schedule quoted DNC spokesperson Holly Shulman ("Shuman") as stating, "[t]he DNC runs an impartial primary process."[2]

c)     Shulman was also quoted in an article appearing in the Daily Mail Online (UK) on October 16, 2015, as stating, "[t]he DNC runs an impartial primary process, period."[3]

---

[1]     *See* Edward-Isaac Dovere & Marc Caputo, "Wasserman Schultz's divided loyalties," **Politico**, *available at* http://www.politico.com/story/2015/09/debbie-wasserman-schultz-joe-biden-hillary-clinton-2016-loyalty-213294 (last visited June 20, 2016).

[2]     *See* Olivia Nuzzi, "Is the Democratic National Committee in the Tank for Hillary?," **The Daily Beast**, *available at* http://www.thedailybeast.com/articles/2015/09/16/is-the-democratic-national-committee-in-the-tank-for-hillary.html (last visited June 20, 2016).

d)      In a CNN appearance on May 17, 2016, where she discussed alleged "violence" by supporters of Bernie Sanders at the Nevada State Democratic Convention, Wasserman Schultz stated that, "[t]he Democratic National Committee remains neutral in this primary, based on our rules."[4]

e)      In a statement quoted by the Associated Press on May 21, 2016, while discussing Sanders' endorsement of her primary opponent for Congress, Wasserman Schultz stated, "[e]ven though Senator Sanders has endorsed my opponent, I remain, as I have been from the beginning, neutral in the presidential Democratic primary."[5]

161.    Despite the requirements in the Charter, and in spite of the multiple public declarations of neutrality and impartiality with respect to the Democratic primary process, the DNC was not neutral.  To the contrary, the DNC was biased in favor of one candidate – Hillary Clinton ("Clinton") – from the beginning and throughout the process.  The DNC devoted its

---

[3]     *See* David Martosko, "Democratic National Committeewoman says her party is 'clearing a path' for Hillary because 'the women in charge' want it that way," *available at* http://www.dailymail.co.uk/news/article-3273404/Democratic-National-Committeewoman-says-party-clearing-path-Hillary-women-charge-want-way.html (last visited June 20, 2016).

[4]     The video may be viewed on the internet at http://www.realclearpolitics.com/video/2016/05/17/debbie_wasserman_schultz_what_happened_at_nevada_convention_was_unacceptable_sanders_added_fuel_to_the_fire.html (last visited June 20, 2016).

[5]     *See* Tribune news services, "Sanders says he is backing opponent of DNC chair Wasserman Schultz," **Chicago Tribune** (May 21, 2016), *available at* http://www.chicagotribune.com/news/nationworld/politics/ct-sanders-dnc-chair-20160521-story.html (last visited June 20, 2016).

considerable resources to supporting Clinton above any of the other Democratic candidates. Through its public claims to being neutral and impartial, the DNC actively concealed its bias from its own donors as well as donors to the campaigns of Clinton's rivals, including Bernie Sanders ("Sanders").

162.    The truth of the DNC's deception started to come to public light in June 2016.

163.    On June 14, 2016, officials of the DNC announced that Russian government hackers had penetrated its computer network.  The hackers had access to the network for approximately one year.  According to the Washington Post, "[t]he intruders so thoroughly compromised the DNC's system that they also were able to read all email and chat traffic" – but in the same article, "[t]he DNC said that no financial, donor or personal information appears to have been accessed or taken[.]" [6]

164.    The same day, CrowdStrike – a network security consulting firm retained by the DNC to investigate and respond to the breach – publicly released more details.  According to CrowdStrike, two separate hacker groups affiliated with the Russian government, codenamed "Cozy Bear" and "Fancy Bear," were detected as having infiltrated the DNC network.  Both groups have a long history of successfully targeting sensitive government and industry computer networks in both the United States and other countries, often using "sophisticated phishing

---

[6]    *See* Ellen Nakashima, "Russian government hackers penetrated DNC, stole opposition research on Trump," **The Washington Post** (June 14, 2016), *available at* https://www.washingtonpost.com/world/national-security/russian-government-hackers-penetrated-dnc-stole-opposition-research-on-trump/2016/06/14/cf006cb4-316e-11e6-8ff7-7b6c1998b7a0_story.html (last visited June 23, 2016).

