UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 16-cv-61511-WJZ

CAROL WILDING, *et al.*, individually,
and on behalf of all those similarly
situated,

    Plaintiffs,

vs.

DNC SERVICES CORPORATION, d/b/a
DEMOCRATIC NATIONAL
COMMITTEE, and DEBORAH
"DEBBIE" WASSERMAN SCHULTZ,

    Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION TO EXTEND TIME**

**TABLE OF CONTENTS**

I. SERVICE OF PROCESS WAS PROPER AND EFFECTUATED ON DEFENDANTS ...............................................................................................................1

    A. Defendants' Factual Characterization of the Service of Process Event Is at Odds With the Real-Time Audio and Video Footage...............................................1

    B. Plaintiffs' Process Server, Shawn Lucas, Is Deceased as of August 2, 2016; Thus, Plaintiffs Are Unable to Present Testimony From Him to Combat Ms. Herries' Testimony..................................................................................3

    C. The Court Should Find That Service of Process Was Proper Regardless of Whether This Court Relies on the Audio and Video Footage of the Service of Process Event or Ms. Herries' Declaration. .......................................................3

        1. The Audio and Video Footage Confirms That Service Was Proper............3

        2. Even Under Ms. Herries' Characterization, Service of Process Was Proper ...........................................................................................................4

    D. Defendants' Case Citations Do Not Apply ................................................................6

        1. As Opposed to the Service of Process Recipients in *Hives* and *Elkins*, (a) Ms. Herries Was Employed By Defendant DNC's CEO; (b) Ms. Herries Knew She Was Being Served With Legal Papers on Defendants; and (c) Ms. Herries Did Not Make Any Indication Whatsoever That She Could Not Accept Service ........................................7

        2. In Contrast to *Calder* and *Woodbury*, Ms. Herries Had Authority to Accept Service and Actually Received It .....................................................7

        3. The Facts Here Cannot Be Reasonably Compared to *Tamaz*, Where a Saudi Arabian Company Was Served Via FedEx in Saudi Arabia............................................................................................................9

II. THIS COURT HAS BROAD DISCRETION REGARDING THE MOTION FOR AN EXTENSION OF TIME ...............................................................................................9

III. CONCLUSION.............................................................................................................10

Plaintiffs respectfully oppose the motion to dismiss and alternative motion for an extension of time filed by Defendants, DNC Services Corporation, d/b/a Democratic National Committee ("DNC") and Deborah "Debbie" Wasserman Schultz (collectively, "Defendants") [Dkt. No. 9]. In support, Plaintiffs state the following:

## I. SERVICE OF PROCESS WAS PROPER AND EFFECTUATED ON DEFENDANTS

### A. Defendants' Factual Characterization of the Service of Process Event Is at Odds With the Real-Time Audio and Video Footage

Defendants' motion to dismiss heavily relies upon the sworn declaration of Rebecca Herries ("Ms. Herries"). [Dkt. No. 10]. The sworn statements by Ms. Herries are at odds with the real-time audio and video footage of the exchange between the process server and Ms. Herries. https://www.youtube.com/watch?v=D3FMgZruOXE at 12:00-12:14 (last visited, Aug. 4, 2016).

According to Ms. Herries' sworn statement, she personally interfaced with the process server (Shawn Lucas) as follows:

> I told them that my name was Becca and that I worked for the DNC. They did not ask me for and I did not tell them my last name. They similarly did not ask me for and I did not tell them my title. They also did not ask me whether I was authorized to accept process for either the DNC or Congresswoman Shultz, nor did I tell them that I was authorized to do so. They then handed me the papers and left.

[Dkt. No. 10, ¶4].

