UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 16-cv-61511-WJZ

CAROL WILDING, *et al.*, individually, and on behalf of all those similarly situated,

    Plaintiffs,

vs.

DNC SERVICES CORPORATION, d/b/a DEMOCRATIC NATIONAL COMMITTEE, and DEBORAH "DEBBIE" WASSERMAN SCHULTZ,

    Defendants.

**PLAINTIFFS' POST-HEARING MEMORANDUM**

- i -

# TABLE OF CONTENTS

I.  QUESTION PRESENTED: SHOULD THIS COURT ALLOW INTO EVIDENCE PLAINTIFFS' EXHIBIT 4 – THE E-MAIL FROM REBECCA HERRIES OBTAINED FROM THE WIKILEAKS WEBSITE?........................................1

    A.  Procedural Context for the Question Presented: Defendants Submitted Sworn Testimony from Ms. Herries, Which Resulted in a Burden Shift ................1

    B.  Substantive Context for the Question Presented: Although Plaintiffs Believe They Have Produced Sufficient Evidence to Meet their Burden of Showing that Ms. Herries Had Actual and/or Apparent Authority to Accept Service for the DNC and for Congresswoman Schultz, the WikiLeaks E-mail Provides Further Compelling Evidence....................................2

    C.  First Answer to the Question Presented: Before the Hearing, Defendants Did Not Present Meritorious Reasons to Deny Plaintiffs' Motion to Admit the WikiLeaks E-Mail into Evidence......................................................................5

    D.  Second Answer to the Question Presented: The *ACLU v. Dep't of State* Case Defendants Cited at the August 23, 2016 Evidentiary Hearing Does Not Present a Meritorious Reason to Exclude the E-mail from Ms. Herries...........7

    E.  Third Answer to the Question Presented: Plaintiffs Ask this Court to Use its Discretion to Admit the E-mail from Ms. Herries into Evidence Based on the Equities; However, it Is Unclear Whether Any Other Court Has Made the Precise Ruling Plaintiffs Seek Here.........................................................9

II.  CONCLUSION............................................................................................................12

With leave of this Court granted at the August 23, 2016 evidentiary hearing on the Motion to Quash Service of Process ("Motion to Quash") filed by Defendants, DNC Services Corporation, d/b/a Democratic National Committee ("DNC") and Deborah Wasserman Schultz ("Congresswoman Schultz") (collectively, "Defendants") [Dkt. No. 9],[1] Plaintiffs respectfully submit the following memorandum of law:

## I. QUESTION PRESENTED: SHOULD THIS COURT ALLOW INTO EVIDENCE PLAINTIFFS' EXHIBIT 4 – THE E-MAIL FROM REBECCA HERRIES OBTAINED FROM THE WIKILEAKS WEBSITE?

### A. Procedural Context for the Question Presented: Defendants Submitted Sworn Testimony from Ms. Herries, Which Resulted in a Burden Shift

On July 22, 2016, Defendants filed the Motion to Quash, [Dkt. Nos. 9-12], attaching a sworn declaration from Rebecca Herries ("Ms. Herries") [Dkt. No. 10].

On August 5, 2016, Plaintiffs opposed the Motion to Quash, including challenging the veracity of the sworn statements by Ms. Herries *vis-à-vis* a video of the disputed service of process event. [Dkt. No. 24].

On August 9, 2016, this Court set an evidentiary hearing for August 23, 2016 on the Motion to Quash. [Dkt. No. 25].

On August 19, 2016, this Court granted Plaintiffs' motion *in limine* regarding hearsay at the August 23, 2016 evidentiary hearing. [Dkt. No. 31 (motion); Dkt. No. 33 (order)]. In the August 19, 2016 order, this Court affirmed that, by submitting the sworn testimony of Ms. Herries in support of the Motion to Quash, Defendants had shifted the burden to Plaintiffs to produce evidence showing service was properly made. [Dkt. No. 33, at p. 1].

---

[1] This Court construed Defendants' filing as a motion to quash service of process. [Dkt. No. 25, at p. 1].

- 1 -

At the August 23, 2016 evidentiary hearing, the Court took evidence from the parties. Plaintiffs asked the Court to move into evidence an e-mail from Ms. Herries obtained from the WikiLeaks website, [Dkt. No. 33-5], which was marked for identification purposes as Plaintiffs' Exhibit 4.

