**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:16-CV-61511-WJZ**

| | |
|---|---|
| CAROL WILDING, et al., | |
| Plaintiffs, | |
| v. | |
| DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE, et al., | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**
**COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

III.   ARGUMENT...................................................................................................... 4

      A.    Plaintiffs Lack Standing .......................................................................... 4

           1.    Plaintiffs do not allege a cognizable injury-in-fact ..................... 5

           2.    Plaintiffs cannot meet Article III's causation requirement.......... 8

           3.    Plaintiffs' purported injuries are not redressable........................ 9

      B.    The Complaint Fails To Meet The Federal Rules' Basic Pleading
           Requirements ......................................................................................... 12

           1.    Plaintiffs' generic allegations against "Defendants" are insufficient......... 13

           2.    Plaintiffs fail to state a claim for fraud or negligent
                misrepresentation (Counts I & II)............................................... 14

           3.    Plaintiffs fail to state a claim under the CPPA (Count III)......... 15

           4.    Plaintiffs fail to state a claim for unjust enrichment (Count IV) ............... 16

           5.    Plaintiffs fail to state a claim for breach of fiduciary duty (Count V)........ 17

           6.    Plaintiffs fail to state a claim for negligence (Count VI) ........... 17

      C.    Plaintiffs' Class Allegations Should be Stricken................................... 17

IV.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Wright*,
   468 U.S. 737 (1984) ................................................................................................ 5

*Ambrosia Coal & Const. Co. v. Pages Morales*,
   482 F.3d 1309 (11th Cir. 2007) ........................................................................... 13

*Andrews v. Am. Tel. & Tel. Co.*,
   95 F.3d 1014 (11th Cir. 1996) ............................................................................. 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 12

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*,
   493 F.3d 841 (7th Cir. 2007) ............................................................................... 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 12, 13

*Bennett v. Hayes Robertson Grp., Inc.*,
   880 F. Supp. 2d 1270 (S.D. Fla. 2012) .............................................................. 19

*Berg v. Obama*,
   574 F. Supp. 2d 509 (E.D. Pa. 2008) ................................................................ 6, 8

*Bruhl v. Price Waterhousecoopers Int'l*,
   257 F.R.D. 684 (S.D. Fla. 2008) ......................................................................... 19

*Buell v. Direct Gen. Ins. Agency, Inc.*,
   No. 8:06-CV-1791-T-26MSS, 2007 WL 1296347 (M.D. Fla. May 1, 2007) ......................... 18

*Cal. Democratic Party v. Jones*,
   530 U.S. 567 (2000) ........................................................................................ 6, 10

*Capital Bank v. MVB, Inc.*,
   644 So.2d 515 (Fla. 3d DCA 1994) .................................................................... 17

*Case v. Miami Beach Healthcare Grp., Ltd.*,
   No. 14-24583-CIV, 2016 WL 1622289 (S.D. Fla. Feb. 26, 2016) ....................... 7, 17

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
   408 F.3d 1349 (11th Cir. 2005) ............................................................................. 8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Clapper v. Amnesty Int'l,*
  133 S. Ct. 1138 (2013) .................................................................................................. 7

*Colo. Taxpayers Union, Inc. v. Romer*,
  963 F.2d 1394 (10th Cir. 1992), *cert. denied*, 507 U.S. 949 (1993) ........................... 7

*Cone Corp. v. Fla. Dep't of Transp*.,
  921 F.2d 1190 (11th Cir. 1991) ................................................................................... 5

*Conigliaro v. Norwegian Cruise Line Ltd*.,
  No. 05-21584-CIV, 2006 WL 7346844 (S.D. Fla. Sept. 1, 2006)............................. 18

*Cousins v. Wigoda*,
  419 U.S. 477 (1975) .................................................................................................. 10

*Crist v. Comm'n on Presidential Debates*,
  262 F.3d 193 (2d Cir. 2001) ....................................................................................... 7

*Cruz v. Cinram Int'l, Inc*.,
  574 F. Supp. 2d 1227 (N.D. Ala. 2008).................................................................... 13

*Delgado v. Laundromax, Inc*.,
  65 So.3d 1087 (Fla. 3d DCA 2011)........................................................................... 17

*Democratic Party v. Wis. ex. rel. LaFollette*,
  450 U.S. 107 (1982) .................................................................................................. 10

*Doe v. Pryor*,
  344 F.3d 1282 (11th Cir. 2003) .................................................................................. 8

*Dornan v. U.S. Sec'y of Def*.,
  676 F. Supp. 6 (D.D.C. 1987)..................................................................................... 6

*Douglas Asphalt Co. v. QORE, Inc*.,
  657 F.3d 1146 (11th Cir. 2011) ................................................................................ 20

*Eu v. S.F. Cty. Democratic Cent. Comm*.,
  489 U.S. 214 (1989) .................................................................................................. 10

*Fifth Third Bank v. Barkauskas*,
  No. 2:12-cv-577-FTM-SPC, 2012 WL 5507831 (M.D. Fla. Nov. 14, 2012) ........................ 13

*Fitzhenry v. ADT Corp*.,
  No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) ................................... 20

# TABLE OF AUTHORITIES
(continued)

**Page**

*Fla. Family Policy Council v. Freeman,*
   561 F.3d 1246 (11th Cir. 2009) ......................................................................... 5

*Formula LLC v. RSUI Indem. Co.*,
   No. 09-60592-CIV, 2009 WL 2342455 (S.D. Fla. July 28, 2009) ........................... 13

*Found. for Developmentally Disabled, Inc. v. Step By Step Early Childhood Educ.*
   *& Therapy Ctr., Inc.*,
   29 So. 3d 1221 (Fla. DCA 2010) ...................................................................... 16

*Franklin v. Curry,*
   738 F.3d 1246 (11th Cir. 2013) ...................................................................... 13

*Garcia v. Santa Maria Resort* ............................................................................. 15

*Gottlieb v. Fed. Election Comm'n,*
   143 F.3d 618 (1998) ....................................................................................... 7

*Green Leaf Nursery v. E.I. Dupont De Nemours & Co.*,
   341 F.3d 1292 (11th Cir. 2003) ...................................................................... 15

*Hasenfus v. Secord,*
   962 F.2d 1556 (11th Cir. 1992) ...................................................................... 17

*Hollingsworth v. Perry,*
   133 S. Ct. 2652 (2013) .................................................................................... 4

*IberiaBank v. Coconut 41, LLC*,
   984 F. Supp. 2d 1283 (M.D. Fla. 2013), *aff'd*, 589 F. App'x 479 (11th Cir.
   2014) ........................................................................................................... 16

