UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 16-cv-61511-WJZ

CAROL WILDING, *et al.*, individually,
and on behalf of all those similarly
situated,

       Plaintiffs,

vs.

DNC SERVICES CORPORATION, d/b/a
DEMOCRATIC NATIONAL
COMMITTEE, and DEBORAH
"DEBBIE" WASSERMAN SCHULTZ,

       Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DEFENDANTS'
SECOND MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    ARGUMENT ..................................................................................................2

       A.    This Court Has the Discretion to Deny the Motion Because It Does Not
             Conform to the Page Limitation Requirement of S.D. Fla. L.R. 7.1(c)(2) ..............2

       B.    Because Defendants Raise Issues Outside of the Pleadings, This Court Has
             the Discretion to Defer Consideration of the Issues Until After the
             Discovery Process Is Complete Under Rule 12(d) ...................................................3

       C.    By Failing to Raise the Issues in Their First Motion to Dismiss, Rule
             12(g)(2) Bars All of the Arguments in Their Second Motion to Dismiss,
             Except Those Pertaining to Subject-Matter Jurisdiction .........................................4

       D.    The Court Has Subject-Matter Jurisdiction: the First Amendment Does
             Not Provide Immunity for Individuals to Lie, Cheat and Steal, Whether or
             Not the Acts Are Cloaked in a Veil of "Politics" ...................................................5

             1.    All Three Elements of Article III Standing Are Satisfied Because
                   Plaintiffs Incurred (a) Injuries-in-Fact Which Are (b) Fairly
                   Traceable to Defendant's Conduct and (c) Likely to Be Redressed
                   by a Favorable Decision..................................................................................5

                   a.    Injury-in-Fact ........................................................................5

                   b.    Causal Connection ................................................................6

                   c.    Redressability.......................................................................7

       E.    This Court Should Find That Plaintiffs' Claims Are Well Pled, Aside
             From the Fact That Defendants' Arguments to the Contrary Are Waived
             Under 12(g)(2) ......................................................................................................11

             1.    Plaintiffs Properly Allege Fraud .................................................................12

             2.    Plaintiffs Properly Allege Negligent Misrepresentation...........................13

             3.    Plaintiffs Properly Allege a Violation of the District of Columbia
                   Consumer Protection Procedures Act .........................................................13

             4.    Plaintiffs Properly Allege Unjust Enrichment ...........................................15

             5.    Plaintiffs Properly Allege Breach of Fiduciary Duty ................................15

             6.    Plaintiffs Properly Allege Negligence .......................................................18

       F.    This Court Should Not Adjudicate Plaintiffs' Class Action Claims at This
             Stage, Aside From the Fact That Defendants' Arguments Are Waived
             Under 12(g)(2) ......................................................................................................18

III.   CONCLUSION.............................................................................................19

Plaintiffs respectfully file this opposition to the motion to dismiss filed by DNC Services Corp. d/b/a the Democratic National Committee ("DNC") and former DNC Chairperson, Congresswoman Debbie Wasserman Schultz (the "Congresswoman" and together with DNC, "Defendants") [Dkt. Nos. 44-47].  Accordingly, Plaintiffs state as follows:

## I.   INTRODUCTION

Senator Bernie Sanders' 2016 presidential campaign shattered fundraising records, receiving approximately seven million unique donations.[1]  The ability to raise a vast quantity of monetary contributions from individuals across the United States rested on the belief that Senator Sanders was competing in a fair and unbiased Democratic Party nominating process.  In reality, while Defendants were actively assuring the public they were being "impartial" and "neutral" with respect to the field of candidates and in accordance with the DNC's Charter, internal DNC files have now come to light showing they were secretly working behind the scenes to elevate Secretary Hillary Clinton to the nomination while undermining her main opponent, Senator Sanders.  This lawsuit seeks to hold Defendants accountable for the harm caused by their fraudulent and deceptive conduct, as well as for Defendants' failure to secure the sensitive personal and financial information of the DNC's own donors.

If this were a case involving over $228 million[2] paid by more than 2.5 million individuals[3] as a result of a for-profit corporation's fraudulent scheme, there would be no serious argument that the victims lacked standing, or that the company's free speech or associational rights precluded any attempt to seek judicial redress.  Just because the monetary damages consist

---

[1]    *See* Brian Hanley, "Bernie Sanders Received More Individual Campaign Contributions Than Obama's Entire 2008 Campaign," **Politico** (Apr. 12, 2016), *available* at http://www.huffingtonpost.com/brian-hanley/bernie-sanders-has-alread_b_9671406.html    (last visited Oct. 2, 2016).

[2]    Senator Bernie Sanders' campaign for the Democratic nomination raised $228,178,982. *See* Summary for Bernie Sanders, <u>Candidate Summary, 2016 Cycle</u>: Fundraising Details, **OpenSecrets.org**,                              *available*                              at https://www.opensecrets.org/pres16/candidate.php?id=N00000528 (last visited Sept. 26, 2016).

[3]    Nearly 2.5 million individuals donated to the Sanders campaign through ActBlue alone. *See* Shane Goldmacher, "Bernie's legacy: One of the most valuable donor lists ever," **Politico** (June 6, 2016), *available at* http://www.politico.com/story/2016/06/bernie-sanders-actblue-donor-lists-223964.

largely of donations made to a political campaign, and the fraudulent scheme is one perpetrated by a non-profit corporation charged with governing a national political party, the analysis should not be altered in any material respect.

Boiled to its essence, the salient premise behind Defendants' motion is that those engaged in "political" activities have a First Amendment-derived immunity to say and do as they wish, thus making them impervious to judicial scrutiny.   That is simply not true.  None of the cases Defendants cite remotely support such a sweeping proposition or immunity.