attacks." CrowdStrike concluded that Cozy Bear's intrusion of the DNC network began in summer of 2015, while Fancy Bear separately breached it in April 2016.[7]

165.    On June 15, 2016, an individual using the name "Guccifer 2.0" established a publicly accessible website (https://guccifer2.wordpress.com) and posted a statement taking credit for the DNC server hack.[8] Below the statement, Guccifer 2.0 posted a series of documents purportedly taken from the DNC's servers including: (a) a 281-page confidential "Donald Trump Report" purportedly submitted to the DNC on 12/19/15 and containing extensive research on the presumptive Republican presidential nominee; (b) Excel spreadsheets containing the names and personal information of donors to the Democratic Party and Hillary Clinton's campaign; and (c) a 59-page memorandum marked "Secret" setting forth national security and foreign policy "promises and proposals" and purportedly obtained from Clinton's personal computer.[9]

166.    Among the documents released by Guccifer 2.0 on June 15th is a two-page Microsoft Word file with a "Confidential" watermark that appears to be a memorandum written to the Democratic National Committee regarding "2016 GOP presidential candidates" and dated

---

[7]      *See* Dmitri Alperovitch, "Bears in the Midst: Intrusion into the Democratic National Committee," **CrowdStrike Blog** (June 14, 2016, updated June 15, 2016), *available at* https://www.crowdstrike.com/blog/bears-midst-intrusion-democratic-national-committee/ (last visited June 23, 2016); Michael Kan, "Russian hackers breach DNC computers, steal data on Donald Trump," **PCWorld** (June 14, 2016), *available at* http://www.pcworld.com/article/3083440/security/russian-hackers-breach-dnc-computers-steal-data-on-trump.html (last visited June 23, 2016).

[8]      *See* Ellen Nakashima, "'Guccifer 2.0' claims credit for DNC hack," **The Washington Post** (June 15, 2016), *available at* https://www.washingtonpost.com/world/national-security/guccifer-20-claims-credit-for-dnc-hack/2016/06/15/abdcdf48-3366-11e6-8ff7-7b6c1998b7a0_story.html (last visited June 23, 2016).

[9]      Guccifer 2.0, "DNC's Servers Hacked By A Lone Hacker," *available at* https://guccifer2.wordpress.com/2016/06/15/dnc/ (last visited June 23, 2016).

May 26, 2015.  A true and correct copy of this document (hereinafter, "DNC Memo") is attached as **Exhibit 1**.[10]

167.    The DNC Memo presents, "a suggested strategy for positioning and public messaging around the 2016 Republican presidential field."  It states that, "Our goals in the coming months will be to frame the Republican field and the eventual nominee early and to ***provide a contrast between the GOP field and HRC***.[11]"  (emphasis added).  The DNC Memo also advises that the DNC, "[u]se specific hits to muddy the waters around ethics, transparency and campaign finance attacks on HRC."  In order to "muddy the waters" around Clinton's perceived vulnerabilities, the DNC Memo suggests "several different methods" of attack including: (a) "[w]orking through the DNC" to "utilize reporters" and create stories in the media "with no fingerprints"; (b) "prep[ping]" reporters for interviews with GOP candidates and having off-the-record conversations with them; (c) making use of social media attacks; and (d) using the DNC to "insert our messaging" into Republican-favorable press.

168.    By the date of the DNC Memo, the Democratic presidential nomination field already included, in addition to Clinton, Bernie Sanders, who announced his candidacy on April 30, 2015.[12]  And at the time, there was also widespread speculation that others would soon enter

---

[10]    Despite being asked the question repeatedly, the DNC has never confirmed or denied the authenticity of any of the documents released by Guccifer 2.0.  *See* Reno Berkeley, "DNC Tight-Lipped About Authenticity Of Documents From Guccifer 2.0 Hack," **Inquisitr**  (June 17, 2016), *available at* http://www.inquisitr.com/3212344/dnc-tight-lipped-about-authenticity-of-documents-from-guccifer-2-0-hack/ (last visited June 24, 2016).

[11]    "HRC" is short for Hillary Rodham Clinton.