However, the audio and video footage of the exchange between the process server (Shawn Lucas) and Ms. Herries is as follows:

> *Ms. Herries*: "Shawn hi, Becca"
>
> **Process Server**: [Inaudible question to Becca]
>
> *Ms. Herries*: "I'm just with the DNC upstairs"

- 1 -

>**Process Server**: "You're with the DNC"
>
>*Ms. Herries*: "Yes"
>
>**Process Server**: "All right, well this is going to be a service to the DNC"
>
>*Ms. Herries*: "to the DNC- okay"
>
>**Process Server**: "And this is for Debbie Wasserman Shultz"
>
>*Ms. Herries*: "Perfect"
>
>**Process Server**: "You guys have been served."
>
>*Ms. Herries*: "Okay"
>
>**Process Server**: "Thank you so much, we'll see you in court"

https://www.youtube.com/watch?v=D3FMgZruOXE at 12:00-12:14 (last visited, Aug. 4, 2016).

Thus, it appears that Ms. Herries' sworn statement fails to acknowledge that she:

(1) told the process server that she was "with the DNC upstairs";

(2) confirmed to the process server that she was with the DNC, saying, "Yes";

(3) acknowledged receipt of service to the DNC, even finishing the process server's sentence, *i.e.*, "to the DNC – okay";

(4) acknowledged receipt of service to Congresswoman Shultz, saying "perfect"; and,

(5) acknowledged being served by saying, "Okay."

Moreover, Ms. Herries does not testify that she told the process server she was somehow unauthorized to accept service of process. Indeed, from what appears on the audio and video footage, Ms. Herries had ample opportunity to disclaim any responsibility for accepting service and Ms. Herries did not make any such disclaimer. In fact, although Ms. Herries testifies that "[the process server] then handed me the papers and left," [Dkt. No. 10, ¶4], the audio and video

footage shows that Ms. Herries was the one who took and walked away with the service papers without raising any issues.

Accordingly, although Ms. Herries does acknowledge that she is "employed at the Democratic National Committee (the 'DNC') as a special assistant to the CEO, Amy Dacey," [Dkt. 10, ¶2],[1] this Court should give little weight to Ms. Herries' testimony in deciding the issues.

### B. Plaintiffs' Process Server, Shawn Lucas, Is Deceased as of August 2, 2016; Thus, Plaintiffs Are Unable to Present Testimony From Him to Combat Ms. Herries' Testimony

In anticipation of providing sworn testimony from Plaintiffs' process server, Shawn Lucas ("Mr. Lucas"), in response to Ms. Herries' declaration, Plaintiffs' counsel conferred with One Source Process, Inc., the legal services company that employed Mr. Lucas to serve process. On August 3, 2016, a representative of the company, Alex Grabowski, informed Plaintiffs' counsel that he had received notice of Mr. Lucas's death that morning in D.C. On August 4, 2016, Plaintiffs' counsel obtained a copy of the police report regarding Mr. Lucas's death from the D.C. Metropolitan Police Department. *See* **Exhibit 1**.

### C. The Court Should Find That Service of Process Was Proper Regardless of Whether This Court Relies on the Audio and Video Footage of the Service of Process Event or Ms. Herries' Declaration

#### 1. The Audio and Video Footage Confirms That Service Was Proper

---

[1] The DNC announced Amy Dacey's resignation on August 2, 2016. *See* Abby Phillip & Katie Zezima, "Top Democratic National Committee officials resign in wake of email breach," **The Washington Post** (Aug. 2, 2016), *available at* https://www.washingtonpost.com/news/post-politics/wp/2016/08/02/democratic-national-committee-ceo-amy-dacey-resigns-in-wake-of-email-breach/ (last visited Aug. 4, 2016).

According to Ms. Herries' statements and conduct depicted in the audio and video footage of the service of process event, Ms. Herries had actual authority to and did accept service on behalf of Defendants. *Inter alia*, and as stated above, Ms. Herries:

(1) personally responded to the front desk's call for someone to speak with the process server;

(2) told the process server that she was "with the DNC upstairs";

(3) confirmed to the process server that she was with the DNC, saying, "Yes";

(4) acknowledged receipt of service to the DNC, even finishing the process server's sentence, "to the DNC – okay";

(5) acknowledged receipt of service to Congresswoman Shultz, saying "perfect";

(6) acknowledged being served by saying, "Okay";

(7) never once indicated to the process server that she could not accept service; and,

(8) walked away with the service papers without indicating any issues.