At the hearing, the Court granted the parties leave to submit additional memoranda on the issue of whether this Court should grant Plaintiffs' motion to admit Plaintiffs' Exhibit 4 into evidence.

> B. **Substantive Context for the Question Presented: Although Plaintiffs Believe They Have Produced Sufficient Evidence to Meet their Burden of Showing that Ms. Herries Had Actual and/or Apparent Authority to Accept Service for the DNC and for Congresswoman Schultz, the WikiLeaks E-mail Provides Further Compelling Evidence**

Through the evidence presented to this Court at the August 23, 2016 hearing (including the video evidence of the disputed service of process event and testimony by the videographer, Ricardo Villalba-Cabral ("Mr. Villalba")), Plaintiffs argue that, *inter alia*:

> (1) On Friday, July 1, 2016, Plaintiffs' process server entered the DNC headquarters and was stopped at the security desk;
>
> (2) Plaintiffs' process server made it known to the personnel at the security desk that he was attempting to serve this lawsuit on the DNC and Congresswoman Schultz, the (then) chairperson of the DNC, and requested that someone who was able to accept service of process be made available;
>
> (3) After approximately 15 minutes, and in response to Plaintiffs' process servers' request, Ms. Herries, who was the special assistant to the (then) CEO of the DNC, came down from the upper-floors in the building, escorted by the same security guards with whom Plaintiffs' process server had interfaced; and,
>
> (4) When Ms. Herries approached Plaintiffs' process server, the following exchange took place:
>
>> *Herries*: "Shawn hi, Becca"
>>
>> **Process Server**: [Inaudible question to Becca]

- 2 -

*Herries*: "I'm just with the DNC upstairs"

**Process Server**: "You're with the DNC"

*Herries*: "Yes"

**Process Server**: "All right, well this is going to be a service to the DNC"

*Herries*: "to the DNC- okay"

**Process Server**: "And this is for Debbie Wasserman Shultz"

*Herries*: "Perfect"

**Process Server**: "You guys have been served."

*Herries*: "Okay"

**Process Server**: "Thank you so much, we'll see you in court"

Based on this evidence (and given the absence of evidence presented by Defendants[2]) Plaintiffs ask this Court to find that service of process was proper on the DNC either under 4(h)(1)(A) or Rule 4(h)(1)(B), and that service of process was proper on Congresswoman Schultz either under Rule 4(e)(1) or Rule 4(e)(2)(C). These analyses boil down to the issue of whether Plaintiffs have presented sufficient evidence for this Court to determine that Ms. Herries had actual authority or apparent authority to accept service of process for the DNC and for Congresswoman Schultz. In their brief, [Dkt. No. 24], Plaintiffs cited numerous cases to the

---

[2] At the August 23, 2016 hearing, this Court granted Defendants' motion to introduce into evidence the affidavits of service already in the Court file, [Dkt. Nos. 6-7], as well as Plaintiffs' motion to move into evidence a corrected affidavit that fixed a typographical error.

- 3 -

effect that Ms. Herries had such actual and/or apparent authority.[3] Plaintiffs also cited additional authority at the August 23, 2016 evidentiary hearing.[4]

Plaintiffs further noted at the August 23, 2016 evidentiary hearing that some district courts appear to find that in an apparent authority analysis, the burden is on the plaintiff to show that the principal (here, the DNC and Congresswoman Schultz) intended to confer such authority on the agent (here, Ms. Herries).[5]

---

[3] *See, e.g.*, *State of Ga. v. Nat'l Dem. Party*, 447 F.2d 1271, 1273 n.2 (D.C. Cir. 1971) (rejecting argument that service on National Republican Party was improper where "[s]ervice was made here on an employee of the National Committee at its Washington, D.C. office" even though the Republican National Committee protested that the employee was "not one of its own 'officers' or managing or general agents'"); *Flynn v. Pulaski Constr. Co.*, 2006 WL 47304, *4-*5 (D.D.C. Jan. 6, 2006) (finding service proper and calling the defendants' argument "disingenuous" where papers were served on the defendant corporations' receptionist and the defendants had actual notice of the lawsuit); *Direct Mail Specialists v. Eclat Computerized Techs.*, 840 F.2d 685, 688-689 (9th Cir. 1988) ("She appears to have been the only employee in the office when the process server arrived, demonstrating that more than minimal responsibility was assigned to her."); *Zond, LLC v. Fujitsu Semiconductor Ltd.*, 53 F. Supp. 3d 394, 400 (D. Mass. 2014) ("Since Poulson was 'apparently in charge' of the reception desk at TSMC NA, and no other individual more suited to accept service was forthcoming, the Court holds that Poulson was a proper person to receive the papers under the California substitute service rule."); *Kuhlik v. Atlantic Corp.*, 112 F.R.D. 146, 148 (S.D.N.Y. 1986) ("The process server was not required to make further inquiry but rather was entitled to rely on the receptionist's representation of authority.").