*Karhu v. Vital Pharm., Inc.*,
   No. 14-11648, 621 F. App'x 952 (11th Cir. 2015) ............................................... 19

*Karhu v. Vital Pharms., Inc*.,
   No. 13-60768-CIV, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014) .............................. 20

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury,*
   773 F.3d 243 (11th Cir. 2014), *cert. denied sub nom. Kawa Orthodontics, LLP*
   *v. Lew*, 136 S.Ct. 64 (2015) ......................................................................... 4, 8

*Kelly v. Harris,*
   331 F.3d 817 (11th Cir. 2003) ........................................................................ 7

# TABLE OF AUTHORITIES
(continued)

**Page**

*Lane v. Lew*,
  No. 1:15-CV-01767-WSD-JFK, 2016 WL 3746581 (N.D. Ga. Apr. 13, 2016) ...................... 13

*Lehnert et. al., v. Ferris Faculty Assoc.*,
  500 U.S. 507 (1991) ........................................................................................................ 19

*Liautaud v. Liautaud*,
  221 F.3d 981 (7th Cir. 2000) .......................................................................................... 16

*Lindquist v. Linxian*,
  No. 11-23876-CIV, 2012 WL 3811800 (S.D. Fla. Sept. 4, 2012)............................................ 13

*Little v. T–Mobile USA, Inc.*,
  691 F.3d 1302 (11th Cir. 2012) ...................................................................................... 18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................... 4, 8

*Mamani v. Berzain*,
  654 F.3d 1148 (11th Cir. 2011) .................................................................................. 13, 15

*McGee v. JP Morgan Chase Bank, NA*,
  520 F. App'x 829 (11th Cir. 2013) ................................................................................. 15

*Monitor Patriot Co. v. Roy*,
  401 U.S. 265 (1971) ...................................................................................................... 12

*MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  755 F. Supp. 2d 1205 (M.D. Fla. 2010).............................................................................. 18

*N.A.A.C.P. v. Alabama*,
  357 U.S. 449 (1958) ...................................................................................................... 12

*O'Brien v. Brown*,
  409 U.S. 1 (1972) ..................................................................................................... 6, 10

*Ohio Org. Collaborative v. Husted*,
  No. 2:15-CV-01802, 2015 WL 7008530 (S.D. Ohio Nov. 12, 2015) ...................................... 12

*Orient v. Linus Pauling Inst. of Sci. & Med.*,
  936 F. Supp. 704 (D. Ariz. 1996) .................................................................................... 5

*Orlinsky v. Patraka*,
  971 So. 2d 796 (Fla. 3d. DCA 2007)................................................................................. 17

# TABLE OF AUTHORITIES
(continued)

**Page**

*Plotkin v. Ryan*,
   239 F.3d 882 (7th Cir. 2001) ................................................... 10

*Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*,
   820 F. Supp. 2d 1293 (S.D. Fla. 2011) ....................................... 14

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
   993 F.2d 800 (11th Cir. 1993) ................................................... 4

*Reiner v. Reiner*,
   400 So. 2d 1292 (Fla. 4th DCA 1981) ........................................ 16

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ................................................................ 11

*Slaby v. Fairbridge*,
   3 F. Supp. 2d 22 (D.D.C. 1998) ................................................ 16

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016), *as revised* (May 24, 2016) ....................... 8

*St. John's United Church of Christ v. F.A.A.*,
   550 F.3d 1168 (D.C. Cir. 2008) ................................................. 6

*Steel Co. v. Citizens for a Better Environ.*,
   523 U.S. 83 (1998) ................................................................. 10

*Stevens v. InPhonic, Inc.*,
   662 F. Supp. 2d 105 (D.D.C. 2009) ............................................ 15

*Vandenbrink v. State Farm Mut. Auto. Ins. Co.*,
   No. 8:12-cv-897-T-30TBM, 2012 WL 3156596 (M.D. Fla. Aug. 3, 2012) ............................ 18

*Walewski v. Zenimax Media, Inc.*,
   502 F. App'x 857 (11th Cir. 2012) ............................................. 18

*Wolfe v. Ark. Democratic Party*,
   No. 4:12CV00314 JMM, 2012 WL 3776476 (E.D. Ark. Aug. 30, 2012) ............................... 10

*Zarrella v. Pac. Life Ins. Co.*,
   809 F. Supp. 2d 1357 (S.D. Fla. 2011) ....................................... 14

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ........................................... 14, 15

# TABLE OF AUTHORITIES
(continued)

Page

**CONSTITUTIONAL PROVISIONS**

U.S. CONST., art. 3, § 2 ........................................................................................ passim

U.S. CONST., amend. I ........................................................................................... passim

**STATUTES**

D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 ................................... 3, 4, 13, 15

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8............................................................................................... 12, 13, 14

Fed. R. Civ. P. 9............................................................................................... 12, 14, 15

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 1, 5

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 12

Fed. R. Civ. P. 23............................................................................................... 11, 18, 19

Based on vague claims of unspecified injury, Plaintiffs purport to bring a putative class action against the Democratic National Committee (the "DNC") and Congresswoman Debbie Wasserman Schultz (formerly the DNC Chair) (together, "Defendants") on behalf of (1) all donors to Senator Bernie Sanders' presidential campaign (the "Sanders Campaign"); (2) all donors to the DNC; and (3) "all registered Democrats," for alleged violations of largely unidentified state laws. The result is a facially insufficient Complaint, riddled with incurable jurisdictional and substantive defects, even when viewed in the light most favorable to Plaintiffs. For the reasons that follow, this action should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure (the "Federal Rules") 12(b)(1) or 12(b)(6). In the alternative, to the extent any portion of the Complaint survives, the Court should strike the class allegations, which are facially unsustainable.

## I.      INTRODUCTION

This is no garden variety class action, seeking redress for economic losses suffered by similarly situated plaintiffs. This is an action brought by attorneys who run a SuperPAC, who are using the litigation as a political weapon against a national party (and to promote their SuperPAC) in the middle of an election. Permitting the action to continue would embolden others to attempt to attack political rivals through similarly frivolous litigation, and threaten serious First Amendment injury to Defendants, the Sanders Campaign, and state and local party organizations, all of which would find themselves subject to invasive discovery so that Plaintiffs may attempt to identify the class members they purport to represent. Moreover, the putative members of those classes—the vast majority of whom almost certainly do not share Plaintiffs' political views—have no realistic means of disassociating from this action, brought in their name against the political party they likely support (and which is siphoning resources that otherwise could be used in the election, including, ironically, resources that those who donated to the DNC may have themselves contributed), until the class certification stage. All have their own First Amendment rights, not only to *associate* with the organizations and causes of their choice, but *to not be forced to associate* with Plaintiffs in this political action. But the Court need not wade into this First Amendment thicket, because the Complaint is facially deficient in several ways, each

1

independently requiring dismissal.