As explained below, there is no First Amendment or other bar to holding Defendants legally accountable for their misconduct, which resulted in real and economic harm to Plaintiffs and the proposed class members.  To the contrary, it is well-settled that fraudulent fundraising is actionable and not protected by the First Amendment. *See*, *e.g.*, *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 624 (2003) (holding there is no First Amendment bar to maintaining fraud actions against charitable fundraisers based on false or misleading representations designed to deceive donors).  As will be discussed in detail, Plaintiffs have stated six viable causes of action against Defendants.

In addition, the substantive flaws underlying Defendants' motion are compounded by serious procedural defects. The motion violates the page limitation requirement of Southern District of Florida Local Rule 7.1(c)(2).  The motion raises issues outside of the four corners of Plaintiffs' operative complaint, thus requiring resolution of the issues at the summary judgment stage under Federal Rule of Civil Procedure 12(d).   And Rule 12(g)(2) bars nearly every argument raised in the motion since Defendants failed to present these issues in their first motion to dismiss.  This Court has discretion to deny the motion outright on account of the procedural defects alone.

Accordingly, for the reasons more fully stated herein, Plaintiffs ask this Court to deny Defendants' motion to dismiss on substantive grounds, procedural grounds, or both.

## II.   ARGUMENT

### A.   This Court Has the Discretion to Deny the Motion Because It Does Not Conform to the Page Limitation Requirement of S.D. Fla. L.R. 7.1(c)(2)

"Local rules serve more than a technical purpose and litigants ignore them at their own peril." *United States v. Marder,* No. 1:13-cv-24503-KMM, 2016 WL 1614405, at *4 (S.D. Fla. Apr. 22, 2016).  To wit, S.D. Fla. L.R. 7.1(c)(2) provides, in pertinent part:

> (2) *Length*. Absent prior permission of the Court, neither a motion and its incorporated memorandum of law nor the opposing memorandum of law shall exceed twenty (20) pages; a reply memorandum shall not exceed ten (10) pages. Title pages preceding the first page of text, signature pages, certificates of good faith conferences, and certificates of service shall not be counted as pages for purposes of this rule. Filing multiple motions for partial summary judgment is prohibited, absent prior permission of the Court.

Defendants violated this rule and did not seek prior court permission to do so.

Here, Defendants' memorandum of law [Dkt. No. 44] is numbered to page 20, but incorporates a 6-page "Table of Authorities," which is not excluded from the page count by the express terms of the rule.  *See*, *e.g.*, *Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-61485, 2011 WL 13096542, at *1 (S.D. Fla. Nov. 23, 2011) ("excluding the title page, table of contents, and certificate of service pages").  Accordingly, this Court has the authority to strike the motion to dismiss in its entirety. For instance, in *Porter v. Collecto, Inc.*, No. 14–21270–CIV, 2014 WL 2612317, at *1 (S.D. Fla. June 11, 2014), the court assessed the party's violation of the page limitation bar in Local Rule 7.1(c)(2) as follows: "Plaintiff was free to seek permission to file a brief that exceeded the page limitation prior to filing or to file a brief that complied with the local rules. Plaintiff elected neither of those options and must bear the consequences of his decision." *Id*. at *2. The *Porter* court went on to strike the filing. *Id*. at *1-*3.  Particularly since this is Defendants' second motion to dismiss, Plaintiffs respectfully ask this Court to exercise its discretion to strike the motion in its entirety.

Alternatively, this Court has the discretion to truncate Defendants' motion to dismiss to the first 20 pages.  *See*, *e.g.*, *U.S. v. Solomons*, No. 06-80733-CIV, 2007 WL 2904144, at *1 (S.D. Fla. Oct. 3, 2007) ("As a result of these violations, this Court has disregarded any additional pages submitted in violation of the Local Rules."); *Blue Marine Shipping Mexico S.A. De C.V. v. QV Trading LLC*, No. 10–60833–CIV, 2011 WL 832035, at *1, n.1 (S.D. Fla. Mar. 3, 2011) ("Plaintiff's Reply in Support of its Motion for Summary Judgment [DE 40] violates Local Rule 7.1(c)(2) because it is more than 10 pages. The Court will not consider the arguments made beyond page 10 of that document.").

**B.** **Because Defendants Raise Issues Outside of the Pleadings, This Court Has the Discretion to Defer Consideration of the Issues Until After the Discovery Process Is Complete Under Rule 12(d)**

Rule 12(d) provides, in pertinent part:

> (d) *Result of Presenting Matters Outside the Pleadings*. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Defendants invoke Rule 12(d) by introducing evidence beyond the four corners of the complaint.

Accordingly, this Court has the discretion to defer consideration of Defendants' motion until the summary judgment stage, after Plaintiffs have been given a reasonable opportunity to conduct discovery. *See*, *e.g.*, *Trustmark Ins. Co. v. ESLU, Inc*., 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."); *Green v. Hill*, 954 F.2d 694, 697 (11th Cir. 1992), *superseded in part on rehearing on other grounds by* 968 F.2d 1098 (11th Cir. 1992) ("A district judge should . . . apply the Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction."). Again, particularly in light of the fact that this is Defendants' second motion to dismiss, Plaintiffs respectfully ask this Court to exercise its discretion under Rule 12(d) to defer ruling.

### C. By Failing to Raise the Issues in Their First Motion to Dismiss, Rule 12(g)(2) Bars All of the Arguments in Their Second Motion to Dismiss, Except Those Pertaining to Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(g)(2) provides, in pertinent part:

> *Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Defendant's motion to dismiss also violates this rule.