[12]    *See* Dan Merica, "Bernie Sanders is running for president," **CNN Politics** (Apr. 30, 2015), *available at* http://www.cnn.com/2015/04/29/politics/bernie-sanders-announces-presidential-run/ (last visited June 23, 2016).

the primary race including Joe Biden, Lincoln Chafee, Martin O'Malley, Elizabeth Warren, and Jim Webb.[13]

169.    Despite there being every indication that the 2016 Democratic primary would be contested by multiple candidates, including Sanders, the DNC Memo makes **_no mention_** of any Democratic candidate except Clinton, and builds the DNC's election strategy on the assumption that Clinton **_will be_** the nominee, with no doubts attached.  Rather than reflecting an "impartial" or "evenhanded" approach to the nominating process, as required by the Charter, the DNC Memo strongly indicates that the DNC's entire approach to the process was guided by the singular goal of elevating Clinton to the general election contest.

170.    On June 18 and 21, 2016, Guccifer 2.0 released additional files purportedly taken from the DNC's servers.  Among these documents are even more items that appear to be of a highly sensitive nature including: (a) multiple spreadsheets of donors to the DNC and other organizations, including the Clinton Foundation, containing personal information such as names, email addresses, and phone numbers; (b) a "private and confidential" memorandum to Secretary of Defense Ashton Carter from a senior advisor regarding appointments to the Joint Chiefs of Staff; (c) fee, travel, and lodging requirements for Clinton's paid speeches; (d) Clinton's tax returns; and (e) thousands of pages of research, apparently prepared by DNC staff as well as Clinton's campaign staff, relating to Clinton's candidacy including her "vulnerabilities,"

---

[13]    *See* Newsday.com with the Associated Press, "2016 presidential race: Possible Democratic candidates," **Newsday** (Apr. 29, 2015), *available at* http://www.newsday.com/news/nation/democrats-who-may-run-for-president-in-2016-from-clinton-to-biden-1.9988978 (last visited June 23, 2016).  Of these, only Joe Biden and Elizabeth Warren ultimately decided not to run.

potential attacks, rebuttals, policy positions, and opposition research on the other Democratic candidates.[14]

171.    These additional files entail further, substantial evidence that the DNC was anything but "impartial," "evenhanded," or "neutral" with respect to the Democratic nominating process.  To the contrary, and in spite of the governing Charter and its multiple public statements, the DNC devoted its resources to propelling Clinton's candidacy ahead of all of her rivals, even if this meant working directly against the interests of Democratic Party members, including Bernie Sanders' supporters.

172.    All conditions precedent to the commencement and prosecution to final judgment of this civil action have taken place, have been performed, or have been waived or excused by Defendants.

173.    Plaintiffs have been compelled to engage the services of the undersigned attorneys and to pay them a reasonable fee.

## CLASS ACTION ALLEGATION

174.    Plaintiffs bring this lawsuit on behalf of themselves and the proposed class members under Rules 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as noted below.

---

[14]    *See* "DNC Researched Clinton Speeches, Travel Records," **The Smoking Gun** (June 21, 2016), *available at* http://www.thesmokinggun.com/documents/crime/dnc-researched-clinton-speeches-travel-records-621985 (last visited June 24, 2016); Salam Marcos, "Guccifer 2.0: 'Neutral' DNC Staff Conducted Research for Clinton," **Progressive Army**, (June 21, 2016) *available at* http://progressivearmy.com/2016/06/21/guccifer-2-0-dnc-conducted-research-clinton/ (last visited June 24, 2016); Stephen K. Bannon & Alexander Marlow, "Secret Memo: 42-Page Leaked DNC Document Reveals Clinton Foundation Scandal 'Vulnerabilities' For Hillary Clinton," **Breitbart** (June 21, 2016), *available at* http://www.breitbart.com/2016-presidential-race/2016/06/21/secret-memo-42-page-leaked-dnc-document-reveals-clinton-foundation-scandal-vulnerabilities-hillary-clinton/ (June 24, 2016).