Based on these facts, this Court should find that Ms. Herries had actual and apparent authority to accept service of process on behalf of Defendants. *See*, *e.g.*, *Kuhlik v. Atlantic Corp.*, 112 F.R.D. 146, 148 (S.D.N.Y. 1986) ("The process server was not required to make further inquiry but rather was entitled to rely on the receptionist's representation of authority.").

### 2. Even Under Ms. Herries' Characterization, Service of Process Was Proper

Assuming *arguendo* that this Court credits the factual characterization set forth in Ms. Herries' declaration, this Court should still find that service of process was proper. Ms. Herries claims to be the "special assistant" to the (then)[2] CEO of the Democratic National Committee ("DNC"), Amy Dacey. [Dkt. No. 10, ¶2]. Ms. Herries also claims to have had the ability to

---

[2] As previously noted, Amy Dacey has since resigned as CEO of the DNC. *See* footnote 1, *supra*.

- 4 -

contact the DNC's COO but was unable to reach that person. [Dkt. No. 10, ¶3]. Ms. Herries claims that due to the (then) impending 4th of July weekend, Ms. Herries was one of the only few people in the DNC offices. [Dkt. No. 10, ¶3]. These factual assertions by Ms. Herries weigh in favor of this Court finding that Ms. Herries had actual and apparent authority to accept service of process on behalf of Defendants.

First, because the DNC is the formal governing body for the United States Democratic Party, and has a headquarters in Washington, D.C. in a large building with security guards stationed at the front, service would have been proper on anyone who responded in the manner that Ms. Herries did. *See, e.g.*, *State of Ga. v. Nat'l Dem. Party*, 447 F.2d 1271, 1273 n.2 (D.C. Cir. 1971) (rejecting argument that service on National Republican Party was improper where "[s]ervice was made here on an employee of the National Committee at its Washington, D.C. office" even though the Republican National Committee protested that the employee was "not one of its own 'officers' or managing or general agents'"); *Flynn v. Pulaski Constr. Co.*, 2006 WL 47304, *4-*5 (D.D.C. Jan. 6, 2006) (finding service proper and calling the defendants' argument "disingenuous" where papers were served on the defendant corporations' receptionist and the defendants had actual notice of the lawsuit). Again, Ms. Herries does not claim to have ever once indicated to the process server that she could not accept service.

Second, the fact that Ms. Herries was one of the few DNC staffers at their posts while others were out due to the then impending holiday weekend indicates that Ms. Herries was specifically the type of person Defendants entrusted for service of process. *See*, *e.g.*, *Direct Mail Specialists v. Eclat Computerized Techs.*, 840 F.2d 685, 688-689 (9th Cir. 1988) ("She appears to have been the only employee in the office when the process server arrived, demonstrating that more than minimal responsibility was assigned to her."); *accord Zond, LLC v. Fujitsu*

*Semiconductor Ltd.*, 53 F. Supp. 3d 394, 400 (D. Mass. 2014) ("Since Poulson was 'apparently in charge' of the reception desk at TSMC NA, and no other individual more suited to accept service was forthcoming, the Court holds that Poulson was a proper person to receive the papers under the California substitute service rule.").

Put differently, "[t]he defendant's attempt to negate process under the facts here presented would be tantamount to an evasion of process." *Koninklijke Luchtvaart Maatschappij N V v. Curtiss- Wright Corp*, 17 F.R.D. 49, 51-52 (S.D.N.Y. 1955).  If service of process is somehow not proper on defendants (the DNC and its then-Chairperson[3]) *vis-à-vis* the person presented to respond to the process server **_who does not even tell the process server that there are issues in her accepting service_**, then Defendants are essentially taking affirmative steps to evade service of process.  Defendants' offices are inside of a heavily-secured, large office building.  There is no means for a process server to serve Defendants other than to request the security guards to call for a representative to come to the lobby to accept service of process, which is what happened in this case.  While Defendants ultimately rely on the constitutional right to due process in seeking dismissal of this case, accepting Defendants' argument would be tantamount to curtailing Plaintiffs' right to petition their government for redress of grievances, as guaranteed by the First Amendment.