[4] At the August 23, 2016 hearing, Plaintiffs cited *Evans v. Thornton*, 898 So. 2d 151 (Fla. 4th DCA 2005), for the proposition that Florida law recognizes service of process via apparent authority. *See id.* at 152 ("Deutsch was authorized to act under the principles of apparent agency."). *Evans* is material to the extent that this Court applies Florida law when conducting its analysis for service of process on Congresswoman Schultz under Rule 4(e)(1) or its analysis for service of process on the DNC under Rule 4(h)(1)(A).

[5] *See*, *e.g.*, *Gooden v. Harris*, No. 14-4415, 2015 WL 8680747, at *1 (D.N.J. Dec. 11, 2015) ("[T]here must be evidence that the individual defendant intended to confer authority on the agent to accept service of process for her. The burden is on the plaintiff to prove that an agency relationship existed and that service was proper.") (citation omitted); *but see Langford v. Yacob*, No. 1:08–cv–836, 2009 WL 3711571, at *4, n. 2 (W.D. Mich. Nov. 4, 2009) ("Some federal courts have gone further, stating that the doctrine of apparent authority . . . has no applicability to the issue of service of process.") (internal citation and quotation omitted).

- 5 -

Although Plaintiffs believe that the evidence they presented to this Court (summarized above) meets their burden to show that Ms. Herries had actual authority and/or apparent authority to accept service of process for the DNC and for Congresswoman Schultz, Plaintiffs believe that, were this Court to accept into evidence an e-mail from Ms. Herries obtained from the WikiLeaks website, [Dkt. No. 33-5], which was marked for identification purposes as Plaintiffs' Exhibit 4 at the August 23, 2016 hearing, Plaintiffs would be much further across the evidentiary goal-line, as it were.

That is, although the parties have stipulated that Ms. Herries was the special assistant to the (then) CEO of the DNC at the time of the disputed service of process event, Plaintiffs believe the e-mail from Ms. Herries on the WikiLeaks website is significant because shows Ms. Herries was delegated the task of sending a DNC-wide communication arranging a meeting in the "Wasserman" conference room. This is further evidence that Ms. Herries is precisely the type of the person who could have (and did have) actual authority and/or apparent authority to accept service of process for the DNC and for Congresswoman Schultz.  [*See* Dkt. No. 33-5].

**C.  First Answer to the Question Presented: Before the Hearing, Defendants Did Not Present Meritorious Reasons to Deny Plaintiffs' Motion to Admit the WikiLeaks E-Mail into Evidence**

Before the hearing, Plaintiffs disclosed their intention to seek to admit the e-mail from Ms. Herries into evidence.  [Dkt. No. 33].  At that time, Defendants took the following position regarding the e-mail:

> Defendants object to the use of this email as irrelevant, and on the ground that it was obtained from a website -- WikiLeaks -- that traffics in stolen emails. Defendants do not dispute that Ms. Herries was, on July 1, 2016, the special

> assistant to the CEO of the DNC, Amy Dacey, and have agreed to stipulate to that fact, further making this email cumulative and its production more prejudicial than its probative value.

[Dkt. No. 33, at p. 5].

This Court should overrule these objections. As to relevancy, as stated above, the e-mail shows that Ms. Herries is precisely the type of the person who could have (and did have) actual authority and/or apparent authority to accept service of process for the DNC and for Congresswoman Schultz. The well-known threshold for relevancy is low, and Plaintiffs meet it.