First, Plaintiffs fail to meet the bare minimum requirements for constitutional standing, which mandate dismissal unless Plaintiffs can demonstrate they have a non-speculative legally cognizable injury, fairly traceable to Defendants, that is likely redressable by a favorable ruling. Plaintiffs cannot meet any of these requirements. Although their claims are animated by their contention that Defendants were "biased in favor of" Secretary Clinton in the presidential primary process in purported violation of the DNC Charter, nowhere does the Complaint link that theory—or *any* alleged actions of Defendants—to injuries suffered by the proposed class members. Nor could Plaintiffs plausibly do so. Courts have routinely and uniformly rejected similar claims of donor or political injury as insufficient to support standing and, in this particular case, the indisputable facts run contrary to Plaintiffs' theory. Thus, whether or not Plaintiffs could ultimate prove Defendants were "biased" (and Defendants submit they could not), because Plaintiffs lack standing, there is no jurisdictional basis for considering their claims.

But even if standing were not an issue, Plaintiffs' substantive legal claims suffer from several additional incurable deficiencies. Plaintiffs seek extraordinary and unprecedented relief: a court order binding a political party to an internal rule of operation adopted within the party's discretion and related to its selection of its presidential nominee, and a multi-million dollar judgment, based on Plaintiffs' contention that a political party did not abide by its own rule. Specifically, Plaintiffs allege that Defendants violated a provision in the DNC Charter stating the DNC Chair "shall exercise impartiality and evenhandedness" in the presidential primary and "be responsible for ensuring that the national officers and staff of the [DNC] maintain impartiality and evenhandedness" during the same. Defendants dispute Plaintiffs' claim that they did not act in accordance with this provision, but even taking Plaintiffs' allegations as true for purposes of this motion, Plaintiffs have not and cannot establish that their theory is actionable in this, or any, Court. Plaintiffs bring this case in diversity, alleging violations of state law on behalf of individuals residing in at least 45 states plus the District of Columbia. Yet, with a single exception, Plaintiffs fail to even identify *which* state's (or states') laws were purportedly violated. Moreover,

far from alleging specific facts to support their claims, Plaintiffs simply recite boilerplate legal language setting forth the standard elements of their causes of action, then make conclusory assertions that Defendants are liable for "fraud," "negligent misrepresentation," "unjust enrichment," "breach of fiduciary duty," "negligence," and the D.C. Consumer Protection Procedures Act (the "CPPA"). But a cursory examination of the typical elements of these causes of action demonstrates that, as a matter of law, Plaintiffs state no claim. Plaintiffs' fraud and misrepresentation claims are also subject to dismissal because they are not pled with particularity, as required by the Federal Rules. Finally, Plaintiffs' class allegations are facially deficient, because, among other problems, there is no conceivable means for Plaintiffs to prove ascertainability, commonality, or manageability.

In sum, the deficiencies in the Complaint are numerous, and not remediable by amendment. This action should be dismissed with prejudice.

## II.     BACKGROUND

The current governing First Amended Complaint (the "Complaint," or "FAC") (ECF No. 8), purports to state claims on behalf of three extremely broad classes of Plaintiffs: (1) "All people or entities who have contributed to the DNC from January 1, 2015 through the date of this action ('DNC Donor Class')"; (2) "All people or entities who have contributed to the [Sanders Campaign] from January 1, 2015 through the date of this action ('Sanders Donor Class')"; and (3) "All registered members of the Democratic Party ('Democratic Party Class')." *Id.* ¶ 175.

- The proposed Sanders Donor Class representatives are described only by name, city and state of residence, and a statement that each "contributed a total of [a certain amount of money]" to the Sanders Campaign "via ActBlue." *Id.* ¶¶ 2-103, 177. The Complaint does not state when the contributions were made or whether they were related to any actions by Defendants, nor does it explain how these individuals have a cognizable injury as a result.

- The six proposed class representatives for the DNC Donor Class are described by name, city and state of residence, a statement that they "contributed a total of [a certain amount of money] to [the DNC]," and an estimate as to when the contribution was made. *Id.* ¶¶ 104-109, 176. Some also include minimal detail as to how the contribution was made. The Complaint does not state whether the contributions were related to any actions by Defendants, nor does it explain how these individuals have a cognizable injury as a result.

3

- The proposed Democratic Party Class representatives are described only by name, city and state of residence, and that they have been registered as a Democrat for a certain period of time. *Id.* ¶¶ 110-51, 178. No other information is provided, including what is meant by "registered," nor does the Complaint state how this class was injured.

Animating Plaintiffs' claims is their contention that Defendants favored Secretary Clinton in the primary process over Plaintiffs' preferred candidate Senator Sanders and, as a result, are allegedly liable for "fraud" (Count I), "negligent misrepresentation" (Count II), violation of the CPPA (Count III), "unjust enrichment" (Count IV), and "breach of fiduciary duty," (Count V). *Id.* ¶¶ 185-217. Plaintiffs' final claim for "negligence," based on allegations of a data breach by Russian hackers (Count VI), appears to be the only claim not related to their theory of "bias." *See id.* ¶¶ 218-28. Plaintiffs assert that the Court has diversity jurisdiction, *see id.* ¶ 1; yet, with the exception of the allegations made under the CPPA, they fail to identify authority for any of their claims, omitting even a simple reference to *which* state's laws they contend apply.

## III.    ARGUMENT

### A.    Plaintiffs Lack Standing

Plaintiffs cannot sustain this action because they allege no cognizable injury that can be fairly traced to Defendants' alleged actions, or is likely to be redressable by a decision of this court, and thus fail to clear a fundamental constitutional threshold, necessary to pursue their claims in federal court.

Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." U.S. Const. art. 3, § 2. Central to that requirement is that a litigant have "standing." This requires more than a "keen interest in the issue." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013); *see also Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 809 (11th Cir. 1993). To avoid dismissal, the plaintiff bears the burden of demonstrating (1) he has suffered "a concrete and particularized" injury, (2) that is "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party [who is] not before the court," and (3) "likely … will be redressed by a favorable [judicial] decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citation omitted); *see also Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d

243, 249 (11th Cir. 2014), *cert. denied sub nom. Kawa Orthodontics, LLP v. Lew*, 136 S.Ct. 64 (2015); *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009). When "the plaintiff seeks declaratory and injunctive relief, he must demonstrate that he is likely to suffer future injury." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991). Failure to allege any of these elements leaves a plaintiff without standing, and the court without jurisdiction. *See Freeman*, 561 F.3d at 1253. Filing a suit as a class action does not relax these requirements. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). In conducting this jurisdictional inquiry, a court may look to evidence outside of the pleadings. *See Freeman*, 561 F.3d at 1253.