Earlier, Defendants chose to file a motion to dismiss under Rule 12(b)(5). [Dkt. No. 9, *et seq*.]. In that motion, Defendants failed to raise the issues now raised in their second motion. Thus, Rule 12(g)(2) bars Defendants from raising these issues now.  For instance, in *GCL, LLC v. Schwab*, No. 11–04593, 2012 WL 4321972, at *3-*4 (E.D. Pa. Sept. 21, 2012), the court held:

> The Defendant raises arguments in his second motion to dismiss that were not raised in the prior motion to dismiss.  The Amended Complaint did not include any additional factual allegation or legal claims and merely added the indispensable parties. Therefore, all of Defendant's arguments were available to him at the time he filed his initial motion to dismiss.

*Id*. at \*3-\*4.  This Court should, therefore, preclude Defendants' motion to dismiss for violating Rule 12(g)(2).

The only applicable exception to the Rule 12(g)(2) bar consists of issues regarding Article III, *i.e.*, subject-matter jurisdiction (which, as explained below, are without merit). Otherwise, Plaintiffs respectfully ask this Court to find that Rule 12(g)(2) bars consideration of and operates to waive the remainder of Defendants' second motion to dismiss.

> ### D.  The Court Has Subject-Matter Jurisdiction: the First Amendment Does Not Provide Immunity for Individuals to Lie, Cheat and Steal, Whether or Not the Acts Are Cloaked in a Veil of "Politics"
>
> #### 1.  All Three Elements of Article III Standing Are Satisfied Because Plaintiffs Incurred (a) Injuries-in-Fact Which Are (b) Fairly Traceable to Defendant's Conduct and (c) Likely to Be Redressed by a Favorable Decision

Through long and unexplained string citations to multiple cases, Defendants attempt to argue that this Court does not have Article III jurisdiction over this case because the elements of standing – injury-in-fact, causal connection, and redressability – are lacking.  But cobbling together dozens of cases interspersed with irrelevant constitutional principles and generic quotes does not result in a workable argument for Defendants.

#### a.  Injury-in-Fact

Plaintiffs who are members of the Sanders Donor Class and the DNC Donor Class have incurred an injury-in-fact, because they paid money, in the form of donations, based on the belief that the Democratic presidential nominating process was fair and unbiased – a belief that was propagated and confirmed by Defendants' misrepresentations and omissions.  "Any monetary loss suffered by the plaintiff satisfies the injury-in-fact element."  *Chevron Corp. v. Donziger*, __ F.3d __, 2016 WL 4173988, \*38 (2d Cir. Aug. 8, 2016); *see also Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury-in-fact.").

In addition, ***all*** Plaintiffs, including those who are members of the Democratic Party Class, have standing because, "[v]iolations of common law rights protected by the common law of property, contract, torts and restitution are sufficient for standing purposes."  *U.S. v. Real Property, All Furnishings Known as Bridwell's Grocery*, 195 F.3d 819, 821 (6th Cir. 1999); *see also Levine v. Nat'l Railroad Passenger Corp.*, 80 F. Supp. 3d 29, 36 (D.D.C. 2015) ("A legally

cognizable interest means an interest recognized at common law or specifically recognized as such by the Congress.") (citations omitted).

Here, the two classes of donors have alleged common-law claims for fraud, negligent misrepresentation, unjust enrichment, and negligence. The Democratic Party Class has alleged a common-law claim for breach of fiduciary duty. These claims supply each of the Plaintiffs with an injury-in-fact adequate for standing purposes.

Moreover, with respect to the DNC Donor Class's claim for negligent failure to secure their sensitive personal and financial information (Count VI), two Circuit Courts of Appeal have specifically held that data breaches engender injury sufficient to confer Article III standing based solely on increased risk of identity theft in the future. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010); *Pisciotta v. Old Nat'l Bancorp* 499, F.3d 629, 634 (7th Cir. 2007). Neither the Seventh Circuit nor the Ninth Circuit held that the plaintiff's information must actually be misused in order for standing to exist. *See Pisciotta*, 499 F. 3d at 634 ("We are not persuaded" by cases concluding that "plaintiffs whose data has been compromised, but not yet misused, have not suffered an injury-in-fact sufficient to confer Article III standing").[4]  The Supreme Court's decision in *Clapper v. Amnesty International*, 133 S. Ct. 1138 (2013), which concerned standing to bring suit in connection with government surveillance operations conducted under the Foreign Intelligence Surveillance Act (FISA), has been expressly distinguished from the federal appellate precedent recognizing standing to sue based on elevated risk of identity theft. *See Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, *4-*5 (N.D. Ill. July 14, 2014).[5]

### b.    Causal Connection

Causation sufficient for standing is also satisfied, because the Plaintiffs' injuries are "fairly traceable" to the Defendants' conduct – whether it is loss of money, invasion of their common-law rights, or increased risk of identity theft in the future, these injuries are attributable

---

[4]    *But see Reilly v. Ceridan Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (rejecting increased risk of identity theft as sufficient injury-in-fact under Article III standing analysis).