175.    There are three proposed classes (hereinafter collectively referred to as the "Classes"):

a)    All people or entities who have contributed to the DNC from January 1, 2015 through the date of this action ("DNC Donor Class");

b)    All people or entities who have contributed to the Bernie Sanders campaign from January 1, 2015 through the date of this action ("Sanders Donor Class"); and

c)    All registered members of the Democratic Party ("Democratic Party Class").[15]

176.    Plaintiffs, Cork, Young, S. Lynch, S. Davis, Berners-Lee, and Criddle bring this action on behalf of themselves and the DNC Donor Class.  Hereinafter, they will be referred to collectively as the "DNC Donor Class Plaintiffs."

177.    Plaintiffs, Wilding, Rifken, Crawford, Franz, Pulaski, Welch, J. Gonzalez, Plattner, Houle, Bingen, S. Reed, Monson, Coleman, Snyder, M. Shaw, Haney, E. Gonzalez, Cyko, Genna, Blair, Johnston, Rasch, Teegardin, O'Meara, Lew, Reynolds, Smith, Primack, Cassidy, Musick, Bierhoff, Taylor, Singer, Braund, Hale, W. Crandall, Hurst, Weiss, Anderson, Witkowski, Figueroa, Kincaid, Alberts, Roderick, Vaughn, Gale, Deitch-Coulter, Ashcraft, A. Davis, Ronzani, Grim, Consiglio, Lugo, Dade, M. Reed, R. Crandall, Ghan, Settle, Y. Cooper, D. Cooper, Brady, Rousseau, Catterall, Hampton, Bubb, Furreboe, Z. Shaw, Ilarraza, Grooms, Maiurano, Humiston, J. Lynch, Simon, Bates, Goldberg, Washik, Booker, Cole, Sparks,

---

[15]    Specifically excluded from the class definitions are Defendants; the officers, directors, or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir, or assign of Defendants.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Gopalakrishnan, Villamar, Jacobson, Dudley, Meneely, Buschini, Maxwell, Meuli, Puckett, Pyles, Chan, Birdsong, Knowlton, Johann, Rogers, Jordan, Kangas-Kent, Frisbie, Inamov, Larson-Wright, Hoffman, Grudin, and Busto bring this action on behalf of themselves and the Sanders Donor Class. Hereinafter, they will be referred to collectively as the "Sanders Donor Class Plaintiffs."

178.     Plaintiffs, Liang, Gleason, Mickey, Dreyfus, Dodge, Willott, Burgener, Ferragut, Cauchi, Callan, Bedard, Bowen, Philipp, Phillips, Boylan, Monaco, Jarrett, Wilson, Orrino, Currier, Hemphill, Thomas, White-Hayes, Talboy, Lopez, Feero, Hohm, Harrod, Sitzer, Houseknecht, Robinson, Betterley, Duvall, Crowe, Miller, Roppel, Flores, Seymour, Marcotte, Ingrassia, Prichett, and Childs bring this action on behalf of themselves and the Democratic Party Class.  Hereinafter, they will be referred to collectively as the "Democratic Party Class Plaintiffs."

179.     ***Numerosity***.  The members of each of the Classes are so numerous that their individual joinder is impracticable.

180.     ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.

181.     ***Typicality***.  Plaintiffs' claims are typical of the claims of the members of the Classes they seek to represent, and Plaintiffs have the same claims as those of the other class members they seek to represent.

182.     ***Adequacy of Representation***.  Plaintiffs will fairly and adequately protect the interests of the members of their respective Classes.  Plaintiffs have retained counsel highly experienced in class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes.

183.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for the parties opposing the Classes.

184.     Defendants acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to each of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I

**(Fraud)**
**(DNC Donor Class & Sanders Donor Class)**

185.     The DNC Donor Class Plaintiffs and the Sanders Donor Class Plaintiffs re-allege paragraphs 1 through 184 above as if fully set forth herein.

186.     Defendants knowingly made false statements and omissions concerning material facts.

187.     Defendants intended that the false statements and omissions would induce the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class, to rely on them.

188.     The DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class, relied on Defendants' false statements and omissions to their injury.

189.     Defendants' conduct was intentional, willful, wanton, and malicious.  Defendants had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC

Donor Class and the Sanders Donor Class would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

190.    Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class.

## COUNT II

### (Negligent Misrepresentation)
### (DNC Donor Class & Sanders Donor Class)

191.    The DNC Donor Class Plaintiffs and the Sanders Donor Class Plaintiffs re-allege paragraphs 1 through 184 above as if fully set forth herein.