### D.    Defendants' Case Citations Do Not Apply

Defendants cite five cases at the end of their argument for dismissal.  [Dkt. No. 11, at p. 8].  None of these cases apply.

---

[3]    Congresswoman Debbie Wasserman Shultz has since resigned as Chairperson of the DNC.  *See* Jonathan Martin & Alan Rappeport, "Debbie Wasserman Schultz to Resign D.N.C. Post," **The New York Times** (July 24, 2016) *available at* http://www.nytimes.com/2016/07/25/us/politics/debbie-wasserman-schultz-dnc-wikileaks-emails.html (last visited, Aug. 4, 2016).

> **1.    As Opposed to the Service of Process Recipients in *Hives* and *Elkins*, (a) Ms. Herries Was Employed by Defendant DNC's CEO; (b) Ms. Herries Knew She Was Being Served With Legal Papers on Defendants; and (c) Ms. Herries Did Not Make Any Indication Whatsoever That She Could Not Accept Service**

In *Hives v. Bisk Educ.*, No. 8:15-CV-262-T-23MAP, 2015 WL 3791423, at *1-*2 (M.D. Fla. May 7, 2015), the *pro se* plaintiff did not even attempt to serve the defendant and instead tried to rely upon serving a lawyer for the defendant. By the same token, in *Elkins v. Broome*, 213 F.R.D. 273, 274-275 & n.1 (M.D.N.C. 2003), the plaintiff sued an individual police officer but attempted to effect service by leaving papers with the duty officer at the department where the defendant worked, and there was never any representation made suggesting he had authority to accept service.

Unlike in *Hives* and *Elkins*, not only did Ms. Herries understand that service of process was happening, but the audio and video footage show that: (a) Ms. Herries acknowledged receipt of service to the DNC, even finishing the process server's sentence, "to the DNC – okay"; (b) Ms. Herries acknowledged receipt of service to Congresswoman Shultz, saying "perfect"; and (c) Ms. Herries acknowledged being served by saying, "Okay." Furthermore, and especially noteworthy, Ms. Herries not once told the process server there were issues in her accepting service for Defendants.

Thus, Defendants' reliance upon *Hives* and *Elkins* is unavailing.

> **2.    In Contrast to *Calder* and *Woodbury*, Ms. Herries Had Authority to Accept Service and Actually Received It**

In *Calder v. Stanly County Board of Education*, No. 1:00CV01249, 2002 WL 31370364, **2-*3 (M.D.N.C. Sept. 26, 2002), the plaintiff conceded that he failed to properly serve a school board and superintendent by, respectively, personally delivering a copy of the summons and complaint to the board's attorney and an envelope to the superintendent's secretary.

Similarly, in *Woodbury v. Sears, Roebuck & Co.*, 152 F.R.D. 229 (M.D. Fla. 1993), there was no evidence that the clerical staff employee had authority to accept service nor, indeed, was there any evidence regarding how or on whom service was effected. *See id.* at 234-36. Furthermore, it was not even clear whether the employee in question actually received service. *See id.* at 235. Here, by contrast, Ms. Herries was authorized to accept service, and did accept service, for the DNC and Congresswoman Shultz.

Again, if this Court credits the audio and video footage, Ms. Herries was authorized to accept service because she:

(1) personally responded to the front desk's call for someone to speak with the process server;

(2) told the process server that she was "with the DNC upstairs";

(3) confirmed to the process server that she was with the DNC, saying, "Yes";

(4) acknowledged receipt of service to the DNC, even finishing the process server's sentence, "to the DNC – okay";

(5) acknowledged receipt of service to Congresswoman Shultz, saying "perfect";

(6) acknowledged being served by saying, "Okay";

(7) never once indicated to the process server that she could not accept service; and,

(8) walked away with the service papers without indicating any issues.

Alternatively, if this Court credits Ms. Herries' factual characterization, she was still authorized to accept service because:

(1) the DNC is the formal governing body for the United States Democratic Party, which has a headquarters in Washington D.C. in a large building with security guards at the front. Service would have likely been proper on anyone who responded in the manner that Ms. Herries did; and,

(2) Ms. Herries was one of the few DNC staffers at their posts while others were out due to the then impending holiday weekend. This fact indicates that Ms.