As to "the ground that it was obtained from a website -- WikiLeaks -- that traffics in stolen emails," there is no evidence that the e-mail by Ms. Herries was, in fact, stolen. Indeed, Defendants had the opportunity to present witness testimony in support of that assertion at the August 23, 2016 evidentiary hearing and did not do so. Thus, Defendants are relying on lawyer argument to supplant evidence, which this Court should not allow. *See*, *e.g.*, *Tom Sawyer Prods. v. Progressive Partners Achieving Solutions*, 550 F. Supp. 2d 23, 29 (D.D.C. 2008) ("A lawyer's argument does not substitute for admissible evidence."); *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, Case No. CV08-635 CAS (AJWx), 2011 WL 1598916, at *9 (C.D. Cal. Apr. 27, 2011) ("Plaintiff has no evidence whatsoever that Universal knew that anything it relied on was 'fabricated or otherwise false.' Instead, Plaintiff relies exclusively on lawyer argument that Universal 'should have known'—but lawyer argument is not evidence and should have known does not establish a lack of probable cause."); *American Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 65 F. Supp. 3d 134, 145 (D.D.C. 2014) ("[A] lawyer's argument, of course, does not substitute for admissible evidence in support of or in defense against a summary judgment motion.").

As to the objection based on cumulative evidence, there is no other place in the evidence where Ms. Herries is sending a DNC-wide communication arranging a meeting in the "Wasserman" conference room.

Finally, as to the Rule 403 objection – that it is more prejudicial than probative, it is hard to see what the prejudice is, much less what prejudice there is that would "substantially outweigh" the probative value. The e-mail shows that Ms. Herries has a role in the DNC sufficient to arrange for DNC-wide meetings in the "Wasserman" conference room.

> D. **Second Answer to the Question Presented: The *ACLU v. Dep't of State* Case Defendants Cited at the August 23, 2016 Evidentiary Hearing Does Not Present a Meritorious Reason to Exclude the E-mail from Ms. Herries**

At the August 23, 2016 hearing, Defendants cited *ACLU v. Dep't of State*, 878 F. Supp. 2d 215 (D.D.C. 2012), for the proposition that this Court should exclude the e-mail from Ms. Herries from evidence. [Dkt. No. 33]. The case does not apply.

*ACLU* was a Freedom of Information Act ("FOIA") case. 878 F. Supp. 2d at 219. The plaintiff argued that because the embassy cables in dispute were on the WikiLeaks website, the State Department could not withhold the production of the cables under a national security exemption. *Id*. at 223. The *ACLU* court rejected the argument.

The Court determined that "there is no evidence that the Executive has ever officially acknowledged that the specific information at issue in this case was part of the WikiLeaks disclosure (or any other public disclosure)." *ACLU*, 878 F. Supp. 2d at 223-224. Key to this analysis was the fact that the plaintiff sought the cables in dispute without reference to their existence on WikiLeaks but "instead identified each cable by date, subject, originating embassy, and unique message reference number" and that "the State Department made no admission by producing responsive records." *Id*. at 224.

Unlike in *ACLU*, this is not a FOIA case implicating national security through the disclosure of sensitive embassy cables. Instead, the evidence at issue is an internal e-mail from Ms. Herries regarding a DNC-wide meeting – there is not information about what the meeting concerns, nor any ostensibly private information. Accordingly, the interests at stake here do not align with the interests at stake in *ACLU*, aside from the fact that the FOIA procedure has no application here. *See*, *e.g.*, *Sea Shepherd Conservation Society v. Internal Revenue Service*, 89 F. Supp. 3d 81, 97 (D.D.C. 2015) ("But in this case, plaintiff has pointed to the public interest in knowing whether the IRS's audit was in any way related to the statements revealed by the Wikileaks cables, which indicate that United States government officials discussed the IRS's investigation of plaintiff's tax-exempt status with Japanese government officials who were concerned about plaintiff's activities.").

Furthermore, the *ACLU* opinion is entirely unconcerned with the question of whether the fact that a document was obtained from the WikiLeaks website poses any kind of barrier to its admissibility in a judicial proceeding. Indeed, *ACLU* was only concerned with whether the State Department had valid grounds to withhold information in response to a FOIA request, even though that information had already been disclosed to the public through WikiLeaks. This issue strictly pertains to interpretation of FOIA, which is not at issue here, and is unconnected to any evidentiary issues arising from the e-mail itself.

Thus, Defendants' invocation of the *ACLU* case as a barrier to the admission of the e-mail by Ms. Herries is unavailing.