For the reasons that follow, the Complaint should be dismissed pursuant to Federal Rule 12(b)(1) for lack of standing.

### 1.    Plaintiffs do not allege a cognizable injury-in-fact.

Plaintiffs have not and cannot allege "specific, concrete facts" demonstrating that they have suffered (or, to maintain their claim for equitable relief, will suffer) "demonstrable, particularized injury," that is "'real and immediate,' not 'conjectural' or 'hypothetical.'" *Cone*, 921 F.2d at 1204 (citations omitted). Indeed, Plaintiffs fail to allege any risk of future injury at all. For this reason alone, the request for declaratory and injunctive relief should be dismissed. *See id.* at 1205. But Plaintiffs fail to satisfy the injury-in-fact requirement as to *any* of their claims or requested relief. Noticeably absent from the Complaint are allegations that any proposed class representatives—who are simply described as donors or "registered Democrats"—suffered injury *because of* Defendants' alleged actions. Even construing all reasonable inferences in Plaintiffs' favor, these allegations do not a cognizable injury make.

First, donating to an organization does not confer a legally protected interest in the organization's assets or operations absent some independent right. *See Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F. Supp. 704, 707 (D. Ariz. 1996) (finding plaintiff "fail[ed] to provide and the Court has not found any statutes, cases or other bases in law" to support proposition that making donations "confer[s] a legally protected interest … on a donor, absent independent rights such as those that might arise in a contractual relationship"). And Plaintiffs have not (and could

not plausibly) allege that the parties have a relationship that independently establishes such an interest. *Cf. Berg v. Obama*, 574 F. Supp. 2d 509, 529 (E.D. Pa. 2008) (finding "statements of principle and intent" in party platform "not enforceable promises under contract law").

There are particularly good reasons for this rule in the political arena. To hold otherwise would confer on anyone who donates to a political campaign or committee—or, as Plaintiffs allege, *merely associates with* a political party—a right to litigate their political grievances in federal court. This would enmesh the courts in private political battles where they could not avoid encroaching upon First Amendment rights. If the Plaintiffs have standing to sue, then so, too, would have donors to President George H.W. Bush's campaign, based on his 1988 Republican National Convention Speech, where he famously said, "Read my lips: no new taxes." But courts have routinely rejected suits based on claims that political promises were broken, finding them neither enforceable nor redressable. *See, e.g.*, *St. John's United Church of Christ v. F.A.A.*, 550 F.3d 1168, 1170 (D.C. Cir. 2008); *Dornan v. U.S. Sec'y of Def.*, 676 F. Supp. 6, 7 (D.D.C. 1987).

Further, Plaintiffs seek to obtain judicial redress striking at the core of "the process by which a political party 'select[s] a standard bearer who best represents the party's ideologies and preferences,'" an area where the Supreme Court has repeatedly and "vigorously affirm[ed]," the First Amendment reserves a "special place" and accords "special protection." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) (quoting *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989)); *see also O'Brien v. Brown*, 409 U.S. 1, 4 (1972) ("It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes" and in such cases "[h]ighly important questions are presented concerning justiciability" and "[v]ital rights of association guaranteed by the Constitution are also involved"). Consistent with this authority, the court in *Berg v. Obama* granted the DNC's motion to dismiss where the plaintiff, "a life-long member of the Democratic Party," had made donations to the DNC and contended the DNC violated "promises" in its national platform. 574 F. Supp. at 513, 528. The court explained:

The "promises" that Plaintiff identifies are statements of principle and intent in the political

realm. They are not enforceable promises under contract law. Indeed, *our political system could not function if every political message articulated by a campaign could be characterized as a legally binding contract enforceable by individual voters*. Of course, *voters are free to vote out of office those politicians seen to have breached campaign promises. Federal courts, however, are not and cannot be in the business of enforcing political rhetoric.*

*Id*. at 529 (emphases added).

Similarly, voters do not suffer a cognizable injury based on claims that they "suffered a diminution in their ability to influence the political process," or that their preferred candidate was put at a disadvantage, because such theories necessarily "rest[] on gross speculation and [are] far too fanciful to merit treatment as an 'injury in fact.'" *Gottlieb v. Fed. Election Comm'n*, 143 F.3d 618, 620, 621 (1998); *see also Kelly v. Harris*, 331 F.3d 817, 820 (11th Cir. 2003); *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001); *Colo. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1395, 1397 (10th Cir. 1992), *cert. denied*, 507 U.S. 949 (1993). This is certainly true here, where any assertion that Defendants' purported bias actually impacted the primary would be based entirely on speculation, not capable of verification through proof, and would ignore all possible alternative explanations, including that the outcome was more likely the result of the relative appeal of the candidates as judged by the national Democratic electorate. Nor could any bias be found to have diminished Plaintiffs' influence as voters: Plaintiffs cannot plausibly allege that Defendants restricted their ability to engage in any of the activities open to all politically active citizens, including "rais[ing] funds to support" their candidate, volunteering to work on his campaign, or voting for their candidate. *Gottlieb*, 143 F.3d at 621-22.

Plaintiffs' negligence claim, which alleges that a hacker known as "Guccifer 2.0" "posted … documents purportedly taken from … DNC[] servers including ... names and personal information of donors to the [DNC]," FAC ¶ 165, also falls short. Nowhere do Plaintiffs allege that any of the proposed class representatives were injured as a result. *See Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1151 (2013) (holding plaintiffs "cannot manufacture standing merely . . . based on their fears of hypothetical future harm that is not certainly impending"); *Case v. Miami Beach Healthcare Grp., Ltd.*, No. 14-24583-CIV, 2016 WL 1622289, at *1, *3 (S.D. Fla. Feb. 26,

2016) (holding plaintiff lacked standing to sue healthcare provider after its employee "gained unauthorized access to [the] patient database, and … removed the records of over 85,000 patients, including [plaintiff]" where plaintiff failed to allege her information "was actually misused, or that the unauthorized disclosure of her sensitive information caused her any type of harm….").

Finally, with regard to the class defined as "all registered Democrats," the Complaint does not even attempt to identify a cognizable injury. Plaintiffs thus fail to carry their burden of alleging facts that can satisfy each necessary element of constitutional standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016), *as revised* (May 24, 2016). Nor can amendment save this class from dismissal. *See Berg*, 574 F. Supp. 2d at 519 (finding harm averred to plaintiff and "other Democratic Americans" "too vague and its effects too attenuated to confer standing").