[5]    It does not appear the court in *Case v. Miami Beach Healthcare Group, Ltd.*, No. 14-24583-CIV, 2016 WL 1622289, at *1 (S.D. Fla. Feb. 26, 2016), accounted for either *Krottner* or *Pisciotta*.

to the Defendants' failure to conduct the primary process in a fair and evenhanded manner, their misrepresentations/omissions concerning the process and failure to disclose to Plaintiffs that the DNC was working actively for Secretary Clinton and undermining Senator Sanders, as well as their failure to secure the sensitive personal and financial information of the DNC's own donors. There should be little doubt that Plaintiffs have satisfied this element of the analysis, especially given that it is more relaxed than the showing needed to establish proximate cause.  *See Barbour v. Haley*, 471 F.3d 1222 (11th Cir. 2006) ("[F]or purposes of satisfying Article III's causation requirement, we are concerned with something less than the concept of 'proximate cause.'") (citation and internal quotation marks omitted); *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) (collecting cases; "we, like other courts, have noted that, particularly at the pleading stage, the 'fairly traceable' standard is not equivalent to a requirement of tort causation") (citations and internal quotation marks omitted)).[6]

### c.      Redressability

"Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."  *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011).  Here, Plaintiffs in the Sanders Donor Class and DNC Donor Class have suffered financial injury, which can be remedied by a damages award.  Moreover, because the conduct

---

[6]      Defendants assert that Plaintiffs cannot tie their injuries to Defendants' conduct given there were public allegations of their bias for Secretary Clinton during the primary process. Presumably, and more than a little problematically, Defendants are effectively claiming that the Plaintiffs never should have donated to Senator Sanders to begin with in light of the public allegations of bias.  However, to the extent reliance is an element of any of Plaintiffs' claims, and whether or not there may be any disputed issues of fact regarding reliance, such factual issues are plainly not ripe for adjudication on a motion of dismiss.  That said, it should be noted that the Defendants' failure to disclose and active concealment of their own bias (which transpired until and through the time internal DNC documents began leaking into the public domain in June 2016) presents a qualitatively different circumstance than the allegations and statements appearing in news articles and social media cited by Defendants (and found well outside the four corners of the complaint in any event).  Indeed, it seems highly suspect, to say the least, that anyone, much less some 2.5 million individuals or more, would intentionally and willfully give money to a candidate's political campaign while knowing full well that the very organization responsible for running and overseeing the election was actively working against that same candidate.

complained of concerns not just the 2016 primaries but the integrity of the Democratic Party presidential nominating process going forward, Plaintiffs in the Democratic Party Class have standing to seek injunctive relief to redress the real and immediate threat that the DNC will continue to act in violation of its Charter (and its duties to members of the Democratic Party) going forward. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) ("a plaintiff seeking injunctive relief must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future") (internal quotation marks and citation omitted)).

Defendants present an array of "First Amendment concerns" triggered, they say, by the "political context" of the injuries.  [Dkt. No. 44, at p. 10].  But the First Amendment does not allow people to lie, cheat and steal. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, Inc., 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues.").  And this is true regardless of whether the lying, cheating or stealing is being carried out under the pretext of "politics" or the public interest.  *See*, *e.g.*, *Madigan*, 538 U.S. at 624 ("Consistent with our precedent and the First Amendment, States may maintain fraud actions when fundraisers make false or misleading representations designed to deceive donors about how their donations will be used."); *U.S. v. Smith*, 985 F. Supp. 2d 547, 605-606 (S.D.N.Y. 2014) ("Just because this alleged *quid pro quo* arrangement involved political-party officials, they are not entitled to immunity for their actions under the guise of protected speech."); *Nat'l Fed. of the Blind v. F.T.C.*, 420 F.3d 331, 333-334 (4th Cir. 2005) (upholding FTC regulation on "telemarketing practices as they apply to charitable fundraising"); *Gospel Missions of Am., a Religious Corp. v. City of Los Angeles*, 419 F.3d 1042, 1050 (9th Cir. 2005) ("Nor does GMA explain why solicitations by a panhandler, church member or political activist cannot constitutionally be subject to some regulation."); *Cf. Eu v. San Francisco County Democratic Cent. Committee*, 489 U.S. 214, 231 (1989) (collecting cases and holding that "[a] State indisputably has a compelling interest in preserving the integrity of its election process").

The illusory nature of Defendants' theory of First Amendment immunity for "political" conduct is further demonstrated by the litany of cases they cite, all of which are easily

distinguishable by the glaring absence of facts establishing Plaintiffs' standing in the case *sub judice*. To wit,

> **_This is not_** a case about a doctor suing a non-profit research institute with the hope of fishing for "research data allegedly possessed by LPI pertaining to several serious health conditions." *Orient v. Linus Pauling Institute of Science and Medicine*, 936 F. Supp. 704 (D. Ariz. 1996).

> **_This is not_** a case by a private citizen suing the President about a "birther" conspiracy and to enforce "political rhetoric" and "statements of principle and intent in the political realm." *Berg v. Obama*, 574 F. Supp. 2d 509, 528-529 (E.D. Pa. 2008).

> **_This is not_** a case of a taxpayer seeking to prevent an airport project from interfering with its cemetery on account of the city's vague promise to protect taxpayers from "cost[s]." *St. John's United Church of Christ v. F.A.A.*, 550 F.3d 1168, 1170 (D.C. Cir. 2008).

> **_This is not_** a case brought by 16 Congressmen suing the President and other government actors asking a federal court to "declare that Congress is unconstitutionally constraining the President from carrying out his announced policy to support the contras in Nicaragua." *Dornan v. U.S. Sec'y of Def.*, 676 F. Supp. 6, 7 (D.D.C. 1987).

> **_This is not_** a case about the constitutionality of a California law requiring political parties to allow non-party voters to vote in the state's presidential primary. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000).

> **_This is not_** a case about a state law prohibiting primary endorsements by the official governing bodies of political parties. *Eu*, 489 U.S. at 224.