192.    Defendants made misrepresentations and omissions concerning material facts.

193.    At the time of the misrepresentations and omissions, Defendants either knew them to be false, made them without knowledge of the truth or falsity, or should have known them to be false.

194.    Defendants intended that the misrepresentations and omissions would induce the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class, to rely on them.

195.    The DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class, justifiably relied on Defendants' misrepresentations and omissions to their injury.

196.    Defendants' conduct was intentional, willful, wanton, and malicious.  Defendants had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC

Donor Class and the Sanders Donor Class would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

197.    Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of The DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class and members of the DNC Donor Class and Sanders Donor Class.

## COUNT III

**(Violation of § 28-3904 of the D.C. Code)**
**(DNC Donor Class & Sanders Donor Class)**

198.    The DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class re-allege paragraphs 1 through 184 above as if fully set forth herein.

199.    For purposes of the allegations in this complaint, the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class, are "consumers" pursuant to subsection 28-3901(a)(2) of the District of Columbia Code.

200.    For purposes of the allegations in this complaint, Defendants are "persons" pursuant to subsection 28-3901(a)(1) of the District of Columbia Code.

201.    Defendants misrepresented as to material facts that had a tendency to mislead the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class.

202.    Defendants failed to state material facts, and such failure tended to mislead the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class.

203.    As such, Defendants violated subsections 28-3904(e) and 28-3904(f) of the District of Columbia Code.

204.    Defendants' conduct was intentional, willful, wanton, and malicious.  Defendants had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

205.    Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of The DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class.

## COUNT IV

### (Unjust Enrichment)
### (DNC Donor Class)

206.    The DNC Donor Class Plaintiffs re-allege paragraphs 1 through 184 above as if fully set forth herein.

207.    The DNC Donor Class Plaintiffs and members of the DNC Donor Class conferred benefits on the Defendants, who had knowledge thereof.

208.    Defendants voluntarily accepted and retained the benefits conferred.

209.    The circumstances are such that it would be inequitable for the Defendants to retain the benefits without paying the value thereof to the DNC Donor Class Plaintiffs and members of the DNC Donor Class.

210.    Defendants' conduct was intentional, willful, wanton, and malicious.  Defendants had actual knowledge of the wrongfulness of the conduct and the high probability that injury to

the DNC Donor Class Plaintiffs and members of the DNC Donor Class would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

211.    Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the DNC Donor Class Plaintiffs and members of the DNC Donor Class.

## COUNT V

**(Breach of Fiduciary Duty)**
**(Democratic Party Class)**

212.    The Democratic Party Class Plaintiffs re-allege paragraphs 1 through 184 above as if fully set forth herein.

213.    Defendants had a fiduciary duty to the Democratic Party Class Plaintiffs and members of the Democratic Party Class.

214.    Defendants breached their fiduciary duty to the Democratic Party Class Plaintiffs and members of the Democratic Party Class.

215.    The Democratic Party Class Plaintiffs and members of the Democratic Party Class have been proximately damaged by Defendants' breach.

216.    Defendants' conduct was intentional, willful, wanton, and malicious.  Defendants had actual knowledge of the wrongfulness of the conduct and the high probability that injury to the Democratic Party Class Plaintiffs and members of the Democratic Party Class would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury.

217.    Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Democratic Party Class Plaintiffs and members of the Democratic Party Class.

## COUNT VI

**(Negligence)**
**(DNC Donor Class)**

218.     The DNC Donor Class Plaintiffs as re-allege paragraphs 1 through 184 above as if fully set forth herein.

219.     Defendants owed a duty to the DNC Donor Class Plaintiffs and members of the DNC Donor Class to use and exercise reasonable and due care in obtaining, retaining, and securing the personal and financial information provided to them in connection with their contributions to the DNC.

220.     Defendants owed a duty to the DNC Donor Class Plaintiffs and members of the DNC Donor Class to provide security, consistent with industry standards and requirements, to ensure that the DNC's computer systems and networks, and the personnel responsible for them, adequately protected the personal and financial information of the DNC Donor Class Plaintiffs and members of the DNC Donor Class.