Herries was specifically the type of person Defendants entrusted for service of process. Indeed, Ms. Herries is hardly a low-level employee but, as she states in her declaration, a special assistant to the former DNC CEO.

Thus, Defendants' reliance on *Calder* and *Woodbury* is misplaced.

### 3. The Facts Here Cannot Be Reasonably Compared to *Tamaz*, Where a Saudi Arabian Company Was Served Via FedEx in Saudi Arabia

In *De Gazelle Group, Inc. v. Tamaz Trading Establishment*, 817 F.3d 747 (11th Cir. 2016), the plaintiff tried to serve a Saudi Arabian company via FedEx to an address in Saudi Arabia, and the company had not previously agreed to service in that manner. *Id*. at 749-751. *Tamaz* has nothing to do with the facts of this case. Defendants are not foreign nationals nor are they entities operating outside of the United States of America. Quite the contrary, Defendants operate at the very center of the American political system, from within a highly secured headquarters in the nation's capital. It defies reason to suggest that Plaintiffs' late process server, Shawn Lucas –who literally went inside of the DNC building, informed the security desk of his purpose, waited while the DNC's guards conveyed his request to the Defendants to send someone down to accept process, and then conversed with the DNC's own employee who had descended to the lobby and received the legal papers – is somehow even remotely akin to a package being FedEx-ed to a Saudi Arabian address.

## II. THIS COURT HAS BROAD DISCRETION REGARDING THE MOTION FOR AN EXTENSION OF TIME

While Plaintiffs are always amenable to professional courtesies concerning requests extensions of time, Defendants used a substantial portion of their request for an extension to try to attack the merits of Plaintiffs' claims, while generally claiming their counsel are occupied with other "highly time sensitive matters." Subsequent to Defendants' filing, moreover, there

have been a slew of high-profile resignations and other developing news items.[4]  While this all may create even work for Defendants and their counsel, an extension of time to respond to the complaint until September 9, 2016 does not appear to be a solution to the "highly time sensitive matters" present when the request for an extension was sought or to the other matters that have developed since.  Nevertheless, this court has broad discretion to deny or grant the request for an extension.

### III.  CONCLUSION

WHEREFORE, Plaintiffs respectfully ask this Court to deny Defendants' motion to dismiss and for an extension of time.

DATED: August 5, 2016

RESPECTFULLY SUBMITTED,

/s/ Cullin O'Brien
By: Cullin O'Brien

CULLIN O'BRIEN LAW, P.A.
CULLIN O'BRIEN
Florida Bar No. 597341
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Telephone:    (561) 676-6370
Facsimile:    (561) 320-0285
cullin@cullinobrienlaw.com

[additional counsel on following page]

---

[4]   *See, e.g.*,  Aaron Blake, "Here are the latest, most damaging things in the DNC's leaked emails," **The Washington Post** (July 25, 2016), *available at* https://www.washingtonpost.com/news/the-fix/wp/2016/07/24/here-are-the-latest-most-damaging-things-in-the-dncs-leaked-emails/ (last visited Aug. 5, 2016).

BECK & LEE TRIAL LAWYERS
JARED H. BECK
Florida Bar No. 20695
ELIZABETH LEE BECK
Florida Bar No. 20697
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:     (305) 234-2060
Facsimile:      (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

ANTONINO G. HERNANDEZ P.A.
ANTONINO G. HERNANDEZ
Florida Bar No. 164828
4 SE 1st Street, 2nd Floor
Miami, Florida 33131
Telephone:     (305) 282 3698
Facsimile:      (786) 513 7748
Hern8491@bellsouth.net

Counsel for Plaintiffs and the Proposed Classes

- 11 -

- 12 -

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing instrument was e-filed with the Clerk of the Court using CM/ECF, this 5th day of August 2016.

> By:   /s/ Cullin O'Brien
>        CULLIN O'BRIEN