### E. Third Answer to the Question Presented: Plaintiffs Ask this Court to Use its Discretion to Admit the E-mail from Ms. Herries into Evidence Based on the Equities; However, it Is Unclear Whether Any Other Court Has Made the Precise Ruling Plaintiffs Seek Here

Plaintiffs attempted to set the foundation for the e-mail by Ms. Herries through the testimony of Mr. Villalba. Mr. Villalba testified that he went to the Wikileaks website, searched under "Becca Herries," and Plaintiffs' Exhibit 4 was one of the e-mails that appeared under that search.

Plaintiffs contend that the e-mail from the Wikileaks website is not hearsay. *See*, *e.g.*, *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002). Alternatively, Plaintiffs argue that the e-mail is a hearsay exception under Rule 803(6). *See*, *e.g.*, *U.S. v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977) ("allow[ing] the introduction of records made in the regular course of business if it was the regular course of business to make the record at the time of the transaction or within a reasonable time thereafter."); *In re Japanese Elec. Prods. Antitrust Litig.*, 1 723 F.2d 238, 289 (3d Cir. 1983), *certiorari granted in part* 105 S.Ct. 1863, 471 U.S. 1002, 85 L.Ed.2d 157, *reversed on other grounds* 106 S.Ct. 1348, 475 U.S. 574, 89 L.Ed.2d 538, *on remand* 807 F.2d 44 ("Thus, for example, it may well be that a record of a single meeting satisfied the regular practice requirement if the business in question routinely records other important meetings.").

As for foundation and authenticity specific to a document obtained from the WikiLeaks website, it does not appear that there is precedent directly on point.[6] *See* James P. Kelly, Jr., *Wikileaks: A Guide for American Law Librarians*, 104 Law Libr. J. 245, 261 (2012) ("Whether

---

[6] Undersigned counsel performed a narrow search "authen! and wikileak!" in the "all state" and "all federal" databases on Westlaw. Undersigned counsel also performed broader searches of "wikileaks" and "wikileak!" under the "all state" and "all federal" databases on Westlaw.

- 9 -

WikiLeaks would qualify as such a reliable source [of which a court may take judicial notice] has yet to be judicially determined."). There may, however, be some instructive decisions.

For instance, in *Rimi v. Obama*, 60 F. Supp. 3d 52 (D.D.C. 2014), the petitioner sought to reinstate his habeas corpus petition based on information contained on the WikiLeaks website. *Id*. at 54. It does not appear that the government's authenticity objection was adjudicated, *id*. at 56 n.5, since the court dismissed the petition as moot. *Id*. at 54. Yet, on appeal, the D.C. Circuit Court arguably implied that it considered the WikiLeaks documents as admissible evidence: "The same is true here: Rimi offers no evidence, including in the form of the WikiLeaks documents, that the U.S. plans or wishes to recapture him." *Rimi v. Obama*, Nos. 10–5021, 14–5231, 608 Fed.Appx. 4, 5 (D.C. Cir. May 27, 2015).

In *Mobley v. C.I.A.*, 924 F. Supp. 2d 24 (D.D.C. 2013), the court appeared to accept e-mails obtained from Wikileaks as evidence to support the plaintiff's challenge to the CIA's FOIA defense. *Id*. at 50-51.

In *U.S. v. Bout*, No. 08 Cr. 365(SAS), 2011 WL 3369797, at *1 (S.D.N.Y. Aug. 2, 2011), the court appeared to accept cables obtained from WikiLeaks as evidence in support of the defendant's motion to dismiss an indictment based on alleged unlawful extradition. *Id*. at *2.

In *Parker v. Hyperdynamics Corp*., 126 F. Supp. 3d 830 (S.D. Tex. 2015), the court did not rule on the defendants' authenticity objection to a WikiLeaks cables supporting a complaint, *id*. at 845, n. 2, because the court dismissed the complaint, *id*. at 855.

In *Bona Fide Conglomerate v. Sourceamerica*, No.: 3:14-cv-00751-GPC-DHB, 2016 WL 4361808, at *1 (S.D. Cal. Aug. 16, 2016), privileged information was uploaded onto WikiLeaks. *Id*. at *4. It appears that the argument by the party who asserted the privilege necessarily implied that the privileged information on Wikileaks was authentic, as a basis for seeking, *inter alia*,

- 10 -

attorney disqualification. *Id*. at \*9-\*12; *accord Bona Fide Conglomerate v. Sourceamerica*, No.: 14-cv-0751-GPC-DHB, 2016 WL 67720, at \*5 (S.D. Cal. Jan. 5, 2016) ("Defendant alleges that Plaintiff provided these illegal recordings to third parties and that these recordings eventually ended up on WikiLeaks.").