## 2. Plaintiffs cannot meet Article III's causation requirement.

Plaintiffs also cannot meet the causation requirement, which requires that they demonstrate "as a matter of *fact*, a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) (internal quotation marks and citation omitted). Despite the fact that each of Plaintiffs' alleged causes of actions (except for negligence) appears to rest on their contention that Defendants were "biased" in the primary, the Complaint is devoid of allegations that the proposed class representatives donated—or took any other actions—*in reliance on* anything that Defendants said or did. This is no immaterial oversight. Absent a plausible causal link between the injury alleged and Defendants' actions, the Court lacks jurisdiction. *See Lujan*, 504 U.S. at 560; *see also Kawa Orthodontics*, 773 F.3d at 247 (finding no standing where injury not traceable to defendant); *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (same).

Nor could Plaintiffs plausibly amend their Complaint to address this fatal deficiency, given that their preferred candidate routinely and actively promoted—and successfully fundraised on— allegations virtually identical to those Plaintiffs now make. *See* Ex. A (discussing email from Sanders Campaign to supporters on December 18, 2015, soliciting contributions based on claims the DNC was "plac[ing] its thumb on the scales in support of Hillary Clinton's campaign," which

reportedly raised Sanders more than $1 million in one day).[1] Defendants disputed those allegations then and dispute them now, but no matter their grounding in reality, the fact that such claims were a prominent part of the public conversation during the primary demonstrates that Plaintiffs' theory—that Defendants were secretly biased against Plaintiffs' preferred candidate, and thereby induced the class representatives into donating to the Sanders Campaign and the DNC based on Defendants' public statements of neutrality—cannot credibly be maintained. Indeed, publicly available information demonstrates that several proposed class representatives made donations in spite of—indeed, in many cases likely *because* they accepted as true—the claims of bias (not, as Plaintiffs allege, the other way around).

For example, Rick Washik, FAC ¶ 77, donated to the Sanders Campaign between February 2016 and June 2016, months after posting a link to a petition that claimed that Congresswoman Wasserman Schultz was biased. Exs. B, C & D. Catherine Cyko, FAC ¶ 19, donated to the Sanders Campaign between February 28, 2016 and June 30, 2016, after she posted an article accusing the DNC of bias. *See* Exs. E, F. Marlowe St. Cloud Primack, FAC ¶ 29, made her first reported donation to the Sanders Campaign on March 8, 2016, several days after posting an article accusing the DNC of bias. *See* Exs. G, H. Rosalie Consiglio, FAC ¶ 53, made her first reported donation to the Sanders Campaign a week after posting an article accusing the DNC of bias. Exs. I, J. And Sean Lynch, a proposed class representative for the DNC Donor Class, FAC ¶ 106, announced in a June 17, 2016 post he "donated three bucks to the Dem party so [he] can participate in the class action law suit against them." Ex. K. This sample demonstrates that, aside from not being actionable, Plaintiffs' theory that donors relied upon Defendants' statements about neutrality to make donations they would not have otherwise made is not plausible.

### 3.    Plaintiffs' purported injuries are not redressable.

Finally, because it is highly unlikely that their claimed injuries could be redressed by a favorable judicial decision, Plaintiffs also cannot meet the third required element for standing.

---

[1] All citations to exhibits in this brief are to exhibits attached to the accompanying Declaration of Elisabeth Frost in support of this motion to dismiss.

This is a litigation based on a political party's alleged failure to comply with its own *internal* rules. Plaintiffs' theory that any alleged "bias" was improper is grounded entirely in the DNC's Charter; not a substantive source of law. Indeed, the very first form of relief that Plaintiffs seek is "declaratory and injunctive relief declaring illegal and enjoining, preliminary and permanently, Defendants' violation of and failure to follow the Charter and Bylaws of the Democratic Party." FAC ¶ 229. Even if Plaintiffs' contention that Defendants' alleged "bias" violated state law were sustainable (and for the reasons discussed *infra* at Section III.B, it is not), the extraordinary relief that Plaintiffs seek—a court order binding a political party to abide by an internal rule adopted within the party's discretion, related to the method by which it chooses its presidential nominee—would be unprecedented and raise serious First Amendment concerns. *See, e.g.*, *Jones*, 530 U.S. at 574-77; *Eu*, 489 U.S. at 224-25; *Democratic Party v. Wis. ex. rel. LaFollette*, 450 U.S. 107, 123-24 (1982); *Cousins v. Wigoda*, 419 U.S. 477, 488-91 (1975); *O'Brien*, 409 U.S. at 4; *Wolfe v. Ark. Democratic Party*, No. 4:12CV00314 JMM, 2012 WL 3776476, at *2 (E.D. Ark. Aug. 30, 2012). The same is true for Plaintiffs' request for monetary relief, which cannot be divorced from its political context. Plaintiffs are seeking a court order fining a political party upwards of five million dollars, for its alleged failure to comply with its own internal rules governing its process for selecting its presidential nominee. *See* FAC ¶¶ 231, 232. The severe damage such an award would do to Defendants' First Amendment rights, as well as the chilling effect it would have on protected political activity more broadly (as is clearly Plaintiffs' intention, by seeking an award that would "make an example of Defendants," *id*. ¶ 232), cannot be overstated.[2] The government may not, consistent with the First Amendment, tell a

---

[2] Although Plaintiffs may "be gratified" by such an award, "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 106-107 (1998); *see also Plotkin v. Ryan*, 239 F.3d 882, 885 (7th Cir. 2001) (finding request that campaign return funds not shown to be lawfully raised unsustainable under Article III because "[i]t is unclear how such action would redress the alleged injury-in-fact," i.e., that conduct skewed election results). Plaintiffs also pray for "[a]ttorneys' fees and costs," FAC ¶ 233, but identify no basis for such an award. Moreover, "[a]n 'interest in attorney's fees is … insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Citizens for a Better Environ.*, 523 U.S. at 108 (citation omitted).

political party how to conduct its own internal affairs (where such conduct violates no law), especially as relates to choosing its nominee, or what its leaders or employees may say about the same, publicly or privately.