> **_This is not_** a case by opponents of a Presidential candidate suing the FEC for improperly dismissing their administrative complaint alleging that the candidate violated federal campaign laws, where there was no "imped[iment to] the voters from supporting the candidate of their choice," *Gottlieb v. Federal Election Com'n*, 143 F.3d 618, 621-622 (D.C. Cir. 1998).

> **_This is not_** a case asking a federal court to "intervene[e] in the internal determinations of a national political party, on the eve of its convention, regarding the seating of delegates." *O'Brien v. Brown*, 409 U.S. 1, 4 (1972).

> **_This is not_** a lawsuit by a member of the Republican Party against the Democratic Party to preclude the party's loyalty oath requirement, so as to not dilute the general election pool of candidates. *Kelly v. Harris*, 331 F.3d 817, 820 (11th Cir. 2003).

***This is not*** a case against the presidential debate commission seeking to permit more candidates at the debate podium. *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001).

***This is not*** a case against a state governor for using taxpayer money to support a ballot initiative regarding state taxes. *Colo. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1395 (10th Cir. 1992).

***This is not*** a case about how to analyze whether a Fair Credit Reporting Act occurs through "people search engine" results. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1544-1545 (2016).

***This is not*** a case seeking to enjoin state officials from rejecting voter registration forms submitted to the state because they were mailed in a single package. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005).

***This is not*** a case about how the US Secretary of Interior interprets rules regarding the Endangered Species Act of 1973. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992)

***This is not*** a case challenging the Department of Treasury's decision to postpone enforcement of the Affordable Care Act's employer mandate, seeking "enforcement of tax penalties and reporting requirements." *Kawa Orthodontics, LLP v. Secretary, U.S. Dept. of the Treasury*, 773 F.3d 243, 247 (11th Cir. 2014).

***This is not*** a case seeking a federal court's declaration that a state statute is unconstitutional after the state's attorney general already declared it unconstitutional. *Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003).

***This is not*** a case challenging a state's requirement that party delegates vote in accordance with open primary results. *Dem. Party v. Wis. ex. rel. LaFollette*, 450 U.S. 107, 123-24 (1982).

***This is not*** a case about whether state election law trumps a political party's rules in the determination of the qualifications and eligibility of delegates to the party's national convention. *Cousins v. Wigoda*, 419 U.S. 477, 492 (1975).

***This is not*** a case about whether a political party violates an individual's constitutional rights where the individual was deemed ineligible due to missed deadlines required in order to be placed on the presidential primary ballot. *Wolfe v. Arkansas Democratic Party*, No. 4:12CV00314 JMM, 2012 WL 3776476, at *2 (E.D. Ark. Aug. 30, 2012).

***This is not*** a case under the citizen suit provision of the federal Emergency Planning and Community Right–To–Know Act of 1986 on the basis of a

manufacturer's past violations of the law's environmental reporting requirements. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 106-107 (1998).

___**This is not**___ a suit against state actors who purportedly took bribes to issue commercial drivers' licenses to unqualified applicants in order to meet campaign fundraising requirements, alleging injury in the form of an "increased risk of accidents because unqualified drivers have illegally obtained commercial drivers' licenses." *Plotkin v. Ryan*, 239 F.3d 882, 885-886 (7th Cir. 2001).

___**This is not**___ a suit by a private organization challenging a state's order requiring it to accept women as members. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-623 (1984).

In contrast to the facts in Defendants' data dump of cases, Plaintiffs have clear and demonstrable judicially redressable injuries that are fairly traceable to the Defendants' conduct. Accordingly, and for all of the foregoing reasons, Defendants' motion to dismiss based on subject-matter jurisdiction should be denied.[7]

### E. This Court Should Find That Plaintiffs' Claims Are Well Pled, Aside From the Fact That Defendants' Arguments to the Contrary Are Waived Under 12(g)(2)

Plaintiffs should not be required to rebut Defendants' arguments that have been waived under Rule 12(g)(2). As stated above, this Court should reject the arguments on that basis alone.

Plaintiffs will nonetheless explain why their causes of action are properly pled. Furthermore, it is premature to determine which state law(s) will apply until a later stage of the proceedings. *See, e.g.*, *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (collecting cases and stating, "a choice-of-law determination is premature on this motion to dismiss, since the record lacks facts necessary to conduct the context-specific 'center of

---

[7]      In spite of Defendants' own data breach, they also cynically contend that this case somehow cannot go forward as a matter of law because it will force them to disclose membership and donor information. But that is a red herring. Plaintiffs are not seeking the disclosure of donor or membership lists. Upon class certification, adequate safeguards and protocols can be administered to disseminate class notice, including a confidential opt-out process. *See, e.g.*, *Aldapa v. Fowler Packing Co.*, Case No. 1:15-cv-00420-DAD-SAB, 2016 WL 1073252, at *2 (E.D. Cal. Mar. 18, 2016) ("A *Belaire-West* notice is an opt-out notice that is sent to potential class members to inform them of the lawsuit and explain that they can complete and return an enclosed postcard if they do not want to have their contact information sent to plaintiffs' counsel."). Moreover, and as detailed below, it is premature to proscribe the manner in which the class certification process would take place.

gravity' or 'grouping of contacts' analysis required by New York's choice-of-law principles"). And as to class certification, any applicable differences can be managed through subclasses. *See*, *e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) ("[I]f the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate.")[8]; *accord Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud . . .").

Although the choice of law analysis is premature (and the arguments regarding it are waived under Rule 12(g)(2)), for the purpose of this response, Plaintiffs will assume that either Florida or District of Columbia law applies.

### 1.    Plaintiffs Properly Allege Fraud

The elements of Plaintiffs' fraud claims are (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.   *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).   "Fraud also includes the intentional omission of a material fact." *Ward v. Atlantic Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001).   Plaintiffs properly allege such fraud.