221.     Defendants owed a duty of care to the DNC Donor Class Plaintiffs and members of the DNC Donor Class because they were a foreseeable and probable victim of any inadequate data security practices.  Defendants solicited, gathered, and stored the sensitive financial and personal data provided by the DNC Donor Class Plaintiffs and members of the DNC Donor Class to facilitate their contributions.  Defendants knew they inadequately safeguarded this information on the DNC computer systems and that sophisticated hackers routinely attempted to access this valuable data without authorization.  Defendants knew that a breach of the system would inflict considerable damages upon the DNC Donor Class Plaintiffs and members of the DNC Donor Class, and Defendants were therefore charged with a duty to adequately protect this critically sensitive information.

222.    Defendants maintained a special relationship with the DNC Donor Class Plaintiffs and members of the DNC Donor Class.  The DNC Donor Class Plaintiffs and members of the DNC Donor Class entrusted Defendants with their personal and financial information on the assumption that Defendants would safeguard this information, and Defendants were in a position to protect against the harm suffered by the DNC Donor Class Plaintiffs and members of the DNC Donor Class as a result of the network breaches.

223.    In light of their special relationship with the DNC Donor Class Plaintiffs and members of the DNC Donor Class, Defendants knew, or should have known, of the risks inherent in collecting and storing the personal and financial information of the DNC Donor Class Plaintiffs and members of the DNC Donor Class, and the importance of providing adequate security of that information.

224.    Defendants breached the duties they owed to the DNC Donor Class Plaintiffs and members of the DNC Donor Class by failing to exercise reasonable care and implement adequate security protocols – including protocols consistent with industry standards – sufficient to protect the personal and financial information of the DNC Donor Class Plaintiffs and members of the DNC Donor Class.

225.    Defendants breached the duties they owed to the DNC Donor Class Plaintiffs and members of the DNC Donor Class by failing to properly implement technical systems or security practices that could have prevented the theft of the information at issue.

226.    Defendants breached the duties they owed to the DNC Donor Class Plaintiffs and members of the DNC Donor Class by failing to properly maintain the sensitive personal and financial information of the DNC Donor Class Plaintiffs and members of the DNC Donor Class.

Given the risk involved and the amount of data at issue, Defendants breach of their duties was entirely unreasonable.

227.     As a direct and proximate result of Defendants' negligent conduct, the DNC Donor Class Plaintiffs and members of the DNC Donor Class have suffered injury and are entitled to damages in an amount to be proven at trial.

228.     Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the safety and rights of the DNC Donor Class Plaintiffs and members of the DNC Donor Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment:

229.     For declaratory and injunctive relief declaring illegal and enjoining, preliminarily and permanently, Defendants' violation of and failure to follow the Charter and Bylaws of the Democratic Party;

230.     Certification of this action as a class action, designation of Plaintiffs as class representatives and undersigned counsel as class counsel;

231.     For compensatory, general, restitutionary, restorative, statutory, treble, and special damages for Plaintiffs against Defendants;

232.     Exemplary/punitive damages as against Defendants in an amount sufficient to deter and to make an example of Defendants;

233.      Attorneys' fees and costs;

234.     Prejudgment and post-judgment interest; and

235.     The cost of this suit and such other relief as the court finds just and proper.

## JURY DEMAND

236.    Plaintiffs demand a jury trial on all issues so triable.

DATED: July 13, 2016

RESPECTFULLY SUBMITTED,

/s/ Jared H. Beck
By: Jared H. Beck

BECK & LEE TRIAL LAWYERS
JARED H. BECK
ELIZABETH LEE BECK
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:    (305) 234-2060
Facsimile:    (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

CULLIN O'BRIEN LAW, P.A.
CULLIN O'BRIEN
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Telephone:    (561) 676-6370
Facsimile:    (561) 320-0285
cullin@cullinobrienlaw.com

ANTONINO G. HERNANDEZ P.A.
ANTONINO G. HERNANDEZ
4 SE 1st Street, 2nd Floor
Miami, Florida 33131
Telephone:    (305) 282 3698
Facsimile:    (786) 513 7748
Hern8491@bellsouth.net

Counsel for Plaintiffs and the Proposed Classes