In *Electronic Privacy Information Center v. Department of Justice Criminal Division*, 82 F. Supp. 3d 307 (D.D.C. 2015), the court noted, "On November 28, 2010, WikiLeaks published numerous classified United States government documents that had been provided to it by Private Bradley Manning." *Id*. at 311.

Here, Plaintiffs would ask this Court to exercise its discretion to accept the e-mail from Ms. Herries into evidence. There are sufficient *indicia* of reliability. The e-mail identifies Ms. Herries as the special assistant to the (then) CEO of the DNC, which is what Ms. Herries previously stated in her sworn declaration. [Dkt. No. 10]. *Compare*, *e.g.*, *Salmeron v. Enterprise Recovery Sys.*, 579 F.3d 787, 791 (7th Cir. 2009) ("Both the copy of the Guarantee Services Agreement leaked to Wikileaks and the copy provided to the Chronicle bore Bates stamps conclusively demonstrating that they originated from USA Funds's document production during this lawsuit."). Moreover, what the e-mail shows – Ms. Herries organizing a DNC-wide meeting – is consistent with her role as the special assistant to the (then) CEO of the DNC. Furthermore, it does not appear that Defendants are asserting that the document is not an e-mail from Ms. Herries.

Plaintiffs would also submit that the equities weigh in favor of the admission of the e-mail from Ms. Herries. Ms. Herries submitted sworn testimony that is at odds with what the video evidence shows. Yet, that sworn testimony shifted the burden to Plaintiffs regarding the Motion to Quash. Plaintiffs asked Defendants to produce Ms. Herries at the August 23, 2016

- 11 -

hearing, but they refused to do that. They also refused to produce any of the security guards who witnessed the service of process event and otherwise interfaced with Plaintiffs' process server. This Court should allow into evidence the e-mail from Ms. Herries as an evidentiary remedy.

Specifically, because the sworn testimony by Ms. Herries shifted the evidentiary burden to Plaintiff, because that burden-shifting sworn testimony is dubious in light of the video evidence, because Defendants refused to produce Ms. Herries and the security guards, it is only fair that Plaintiffs be able to introduce an e-mail from Ms. Herries.

## II.  CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully ask this Court to grant Plaintiffs' motion to allow the into evidence an e-mail from Ms. Herries obtained from the WikiLeaks website, [Dkt. No. 33-5], which was marked for identification purposes as Plaintiffs' Exhibit 4. Moreover, for the reasons stated on paper and orally, Plaintiffs respectfully ask this Court to find that service of process was proper on the DNC either under 4(h)(1)(A) or Rule 4(h)(1)(B), and that service of process was proper on Congresswoman Schultz either under Rule 4(e)(1) or Rule 4(e)(2)(C).

DATED: August 24, 2016

                                              RESPECTFULLY SUBMITTED,

                                              /s/ Cullin O'Brien
                                              By: Cullin O'Brien

                                              CULLIN O'BRIEN LAW, P.A.
                                              CULLIN O'BRIEN
                                              Florida Bar No. 597341
                                              6541 NE 21st Way
                                              Fort Lauderdale, Florida 33308
                                              Telephone:    (561) 676-6370
                                              Facsimile:     (561) 320-0285
                                              cullin@cullinobrienlaw.com

                                              *[additional counsel on following page]*

        BECK & LEE TRIAL LAWYERS
        JARED H. BECK
        Florida Bar No. 20695
        ELIZABETH LEE BECK
        Florida Bar No. 20697
        Corporate Park at Kendall
        12485 SW 137th Ave., Suite 205
        Miami, Florida 33186
        Telephone:   (305) 234-2060
        Facsimile:    (786) 664-3334
        jared@beckandlee.com
        elizabeth@beckandlee.com

        ANTONINO G. HERNANDEZ P.A.
        ANTONINO G. HERNANDEZ
        Florida Bar No. 164828
        4 SE 1st Street, 2nd Floor
        Miami, Florida 33131
        Telephone:   (305) 282 3698
        Facsimile:    (786) 513 7748
        Hern8491@bellsouth.net

        <u>Counsel for Plaintiffs and the Proposed Classes</u>

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing instrument was e-filed with the Clerk of the Court using CM/ECF, this 24th day of August 2016.

                                  */s/ Cullin O'Brien*
                                  CULLIN O'BRIEN