It is not just Defendants' First Amendment rights that are put in jeopardy by this litigation, but also the rights of the vast majority of the putative *members of the plaintiff classes* identified by the Complaint. Plaintiffs purport to bring this action on behalf of every single person who donated to the Sanders Campaign and the DNC in 2015 and 2016, and virtually every single "registered member[] of the Democratic Party." FAC ¶ 175. Thus, the putative class members include millions of people who could not possibly have a claim to injury under Plaintiffs' theory—including individuals who donated *because of* allegations that Defendants were "biased," people whose donations had nothing whatsoever to do with the actions challenged in this litigation, and the majority of Democratic primary voters who voted for Secretary Clinton over any other candidate, s*ee* Decl. of Patrice Taylor In Supp. of Mot. to Dismiss ("Taylor Decl.") ¶ 6—as well as millions of voters who vehemently *disagree* with Plaintiffs' political theories (or their decision to attempt to achieve through the judiciary what they could not obtain through the political process). *All of these people* are presently putatively party to a lawsuit brought against the DNC in the middle of an election cycle, from which they cannot realistically disassociate themselves unless and until the class is certified under Federal Rule 23(c)(2)(B), which often occurs after substantial litigation and discovery, and even simultaneously with the settlement of an action. Manual for Complex Litigation (4th ed.) §§ 21.321, 21.611, 21.612. This raises serious First Amendment questions about the associational rights of all members of the defined classes who do not share Plaintiffs' political beliefs: the First Amendment not only protects their right to freely associate *with* Defendants, but also "plainly presupposes a freedom *not* to associate" with political speech with which they disagree. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) (emphasis added).

Moreover, to simply identify the members of the classes that they claim to represent, Plaintiffs will have to conduct extensive and invasive discovery of not only Defendants, but also the Sanders Campaign, every local Democratic Party and committee, and every putative member

of each of the three putative subclasses. That is likely to spark significant (and meritorious) First Amendment litigation.[3] It is axiomatic First Amendment law that otherwise not publicly-available membership and donor information, the disclosure of which is reasonably likely to chill First Amendment activity, cannot be compelled absent a compelling state or federal purpose. *See, e.g.*, *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 466 (1958); *see also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the constitutional guarantee [afforded by the First Amendment] has its fullest and most urgent application precisely to the conduct of campaigns for political office."); *Ohio Org. Collaborative v. Husted*, No. 2:15-CV-01802, 2015 WL 7008530, at *3-4 (S.D. Ohio Nov. 12, 2015) (denying motion to compel discovery of political party, because it could chill associational rights "includ[ing] the freedom to make financial contributions to further a common goal," finding "no doubt that the compelled disclosure of such sensitive information in the context of highly charged litigation involving issues of great political controversy would have a chilling effect on plaintiffs' freedom of association by adversely impacting their ability to organize, promote their message(s), and conduct their affairs"). This is further reason to find that Plaintiffs' claims are not likely to be redressable in this litigation.

**B.      The Complaint Fails To Meet The Federal Rules' Basic Pleading Requirements**

Even if Plaintiffs could satisfy standing, the Complaint is facially inadequate, failing to meet the basic pleading requirements in Federal Rules 8, 9, and 12(b)(6).

To survive a motion to dismiss "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires "more than a sheer possibility that a defendant has acted unlawfully" or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. (citing *Twombly*, 550 U.S. at 555). It is insufficient to merely recite the elements of a claim; a complaint must also contain factual allegations that raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Although the facts pled by plaintiffs are generally taken as true at this stage, conclusions of law (including conclusions of law

---

[3] There is no national "registration" of Democratic Party members. Taylor Decl. ¶ 7.

masquerading as fact) and "conclusory allegations … are not entitled to assumptions of truth." *Formula LLC v. RSUI Indem. Co.*, No. 09-60592-CIV, 2009 WL 2342455, at *1 (S.D. Fla. July 28, 2009) (citing *Iqbal*, 556 U.S. at 663-64); *see also Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citing *Iqbal*, 556 U.S. at 679); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Similarly, allegations that are too vague to give the defendants adequate notice of the claims against them are subject to dismissal. *Twombly*, 550 U.S. 544.

Plaintiffs fail to allege *any* facts that could plausibly support a viable claim, relying instead on broad and conclusory allegations. But even the liberal reading appropriate at this stage cannot save the Complaint, which is plainly and fatally deficient on several fronts. *See Franklin*, 738 F.3d at 1250-51; *Mamani*, 654 F.3d at 1153; *Lane v. Lew*, No. 1:15-CV-01767-WSD-JFK, 2016 WL 3746581, at *2 (N.D. Ga. Apr. 13, 2016).[4]

### 1.    Plaintiffs' generic allegations against "Defendants" are insufficient.

At the hearing on Defendants' motion to quash service of process, Plaintiffs' counsel stated for the first time that the claims against Congresswoman Wasserman Schultz are against her personally, not in her capacity as then-DNC Chair. The Complaint, however, improperly refers generically to "Defendants" throughout, failing to describe what actions each Defendant took that could plausibly give rise to Plaintiffs' claims. General references to "Defendants" are insufficient to meet the Federal Rules' pleading requirements. *See, e.g.*, *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007); *Fifth Third Bank v. Barkauskas*, No. 2:12-cv-577-FTM-SPC, 2012 WL 5507831, at *1 (M.D. Fla. Nov. 14, 2012); *Lindquist v. Linxian*, No. 11-23876-CIV, 2012 WL 3811800, *5 (S.D. Fla. Sept. 4, 2012); *Cruz v. Cinram Int'l, Inc*., 574 F. Supp. 2d 1227, 1233 (N.D. Ala. 2008). Only three of the Complaint's 236 paragraphs specifically refer to the Congresswoman, *see* FAC ¶¶ 154, 158, 160. But, even read generously, these

---

[4] As noted, with the exception of the CPPA, Plaintiffs fail to identify which states' laws they rely upon to make their claims. This failure itself renders the Complaint insufficient under Rule 8. But, Plaintiffs' failure to identify these state laws is far from their only pleading deficiency.  To illustrate the other fatal flaws in the Complaint, Defendants assume Plaintiffs mean to invoke Florida state law and apply that state's law accordingly in the following discussion.

paragraphs fail to state a prima facie case for any of the causes of action listed in the Complaint.

>    **2.**    **Plaintiffs fail to state a claim for fraud or negligent misrepresentation (Counts I & II).**

Plaintiffs' fraud and negligent misrepresentation claims are subject to the heightened pleading requirements set forth in Federal Rule 9, which requires they be pled "with particularity." *See also Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*, 820 F. Supp. 2d 1293, 1303 (S.D. Fla. 2011) ("[B]ecause actions for negligent misrepresentation in Florida sound in fraud rather than negligence, the pleading requirements contained in [Rule 9(b)] apply to such actions.") (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993)). To meet this standard, the complaint must identify (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) "what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).

Plaintiffs' generic and non-specific allegations that "Defendants knowingly made false statements and omissions concerning material facts," or that "Defendants intended that the false statements and omissions would induce the [Donor Class Plaintiffs] to rely on them," FAC ¶¶ 186-87, are nothing more than recitations of elements of the cause of action; as such, they fail to meet the federal pleading requirements under Rule 8, much less Rule 9(b)'s particularity requirements. *See Zarrella v. Pac. Life Ins. Co.*, 809 F. Supp. 2d 1357, 1367 (S.D. Fla. 2011) (listing elements for claim of fraud under Florida law as "(1) a misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation"). Further, Plaintiffs fail to allege that any of the proposed class representatives actually relied upon any statement or omissions by Defendants, that they suffered any injuries as a result, or that such reliance was justifiable. *See supra* at Section III.A.2.