Plaintiffs allege that Defendants made specific statements, besides the representations in the DNC charter, that they were ensuring a fair and impartial Democratic Party presidential nominating process. [Dkt. No. 8, ¶¶156-161].   Plaintiffs allege these statements with exacting particularity, quoting from public statements Defendants themselves made. [*Id.*].

Plaintiffs allege that these representations were false since Defendants were secretly conspiring against Senator Sanders' presidential campaign, through various means.  [Dkt. No. 8, ¶¶162-171].  Plaintiffs also allege that Defendants omitted this material fact from Plaintiffs – that Defendants were conspiring against Bernie Sanders' campaign. [Dkt. No. 8, ¶¶162-171] Moreover, Plaintiffs allege that they were materially harmed by the fraudulent statements and omissions by donating money to the DNC, donating money to Bernie Sanders' campaign, and otherwise retaining registration in the Democratic Party.  [Dkt. No.8, ¶¶2-171, 185-190].

---

[8]      *Abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008)

Therefore, although the motion is waived under Rule 12(g)(2), this Court should deny the motion to dismiss Plaintiffs' fraud claim.

### 2.    Plaintiffs Properly Allege Negligent Misrepresentation

The elements of Plaintiffs' negligent misrepresentation claims are:

(1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

*Wallerstein v. Hospital Corp. of America*, 573 So. 2d 9, 10 (Fla. 4th DCA 1990).

As stated above, Plaintiffs allege that that Defendants made specific false statements and omissions, besides the representations in the DNC charter, that they were ensuring a fair and equitable Democratic Party presidential nominating process.  [Dkt. No. 8, ¶¶156-161].  Plaintiffs allege that Defendants knew and ought to have known the statements and omissions were false since they were secretly conspiring against Senator Sanders' presidential campaign, through various means.  [Dkt. No. 8, ¶¶162-171].  Plaintiffs allege that Defendants intended that the Plaintiffs would rely on these representations, which caused Plaintiffs harm.  [Dkt. No. 8, ¶¶2-171, 191-197].

Therefore, although the motion is waived under Rule 12(g)(2), this Court should deny the motion to dismiss Plaintiffs' negligent misrepresentation claim.

### 3.    Plaintiffs Properly Allege a Violation of the District of Columbia Consumer Protection Procedures Act

The purpose of the D.C. Consumer Protection Procedures Act ("CPPA") is "to protect consumers from a broad spectrum of unscrupulous practices by merchants, therefore the statute should be read broadly to assure that the purposes are carried out."  *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 52 (D.C. 2010); *see also District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003) ("A main purpose of the CPPA is to assure that a just mechanism exists to remedy *all* improper trade practices.") (citation and internal quotation marks omitted); *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) ("because it is a remedial statute, the CPPA must be construed and applied liberally to promote its purpose") (citation and internal quotation marks omitted).  In order to achieve its aims, the statute "eliminate[s] the requirement of proving certain elements such as intent to deceive and scienter."  *Saucier*, 64

A.3d at 442 (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 n.20 (D.C. 2008)); *see also Beck v. Test Masters Educ. Servs., Inc.*, 994 F. Supp. 2d 90, 96 (D.D.C. 2013) ("[T]he thrust of the D.C. CPPA is much more liberal than common law fraud claims—no proof of intent is required by the alleging party. Plaintiff must only establish that defendant made a misrepresentation—affirmative or *implied*—to prevail.").

Section 28-3904 of the D.C. Code defines various acts as violations of the CPPA, stating that "It shall be a violation of this chapter, ***whether or not any consumer is in fact misled, deceived or damaged thereby***, for ***any person*** to [. . .] (e) misrepresent as to a material fact which has a tendency to mislead; . . . (f) fail to state a material fact if such failure tends to mislead." § 28-3904, D.C. Code (2016) (emphasis added). Here, Plaintiffs in the Sanders Donor Class and DNC Donor Class have pled violations of these CPPA provisions, by virtue of Defendants' false representations that they were neutral with respect to the Democratic candidates, as well as their failure to disclose the fact they were conspiring behind the scenes in pursuit of Secretary Clinton's nomination over Senator Sanders.

The CPPA also specifies that a "consumer" may file suit to obtain relief, including damages and injunctive relief. § 28-3905(k), D.C. Code (2016).[9] Under the statute, a "consumer" is defined to include any person who "would purchase . . . or receive consumer goods or services," while "goods and services" is defined to mean "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." §§ 28-3901(a)(2), 28-3901(a)(7), D.C. Code (2016). Here, all Plaintiffs who made their donation payments through ActBlue (which likely comprises the vast majority of Sanders Donor Class and DNC Donor Class members) qualify as "consumers" entitled to bring suit under the CPPA because ActBlue charges a 3.95% fee for "processing" services on each donation. [Dkt. No. 8, ¶¶155].

Moreover, and contrary to Defendants' suggestion, the CPPA does not require a defendant to be in privity with the plaintiff in order for the defendant to be liable under the statute; in other words, the defendant need not be the direct seller of the goods or services to be

---

[9]    The statute also permits the plaintiff to recover reasonable attorneys' fees. *See* § 28-3905(k)(2)(B), D.C. Code (2016).

sued.  Rather, and consistent with its consumer protection purpose, CPPA liability extends to any "person connected with the supply side of a consumer transaction."  *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 104 (D.D.C. 2004) (citation and quotation omitted).  Here, as the persons responsible for overseeing the Democratic primary process, Defendants were "connected with" the supply side of those consumer transactions resulting in donations to the DNC itself as well as to the various Democratic primary candidates in each race, including Senator Sanders. *Cf. Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 174-75 (D.D.C. 2003) (on motion to dismiss, ruling that plaintiffs could sue drug manufacturers under the CPPA even though they purchased the drugs through intermediary pharmacies).