For the same reasons, Plaintiffs fail to make a claim for negligent misrepresentation, which must be supported by plausible and particular allegations that "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013) (quoting *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)). Plaintiffs' generic allegations that "Defendants made misrepresentation and omission concerning material facts," which they "intended … would induce the DNC Donor Class Plaintiffs, the Sanders Donor Class Plaintiffs, and members of the DNC Donor Class and the Sanders Donor Class, to rely on them," FAC ¶¶ 192, 194, are nothing more than boilerplate recitations of this cause of action; as such, they cannot survive the motion to dismiss. *See Mamani,* 654 F.3d at 1153. Moreover, Plaintiffs' theory that donors reasonably relied upon statements about neutrality to donate to the Sanders Campaign or the DNC is neither credible nor plausible. *See Green Leaf Nursery v. E.I. Dupont De Nemours & Co.*, 341 F.3d 1292, 1304, 1306–07 (11th Cir. 2003) (affirming dismissal of fraud and negligent misrepresentation claims where plaintiffs' claimed reliance was unreasonable); *Garcia v. Santa Maria Resort*, Inc., 528 F. Supp. 2d 1283 (S.D. Fla. 2007) (dismissing negligent misrepresentation claims because plaintiffs' reliance on defendants' oral misrepresentations was not reasonable). These claims should be dismissed with prejudice. *See Ziemba*, 256 F.3d at 1213. As one court aptly put it, Rule 9(b) requires Plaintiffs to set forth "the who, what, when, where, and how with respect to the circumstances of the fraud." *Stevens v. InPhonic, Inc.*, 662 F. Supp. 2d 105, 114 (D.D.C. 2009) (citations omitted). Plaintiffs do none of these things.

### 3.   Plaintiffs fail to state a claim under the CPPA (Count III).

Plaintiffs cannot bring a claim under the CPPA, because none of the proposed class representatives are "consumers" within the meaning to the statute. *See* D.C. Code § 28-3901(a)(2) (defining a consumer as "a person who, other than for purposes of resale, does or would purchase,

lease (as lessee), or receive consumer goods or services, including as a co-obliger or surety, or does or would otherwise provide the economic demand for a trade practice"). Plaintiffs did not purchase any goods or services from either Defendant. *See Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 27 (D.D.C. 1998) ("Plaintiff … does not allege that she purchased, leased or received consumer goods or services from defendant … and therefore fails to establish any consumer-merchant relationship to bring it within the scope of the [statute].").

       **4.**       **Plaintiffs fail to state a claim for unjust enrichment (Count IV).**

Plaintiffs' claim for unjust enrichment also fails. To succeed on this claim, a plaintiff must show "(1) it conferred a benefit on [defendant] of which [defendant] is aware, [defendant] voluntarily accepted and retained the benefit conferred, and (3) 'the circumstances are such that it would be inequitable for [defendant] to retain the benefit without paying for it.'" *Nova Info. Sys., Inc. Greenwich Ins. Co.*, 365 F.3d 996, 1007 (11th Cir. 2004) (quoting *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000)). Again, Plaintiffs do little more than recite the elements of this claim and state—without any factual support—they are present. *See* FAC ¶ 209. But beyond those basic pleading problems (which are alone reason to dismiss the claim), Plaintiffs ignore that unjust enrichment is an "'equitable claim based on a legal fiction which implies a contract as a matter of law even though the parties to such an implied contract never indicated by deed or word that an agreement existed between them.'" *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1296 (M.D. Fla. 2013), *aff'd*, 589 F. App'x 479 (11th Cir. 2014) (citation and quotation omitted). Contributions to political campaigns are not contracts, either express or implied, and courts have routinely rejected attempts to assert a claim for unjust enrichment under similar circumstances. For example, when a donor sued a foundation for alleged misuse of proceeds of gifts, a Florida appeals court reversed a finding of unjust enrichment, holding that, as a matter of law, absent evidence that the foundation committed fraud or "exercised undue influence," the claim could not stand. *Found. for Developmentally Disabled, Inc. v. Step By Step Early Childhood Educ. & Therapy Ctr., Inc.*, 29 So. 3d 1221, 1227 (Fla. DCA 2010); *see also Reiner v. Reiner*, 400 So. 2d 1292, 1293 (Fla. 4th DCA 1981) (gift relationship cannot support unjust enrichment); *Liautaud v. Liautaud*, 221 F.3d

981, 988 (7th Cir. 2000) (same). Here, because Plaintiffs' unjust enrichment claim depends on the inadequate fraud allegations, resolution of the fraud claim "is dispositive of the unjust enrichment claim as well." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

> **5.     Plaintiffs fail to state a claim for breach of fiduciary duty (Count V).**

In Florida, "[f]iduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. 3d DCA 1994) (citation omitted). To establish a general fiduciary relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. 3d. DCA 2007) (citation omitted). Also, the "fiduciary relationship must be established by competent evidence, and the burden of proving such a relationship is on the party asserting it." *Id.* Here, Plaintiffs have failed to allege any facts to support the proposition that any Plaintiffs were in a fiduciary relationship with Defendants.

> **6.     Plaintiffs fail to state a claim for negligence (Count VI).**

Lastly, Plaintiffs bring a claim of negligence on behalf of the DNC Donor Class related to a data breach. A negligence claim requires a plaintiff to show that (1) defendant owes plaintiff a duty, (2) defendant breached the duty, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) plaintiff suffered damages. *Hasenfus v. Secord*, 962 F.2d 1556, 1559–60 (11th Cir. 1992); *see also Delgado v. Laundromax, Inc.*, 65 So.3d 1087, 1089 (Fla. 3d DCA 2011). But Plaintiffs fail to describe how Defendants breached any purported duty and further fail to allege that any of the proposed class representatives were actually injured as a result of the purported data breach. Having failed to allege any actual harm, Plaintiffs cannot assert a claim for negligence. *See Case*, 2016 WL 1622289, at *3 (dismissing complaint where plaintiff failed to allege any actual injury as a result of a data breach in which her private information was accessed).

**C.     Plaintiffs' Class Allegations Should be Stricken**

In the alternative, the class allegations should be stricken, because it is clear from the face of the Complaint that none of the classes are ascertainable and individual issues would

predominate over class-wide issues.