For all of these reasons, and although the motion is waived under Rule 12(g)(2), this Court should deny the motion to dismiss Plaintiffs' claim under the CPPA.

### 4.    Plaintiffs Properly Allege Unjust Enrichment

"In Florida, the essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon Defendant by Plaintiff, (2) Defendant's appreciation of the benefit, and (3) Defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Silver v. Digges*, Case No. 6:06-CV-290-Orl-19DAB, 2006 WL 2024935, at *2 (M.D. Fla. July 17, 2006).

That is exactly what Plaintiffs allege here.  Plaintiffs allege that they conferred a benefit on Defendants, including through monetary donations to the DNC; that Defendants retained these benefits; and that it would inequitable for Defendants to retain the benefits [Dkt. No. 8, ¶¶ 207-11].

Therefore, although the motion is waived under Rule 12(g)(2), this Court should deny the motion to dismiss Plaintiffs' claim for unjust enrichment.

### 5.    Plaintiffs Properly Allege Breach of Fiduciary Duty

"District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied."  *Kemp v. Eiland*, 139 F. Supp. 3d 329, 343 (D.D.C. 2015).  "Whether a fiduciary relationship exists is a fact-intensive question, and the fact-finder must consider 'the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties.'" *Millennium Square Residential Ass'n v. 2200 M Street LLC*, 952 F. Supp. 2d 234, 248-49 (D.D.C. 2013) (quoting *Firestone v.*

*Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996)).  Indeed, at least one court in the District of Columbia has commented on the "broad[]" construction of what constitutes a fiduciary relationship under District of Columbia law as expressed in the following terms:

> [A] fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another . . . .

*Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 46 (D.D.C. 2010) (quoting *Church of Scientology Int'l v. Eli Lilly Co.* 848 F. Supp. 1018, 1028 (D.D.C. 1994)).

Furthermore, under District of Columbia law, "[o]fficers and directors of a corporation owe a fiduciary duty to the corporation and to its shareholders, which requires them to act in good faith in managing the affairs of the corporation." *Wis. Ave. Associates, Inc. v. 2720 Wis. Ave. Co-op Ass'n, Inc.* 441, A.2d 956, 962 (D.C. 1982).  "The fiduciary concept is not limited to stock corporations but applies to membership organizations as well." *Id.* (citing *Post v. U.S.*, 407 F.2d 319, 329 (D.C. Cir. 1968)).  "The directors' fiduciary obligation to a corporation means that they must manage the corporation solely in its best interest, not as a vehicle for promoting their personal beliefs or causes." *Friends of Tilden Park, Inc. v. District of Columbia*, 802 A.2d 1201, 1210 (D.C. 2002).

Other courts have recognized the existence of a fiduciary duty running from an executive officer of a political party to the party and its members.  *See U.S. v. Halloran*, 821 F.3d 321, 339-40 (2d Cir. 2016); *U.S. v. Smith*, 985 F. Supp. 2d 547, 602 (S.D.N.Y. 2014); *see also U.S. v. Margiotta*, 688 F.2d 108, 124 (2d Cir. 1982) ("(t)he county committee (of the Republican Party) and its chairman are . . . trustees of party interests for the registered voters of the party in that county." (quoting *In re Application of Roosevelt*, 160 N.Y.S.2d 747, 749-50 (N.Y. Sup. Ct. 1957) (internal quotation marks omitted))).

Under District of Columbia law, "A breach of fiduciary duty claim requires a plaintiff to allege that the defendant: 1) owed plaintiff a fiduciary duty; 2) the defendant breached that duty; and 3) the breach proximately caused injury to the plaintiff." *Lee v. Bos*, 874 F. Supp. 2d 3, 7 (D.D.C. 2012) (citation and internal quotation marks omitted).  "Such a claim 'is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby.'" *Id.* (quoting *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009)).

Plaintiffs in the Democratic Party Class have properly alleged all of these elements, including the existence of such a fiduciary relationship between themselves and Defendants, and Defendants' breach of those duties.

Plaintiffs allege that they have donated money directly to Defendants, donated money to Bernie Sanders' campaign, and retained registration in the Democratic Party.   Plaintiffs allege that, by virtue of giving Defendants their money and trust in this manner, Defendants owed Plaintiffs a duty to ensure a fair and equitable Democratic party presidential nominee process and to not secretly conspire against Senator Sanders' presidential campaign, through various means. These facts, along with the resulting injuries to Plaintiffs and corresponding illicit benefits accruing to the Defendants, are sufficient to allege the existence of a fiduciary relationship. *Cf e.g.*, *S.E.C. v. DiBella*, 587 F.3d 553, 564-565 (2d Cir. 2009) ("It would be a strange result indeed to conclude that a publicly elected official who controls billions of dollars of public moneys set aside for the benefit of thousands of public employees in Connecticut is not a fiduciary of those funds and has no fiduciary duties as to those funds."); *Town of Poughkeepsie v. Espie*, 402 F. Supp. 2d 443, 453-454 (S.D.N.Y. 2005) ("Neither the existence of a dominant political party nor widespread corruption, if such there were, relieves a Town Board member of his or her fiduciary duty to exercise due diligence in authorizing and conducting municipal business."); *U.S. v. Smith*, 985 F. Supp. 2d 547, 602 (S.D.N.Y. 2014) ("It is certainly conceivable that once Tabone became the Vice Chairman of the Queens County Republican Party, regardless of whether he took an oath of office or signed a contractual agreement, he had a duty, based on the nature of the relationship itself, to act for the benefit of those entities and individuals within the scope of the relation."); *Harding v. Harrington*, 484 N.Y.S.2d 571, 573 (N.Y. Sup. Ct. 1984) ("Members of a political party have a right to nominate presidential electors irrespective of their leaders' view or the success of their leaders' political negotiations; and party officials who have the power to call such a meeting necessary to such purpose have a fiduciary obligation to party members to do so.").