An action may be maintained as a class action only if all four prerequisites of Rule 23(a) and the requirements of one of Rule 23(b)'s subsections are met.[5] A plaintiff seeking certification also "must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal citations and quotation marks omitted). Class allegations may be stricken at the motion-to-dismiss stage "[w]here the propriety of a class action procedure is plain from the initial pleadings." *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-cv-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012); *see also MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010) (accord).

*First*, the class definitions are fatally overbroad, because they encompass millions of individuals who have no possible cognizable injury-in-fact. *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where class definition "impermissibly includes members who have no cause of action"); *Buell v. Direct Gen. Ins. Agency, Inc.*, No. 8:06-CV-1791-T-26MSS, 2007 WL 1296347, at *2 (M.D. Fla. May 1, 2007) (granting motion to dismiss where "[n]ot only is the definition of the class woefully broad and nondescript, but the very heart of the suit, which is premised on acts of fraud, deceit, and trickery specific to each individual Plaintiff, is not cognizable as a class action under Florida law"); *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *3 (S.D. Fla. Sept. 1, 2006) ("[N]o class may be certified that contains members lacking Article III standing.") (citation omitted); *see also supra* at Section III.A.3.

*Similarly*, common issues of law and fact do not predominate across the proposed classes, which include millions of voters who donated to the DNC or the Sanders Campaign—or associate with the Democratic Party—for reasons that had nothing to do with Plaintiffs' theories. But Rule 23 binds everyone who comes within a class definition, unless they affirmatively opt out. Fed. R.

---

[5] Plaintiffs allege that "[c]ommon questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes," FAC ¶ 180, which mirrors the language of Rule 23(b)(3).

Civ. P. 23(c)(2)(B)(v); *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1282 (S.D. Fla. 2012). Requiring tens of millions of people to opt out would not only present an avalanche of management issues, *see* Fed. R. Civ. P. 23(b)(3)(D), it would compel the dissenters to engage in political speech, violating their First Amendment rights. Moreover, should the litigation result in harm to Defendants (e.g., a monetary judgment requiring the DNC to "disgorge" contributions), individuals who support them will not be able to protect them against the harm done in their name. *See Lehnert et. al., v. Ferris Faculty Assoc.*, 500 U.S. 507, 519-24 (1991) (rejecting argument that employees who dissented from collective bargaining could be charged for lobbying expenses because that would compel them to engage in core political speech with which they disagree).

*Further*, even if the class definitions were narrowed to include, for example, only individuals who claim to have donated to the Sanders Campaign or the DNC based on statements of neutrality, the class is not ascertainable, because "each plaintiff's reliance on the defendant's deceptive acts is essential to a fraud claim because it ensures that, for liability to arise, the 'requisite causal connection between a defendant's misrepresentation and a plaintiff's injury' exists as a predicate for liability." *Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684, 691 (S.D. Fla. 2008) (quoting *Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 552 U.S. 148, 158 (2008)). Determining whether each class plaintiff actually relied on Defendants' statements or omissions would require individual depositions and discovery and would result in "a series of mini-trials and defeat the purpose of class action treatment." *Karhu v. Vital Pharm., Inc.*, No. 14-11648, 621 F. App'x 952, 947 (11th Cir. 2015); *see also Black Diamond Props., Inc. v. Haines*, 940 So.2d 1176 (Fla. 5th DCA 2006) (reversing order of class certification in fraud-based complaint because common  issues of fact could not predominate).[6]

---

[6] In any case, defendants are entitled to test the basis for each plaintiffs' claims, but individual discovery would be particularly necessary here, not only because Plaintiffs' theory presupposes that each class member donated or otherwise associated with the party based on some action of Defendants, but also because the political nature of this action makes it particularly likely that individuals may manufacture injuries to pursue their own political vendetta. *See supra* at Section III.A.2 (discussing proposed class representative Mr. Lynch, who donated money to the DNC in order to participate in this lawsuit). *See also* Ex. K.

*Finally*, although Plaintiffs have failed to identify which state's laws they seek to apply, the proposed class representatives hail from at least 46 different jurisdictions. *See generally Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1024 (11th Cir. 1996) (stating "scrutinizing [claims] under the provisions of fifty jurisdictions complicates matters exponentially"), *abrogated on other grounds as recognized by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011). As the party seeking certification of a nationwide class with claims implicating the laws of multiple states, Plaintiffs bear the burden of convincing the Court that common issues predominate over the different questions posed by each state's law. *See, e.g.*, *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *7 (S.D. Fla. Nov. 3, 2014); *Karhu v. Vital Pharms., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *8 (S.D. Fla. Mar. 3, 2014); This is an impossible burden to carry here, where individualized issues of law or fact clearly overwhelm common issues.

## IV.    CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed in its entirety with prejudice. Plaintiffs' failures in pleading are systemic and not curable by amendment. In the alternative, should any portion of the Complaint survive, the putative class allegations should be stricken.

Dated:  September 21, 2016                    Respectfully submitted,

*s/ Gregg D. Thomas*
Gregg D. Thomas
Florida Bar No.: 223913
601 South Boulevard P.O. Box 2602 (33601)
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
gthomas@tlolawfirm.com

*s/ Elisabeth C. Frost*
Marc E. Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Graham Wilson (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)

Ruthzee Louijeune (admitted *pro hac vice*)
PERKINS COIE LLP
700 13th Street, N.W. , Suite 600
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
bspiva@perkinscoie.com
gwilson@perkinscoie.com
efrost@perkinscoie.com
rlouijeune@perkinscoie.com

*Attorneys for Defendants*

_____

**CERTIFICATE OF SERVICE**
_____

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss was

served by CM/ECF on September 21, 2016 on all counsel or parties of record on the service list.


*s/ Gregg D. Thomas*
Attorney


**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:16-CV-61511-WJZ

| | |
|---|---|
| CAROL WILDING, et al., | |
| Plaintiffs, | |
| v. | |
| DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE, et al., | |
| Defendants. | |

## SERVICE LIST

Jared H. Beck
Elizabeth Lee Beck
Email: jared@beckandlee.com
Email: elizabeth@beckandlee.com
BECK & LEE TRIAL LAWYERS
12485 SW 137th Ave., Suite 205
Miami, FL 33186
Tel: 305-234-2060
Fax: 786-664-3334

Antonio Gabriel Hernandez
Email: hern8491@bellsouth.net
ANTONIO G. HERNANDEZ P.A.
4 SouthEast 1st Street, 2nd Floor
Miami, FL 33131
Tel: 305-282-3698
Fax: 786-513-7748

Cullin Avram O'Brien
Email: cullin@cullinobrienlaw.com
CULLIN O'BRIEN LAW, P.A.
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Tel: 561-676-6370
Fax: 561-320-0285