Therefore, although the motion is waived under Rule 12(g)(2), this Court should deny the motion to dismiss Plaintiffs' claim for breach of fiduciary duty.

### 6.      Plaintiffs Properly Allege Negligence

"The elements of a negligence cause of action are duty, breach, causation, and damages. *Paterson v. Deeb*, 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985), *review denied*, 484 So.2d 8 (Fla. 1986).

Plaintiffs in the DNC Donor Class plausibly allege negligence as a result of Defendants' data leaks.   Plaintiffs allege that Defendants had a duty to safeguard Plaintiffs' personal information, breached that duty by not creating adequate safeguards, and Plaintiffs were harmed by the leaking of their private and confidential information.   The merits of Plaintiffs' claims are self-evident.   *See*, *e.g.*, *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 697-698 (2d Cir. 2015) ("It is enough at this stage of the litigation that Neiman Marcus admitted that 350,000 cards might have been exposed and that it contacted members of the class to tell them they were at risk. Those admissions and actions by the store adequately raise the plaintiffs' right to relief above the speculative level."); *Krottner*, 628 F.3d at 1142; *Pisciotta*, 499 F.3d at 634.

### F.      This Court Should Not Adjudicate Plaintiffs' Class Action Claims at This Stage, Aside From the Fact That Defendants' Arguments Are Waived Under 12(g)(2)

Even though Plaintiffs should not be procedurally required to rebut Defendants' argument that are waived under Rule 12(g)(2), Plaintiffs will also address why this Court should defer consideration of Rule 23 issues until a motion for class certification is filed and fully briefed.

Courts do not favor advancing class certification determinations where a party has not had the opportunity to brief and present evidence on the issue.   *See*, *e.g.*, *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) ("The question of class certification is generally not addressed on a motion to dismiss."); *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 700 (S.D. Fla. 2014) ("Thus, an order on a motion to strike class-action allegations would, by its very nature, carry more finality and less prospective flexibility than the typical order on a motion for class certification. This lack of flexibility weighs against the general directive for expeditious consideration of certification and supports the notion that motions to strike should be viewed under a stricter standard than the typical Rule 23 motion."); *Gutherman v. 7-Eleven, Inc.*, 278 F. Supp. 2d 1374, 1379 (S.D. Fla. 2003) ("The defendant raises important issues which should be addressed by this court in connection with a motion for class certification."); *In re: Takata Airbag Prods. Liab. Litig.*, 14–24009–CV, 2015

WL 9987659, at *2 (S.D. Fla. Dec. 2, 2015) ("This Court is not compelled to address the motion to strike at this time and finds that to do so would be premature. Therefore, Takata's motion to strike the allegations of a national class is denied."); *Bohlke v. Shearer's Foods, LLC*, No. 9:14–CV–80727, 2015 WL 249418, at *2 (S.D. Fla. Jan. 20, 2015) ("As the Court finds nothing redundant, immaterial, impertinent, or scandalous in Plaintiff's class action allegations, the Motion to Strike Plaintiff's Nationwide Class–Action Allegations is denied.").

Indeed, Rule 23(c)(1)(C) is flexible, allowing class certification (including its denial) to be addressed as the evidence justifies it. *Id.* ("An order that grants or denies class certification may be altered or amended before final judgment."). Some courts have suggested that there is an inherent duty to determine whether a class exists, even when no representative steps forward. *See*, *e.g.*, *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 (11th Cir. 2003) ("[T]he court must go on to decide whether any of the named plaintiffs are qualified to serve as class representative and, if not qualified, whether a member of the class is willing and qualified to serve as class representative.").

In sum, Plaintiffs respectfully ask this Court to defer adjudicating class action issues at this stage, pending a motion for class certification and full briefing thereon.

## III.   CONCLUSION

WHEREFORE, Plaintiff respectfully asks this Court to deny Defendants' second motion to dismiss.

DATED: October 4, 2016

RESPECTFULLY SUBMITTED,


*/s/ Cullin O'Brien*
By: Cullin O'Brien

CULLIN O'BRIEN LAW, P.A.
CULLIN O'BRIEN
Florida Bar No. 597341
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Telephone:    (561) 676-6370
Facsimile:    (561) 320-0285
cullin@cullinobrienlaw.com

[additional counsel on following page]

- 19 -

BECK & LEE TRIAL LAWYERS
JARED H. BECK
Florida Bar No. 20695
ELIZABETH LEE BECK
Florida Bar No. 20697
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Telephone:     (305) 234-2060
Facsimile:      (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

ANTONINO G. HERNANDEZ P.A.
ANTONINO G. HERNANDEZ
Florida Bar No. 164828
4 SE 1st Street, 2nd Floor
Miami, Florida 33131
Telephone:     (305) 282 3698
Facsimile:      (786) 513 7748
Hern8491@bellsouth.net

Counsel for Plaintiffs and the Proposed Classes

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that he filed the foregoing response with the ECF system and served same on counsel for Defendants this October 4, 2016.

/s/ Cullin O'Brien
CULLIN O'BRIEN
Florida Bar No. 0597341
cullin@cullinobrienlaw.com