UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:16-CV-61511-WJZ

CAROL WILDING, et al.,

      Plaintiffs,

  v.

DNC SERVICES CORP., d/b/a
DEMOCRATIC NATIONAL COMMITTEE,
et al.,

      Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

As set forth in Defendants' Motion to Dismiss ("Defs.' Mot.") [DE 44], the First Amended Complaint (the "Complaint" or "FAC") [DE 8] is pervaded with jurisdictional and substantive defects. Perhaps recognizing this, Plaintiffs fail to respond entirely to several of Defendants' arguments and spend a significant portion of their brief attempting to avoid consideration of others. *See generally* Pls.' Resp. In Opp. to Mot. to Dismiss ("Pls.' Br.") [DE 48]. But the law does not support Plaintiffs—procedurally or substantively. And a facial examination of the Complaint makes evident that it fails to meet even the most basic requirements necessary to establish jurisdiction or state a claim upon which relief may be granted. Because these deficiencies cannot be remedied by amendment, the Complaint should be dismissed with prejudice.

## I.   ARGUMENT

### A.   Defendants' Motion To Dismiss Comports With the Local and Federal Rules

Plaintiffs' bizarre argument that Defendants' inclusion of a Table of Authorities in their motion caused a violation of S.D. Fla. L.R. 7.1(c)(2) is without merit. In support, Plaintiffs quote language from Rule 7.1(c)(2) excluding "[t]itle pages preceding the first page of text, signature pages, certificates of good faith conferences, and certificates of service" from the page limit, and argue that, because "'Table[s] of Authorities' [are] not excluded … by the express terms of the rule," Defendants' brief is overlong. Pls.' Br. 3 [DE 48]. But also not expressly listed are "Tables of Contents," which Plaintiffs acknowledge are nevertheless excluded. *See id*. Indeed, one of the cases *cited by Plaintiffs* rejected as "totally meritless" an argument that a brief violated Rule 7.1(c)(2) once the "title page, *table of contents*, and certificate of service pages" were added to the text. *Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-61485, 2011 WL 13096542, at *1 (S.D. Fla. Nov. 23, 2011) (emphasis added). It would be illogical to find Tables of Contents excluded, but not Tables of Authorities—which similarly simply assist the Court in navigating the brief. Indeed, Plaintiffs do not cite and Defendants have not been able to find a single case finding Rule 7.1(c)(2) violated because of inclusion of *either* a Table of Contents or Table of Authorities.

Next, Plaintiffs rely on Fed. R. Civ. P. 12(d) to argue that the Court should "defer consideration" of the motion until after discovery, converting it to a motion for summary

judgment, because it "raise[s] issues outside of the pleadings." Pls.' Br. 3-4. But Rule 12(d) only applies to motions brought under Fed. R. Civ. P. 12(b)(6) and 12(c). The materials "outside the pleadings" cited in Defendants' motion relate to arguments that the Court lacks jurisdiction, brought under Fed. R. Civ. P. 12(b)(1). It is impermissible to convert such a motion to one for summary judgment. *See Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Bischoff v. Osceola Cnty., Fla.*, 222 F. 3d 874, 878 n.4 (11th Cir. 2000) (citing *Haase v. Sessions*, 835 F.2d 902, 906-08 (D.C. Cir. 1987)); *see also Haase*, 835 F.2d at 903, 906. Moreover, Defendants' jurisdictional arguments are not dependent on external evidence which, where cited, supports the argument that the Complaint should be dismissed *with prejudice*, because Plaintiffs cannot amend it to cure these pleading defects—at least not while complying with Fed. R. Civ. P. 11(b). *See* Defs.' Mot. 8-9.[1]

In their last effort to avoid review of their facially deficient Complaint, Plaintiffs argue the Court should not consider any of Defendants' arguments other than for lack of subject matter jurisdiction, contending Defendants "waive[d]" their failure-to-state-a-claim arguments by not making them in their successful motion to quash. Pls.' Br. 4-5. But Plaintiffs cite no authority for finding a "waiver" of these arguments, which are governed by Rule 12(b)(6) and not waivable under the express terms of the Rule. *See* Fed. R. Civ. P. 12(h). There is a Circuit split as to whether Rule 12(g)(2) bars a successive *pre*-Answer motion under Rule 12(b)(6), in which the Eleventh Circuit has yet to take a side.[2] Under the present circumstances, this Court need not do so either.

---

[1] A Facebook post by Sean Lynch, one of the six "DNC class" plaintiffs, FAC ¶ 176, stating he "donated three bucks to [the DNC] so [he] can participate in" this lawsuit, is also cited in the section addressing the clear infirmities with the Complaint's class action allegations, but that argument also does not depend on this evidence, which is presented there to illustrate the obvious point that Defendants are entitled to seek discovery of each plaintiff in any case, but in a case such as this—where there is unique motivation to manufacture injuries to pursue a political agenda—such discovery is particularly critical. Defs.' Mot. 19 n.6 & Frost Decl., Ex. K.

[2] *Compare Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012), *with Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 702-03 (10th Cir. 2014). Moreover, applying Rule 12(g)(2) to bar a 12(b)(6) motion following a successful motion to dismiss for lack of jurisdiction would seem to conflict with well-established precedent that a court lacks power to decide a matter unless and until it has jurisdiction. *See, e.g.*, *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law" and without it "the only

*First*, Plaintiffs acknowledge that the Court can and should decide Defendants' jurisdictional arguments now, Pls.' Br. 5, and the Federal Rules expressly permit Defendants to make their failure-to-state-a-claim arguments by filing a Rule 12(c) motion for judgment on the pleadings as soon as they file an Answer, *see also* Fed. R. Civ. P. 12(g)(2) (incorporating Rule 12(h)(2)); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). Thus, the most that the Federal Rules would permit is *delaying* consideration of the failure-to-state-a-claim arguments until after an Answer is filed (provided the Complaint is not dismissed on jurisdictional grounds). Plaintiffs' approach would *require* piecemeal adjudication of the Complaint's deficiencies. This is exactly the type of case where, even if the Rule applied, it would be appropriate to decide the motion in its entirety to "better serve" the Rule's purpose of "eliminating unnecessary delay at the pleading stage." *Carelogistics, LLC v. Catholic Health Partners*, No. 1:13-CV-1929-WBH, 2014 WL 12543912, at *2 (N.D. Ga. July 30, 2014) (quotation marks and citations omitted).

*Second*, far from "fail[ing] to raise the issues now raised" in the motion to quash, Pls.' Br. 4, Defendants moved in the alternative for an order extending their time to file the *exact motion* that Plaintiffs now claim is impermissible. Defs.' Mot. to Quash 10-13 [DE 11]. Plaintiffs stated no objection, under Rule 12(g)(2) or otherwise, instead responding that the Court has "broad discretion" to grant the request. Pls.' Resp. In Opp. to Mot. to Quash 9-10 [DE 24]. Plaintiffs' about-face is pure litigation gamesmanship.[3] Defendants have little doubt that if they had, instead, filed the motion presently before the Court but *only* included jurisdictional arguments and then, if

---

function remaining to the court is that of announcing the fact and dismissing the cause") (citation omitted); *Cichocki v. Mass. Bay Cmty. Coll.*, No. CV 15-10663-JGD, 2016 WL 1239236, at *6 (D. Mass. Mar. 29, 2016) (holding motion to dismiss was premature before plaintiffs failed to effectuate service); *see also* Court Order (noting since "dismissal is not appropriate at this stage …. the Court construes Defendants' Motion (DE 9) as a Motion to Quash") [DE 25].

[3] Moreover, the motion to quash was only filed after Plaintiffs' counsel refused to accept Defendants' counsel's repeated offers to accept service, which would have obviated any need to litigate the service issue. *See* Defs.' Mot. to Quash 14-15; Defs.' Reply In Supp. of Mot. to Quash 10 n.11 [DE 26]. Upon receipt of the order granting the motion to quash, Defendants' counsel again offered to accept service. As a result, the motion now pending before the Court was filed only one week after it would have been filed had the request for an extension been granted.

unsuccessful, filed a Rule 12(c) motion to dismiss for failure to state a claim, Plaintiffs would have argued that Defendants "failed to exercise due diligence or … asserted the defense for dilatory purposes." *Mathis v. Nationstar Mortg., Ltd.*, No. 12-0386-WS-N, 2012 WL 6162233, at *3 (S.D. Ala. Dec. 11, 2012) (quotation marks and citation omitted). The Court should reject Plaintiffs' attempt to avoid prompt scrutiny of the Complaint, in favor of the efficient and fair disposition of these questions, now fully briefed and ripe for decision.

**B.     Plaintiffs Have Failed To Demonstrate The Court Has Subject Matter Jurisdiction**

It is "axiomatic" that Plaintiffs bear the burden of alleging facts demonstrating that each of the necessary elements of Article III standing are present. *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The standing inquiry "'requires careful judicial examination of a complaint's allegations to ascertain whether the *particular* plaintiff is entitled to an adjudication of the *particular* claims asserted.'" *Id.* at 1205-06 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)) (emphases added). For the reasons previously discussed, Plaintiffs fall woefully short of meeting this threshold. *See* Defs.' Mot. 4-12.

Plaintiffs' response only serves to highlight the Complaint's inadequacies. For instance, Plaintiffs assert that "members of the [Donor Classes] have incurred an injury-in-fact because they … [made] donations, based on the belief that the Democratic presidential nominating process was fair and unbiased," a belief they say was "propagated and confirmed by Defendants' misrepresentations and omissions," and that "*all* Plaintiffs … have standing" based on allegations of "violations of common law rights protected by the common law of property, contract, torts and restitution." Pls.' Br. 5. But even if such theories could give rise to *cognizable* injuries-in-fact (and for the reasons discussed in Defendants' motion, they cannot), the Complaint fails to identify a *single* plaintiff who actually claims to have suffered the injuries Plaintiffs describe. The Complaint's description of each named plaintiff states simply that they donated to the DNC or the Sanders Campaign, or are registered Democrats, but provides no further information about the injuries they are individually alleged to have suffered. *See* FAC ¶¶ 2-151; Defs.' Mot. 3-4, 8.

Plaintiffs concede as much in their response, in which their standing argument is

-4-

remarkable for its lack of a single citation to the Complaint. Pls.' Br. 5-11. Instead, they make generic assertions about injuries to "Plaintiffs" generally, and even appear to argue they are under no obligation to plead concrete, particularized injuries tied to named plaintiffs, stating "it seems highly suspect … that anyone … would intentionally and willfully give money to a candidate's political campaign" if they knew Defendants were biased toward another candidate as alleged. *See id*. at 7 n.6. But this type of speculative, abstract allegation of injury to an unidentified person does not meet Article III's standing requirements. As the Eleventh Circuit has repeatedly emphasized, it is "not enough that 'the … complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements.'" *Elend*, 471 F.3d at 1206 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000)); *see also Griffin v. Duggar*, 823 F.2d 1476, 1482-83 (11th Cir. 1987) ("Under elementary principles of standing …. each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."). Nor may the Court "speculate concerning the existence of standing … or piece together an injury sufficient to give plaintiff standing when it has demonstrated none." *Miccosukee Tribe*, 226 F.3d at 1229-30. Because Plaintiffs fail to meet even this most basic of burdens to sustain any of the claims alleged, the Complaint must be dismissed for lack of jurisdiction. *See id*.

Given Plaintiffs' failure to allege any concrete individualized injury, the Court need not consider the matter any further. Nevertheless, Defendants briefly address a few of the other incorrect assertions made in Plaintiffs' response. For instance, Plaintiffs' contention that a monetary loss in and of itself is always sufficient to support standing, Pls.' Br. 5, is incorrect. Indeed, the cases cited by Plaintiffs demonstrate as much. *Chevron Corp. v. Donziger*, -- F.3d --, 2016 WL 4173988, at *38 (2d Cir. Aug. 8, 2016), reaffirms the well-established principle that to meet the injury-in-fact requirement, plaintiffs must suffer "an invasion of a legally protectable interest." There, the plaintiffs suffered monetary losses stemming from liability from a foreign court's judgment, plainly a legally protectable interest. *Id*. at *38-40. In *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005), the plaintiffs were automobile franchisees who

alleged to have suffered monetary loss as a result of Ford's implementation of an incentive program that required them "to spend money against their will to comply with its certification requirements." *Id*. at 288-90. Plaintiffs fail to explain why these cases are comparable here, where the injuries they allege are based on voluntary political donations purportedly made "in reliance on" an internal party rule stating "the Chairperson shall exercise impartiality and evenhandedness as between the Presidential candidates and campaigns," FAC ¶ 159, and statements to the press that the party was committed to running a "neutral" or "impartial" primary process, *id*. ¶ 160.[4]

Plaintiffs fail to address, in any meaningful way, the authority discussed in Defendants' motion, pursuant to which courts have uniformly rejected attempts to litigate on the basis of purported political promises, including "statements of principle and intent in the political realm" virtually identical to those at issue here. *Berg v. Obama*, 574 F. Supp. 2d 509, 529 (E.D. Pa. 2008); Defs.' Mot. 5-7. These decisions have not always been explicit in their reasoning, but they reflect the long-standing judicial understanding that, because they inherently raise serious questions of justiciability and threaten core First Amendment rights of political speech and association, "[p]olitical squabbles are not as easily resolved in federal courts as are some other disputes." *Wymbs v. Republican State Exec. Comm. of Fla*., 719 F.2d 1072, 1077 (11th Cir. 1983) (citing *Baker v. Carr*, 369 U.S. 186, 281-85 (1962)); *see also Berg*, 574 F. Supp. 2d at 529 ("[V]oters are free to vote out of office those politicians seen to have breached campaign promises," but "[f]ederal courts … are not and cannot be in the business of enforcing political rhetoric"); *Dornan v. U.S. Sec'y of Def*., 676 F. Supp. 6, 7 (D.D.C. 1987) (holding action based in part on political promise nonjusticiable); *see also O'Brien v. Brown*, 409 U.S. 1, 4-5 (1972); *Irish v. Democratic-Farmer-Labor Party of Minn*., 399 F.2d 119, 120-21 (8th Cir. 1968). This case is no exception.

Indeed, Plaintiffs fail to identify a single case in which a court has found a political party civilly liable for purported violation of an internal party rule—much less a putative class action

---

[4] Defendants reiterate that they dispute Plaintiffs' allegations that the primary process was not neutral or impartial, but recognize that, for the purposes of this motion, the Court must accept Plaintiffs' allegations as true. Thus, the motion to dismiss and this reply address why, even from that vantage point, the Complaint cannot be sustained as a matter of law.

where plaintiffs seek to litigate a party's compliance with its internal rules purportedly on behalf of its members. This is unsurprising, given the grave concerns of justiciability that arise when litigants seek to intervene in internal party affairs by way of the federal courts. *See, e.g.*, *Wymbs*, 719 F.2d at 1082-83 ("The controversy … is a disagreement over a pure question of internal Republican Party policy. The Supreme Court has held that 'it is not for the courts to mediate the merits of [such a] dispute'") (quoting *Democratic Party v. Wis. ex. rel. LaFollette*, 450 U.S. 107, 123-24 (1981)) *see also* Defs.' Mot. 19. Applying this line of cases, the Eleventh Circuit has indicated that it is likely that a federal court may not even "define the constituency of a national political party" (posing a serious problem for Plaintiffs' "Democratic Party Class" claims), much less involve itself in the self-governance and self-expression of the party. *Wymbs*, 719 F.2d at 1084. This is because "'[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents.'" *Id*. (quoting *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975)). Here, that interference is glaringly evident from the face of the Complaint, whereby Plaintiffs purport to litigate on behalf of all DNC and Sanders donors and "all registered Democrats," including millions who cannot be credibly assumed to endorse or support Plaintiffs' position or their tactics.

Plaintiffs fail to address another fundamental flaw that goes directly to whether Defendants' alleged "breach" of a "duty" can be judicially identified and remedied—both threshold questions the Court must answer in the affirmative to find this matter justiciable. *See Wymbs*, 719 F.2d at 1076. Plaintiffs' response confirms that their theory of injury presupposes that Defendants' purported lack of neutrality had a negative impact on their preferred candidate's election prospects. To wit, Plaintiffs acknowledge that Senator Sanders was wildly successful at fundraising, but contend Defendants "were secretly working behind the scenes to … undermin[e]" him and "elevate" his opponent. Pls.' Br. 1. Yet, Plaintiffs make no attempt to address the line of cases that establish that voters do not suffer cognizable injury based either on "a diminution in their ability to influence the political process" or a contention that their preferred candidate was put at a disadvantage, because such theories "rest[] on gross speculation and [are] far too fanciful

to merit treatment as an 'injury in fact.'" Defs.' Mot. 7 (quoting and citing cases). Indeed, Plaintiffs' theory proves this point. It is impossible for Plaintiffs to prove (or for the Court to determine, by any judicially manageable standards) either that Senator Sanders' impressive fundraising was attributable to Defendants' purported neutrality, or that Defendants' alleged violation of an internal rule regarding neutrality had a measurable impact on the outcome of the election. Such unverifiable theories are entitled to no deference and plainly cannot establish Article III standing. *See, e.g.*, *Clinton v. City of N.Y.*, 524 U.S. 417, 434 n.23 (1998) (discussing cases where court found theory of injury too attenuated to confer standing); *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) (holding burden of demonstrating standing "cannot be satisfied by purely conclusory allegations" and "must be something more than an ingenious academic exercise in the conceivable") (quotation marks and citation omitted).

Defendants' motion laid out the myriad reasons why Plaintiffs also cannot satisfy Article III's redressability prong, including that the relief that they request would do severe damage to Defendants', their members', and their adherents' First Amendment speech and associational rights. *See* Defs.' Mot. 10-11; *see also Wymbs*, 719 F.2d at 1081 ("[A]rticle III inhibits a federal court from entertaining any complaint that sets forth a claim that cannot be determined under judicially manageable standards, or seeks relief that cannot be granted, or which, if granted may seriously infringe the constitutional rights of others."). The same is true of Plaintiffs' request for equitable relief, which is fatally flawed not only because it is unsupported by concrete allegations of imminent future harm, *see* Defs.' Mot. 5, but also because it ignores that the DNC may, within its First Amendment rights, chose to amend its rules to eliminate the provision upon which Plaintiffs' theory relies. As such, Plaintiffs' request for "declaratory and injunctive relief declaring illegal and enjoining … Defendants' violation of and failure to follow the Charter and Bylaws of the Democratic Party," FAC ¶ 229, presents "a classic example of" a "[j]udgment that neither creates relief nor binds the parties to the court's will," which "is not a judgment that an article III court may render." *Wymbs*, 719 F.2d at 1085.

### C.     Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted

For reasons previously stated, Plaintiffs also fail to plead a claim upon which relief may be granted. *See* Defs.' Mot. 12-17. In response, Plaintiffs do little more than double down on their original improper approach. Defendants expand on just a few of these issues here.

First, Plaintiffs do not address the argument that the Complaint's generic allegations against "Defendants" are insufficient to state a claim. *See id*. at 13-14. In particular, Plaintiffs make no effort to explain how any of their claims could be found to be sufficiently alleged against Congresswoman Wasserman Shultz specifically. As such, the Court would be within its power to find the claims against the Congresswoman abandoned. *See, e.g.*, *A1 Procurement LLC v. Hendry Corp.*, No. 11-23582-CIV, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012).

As for their claims for fraud and negligent misrepresentation, Plaintiffs do little more than refer to the generic recitations of the elements of these claims as set forth in their Complaint and a list of quotes in press articles stating that the DNC's primary process is "neutral" or impartial." *See* Pls.' Br. 12, 14. But these allegations are plainly insufficient, not least of all because the Complaint fails to identify even one named plaintiff who claims to have been aware of these statements, much less relied upon any to their detriment, but also because such reliance would have been unreasonable. *See* Defs.' Mot. 15. Moreover, the Complaint utterly fails to plead the basis for Plaintiffs' contention that any such statements were intended to induce individuals to donate to the DNC, much less the Sanders' Campaign, or otherwise take any legally cognizable action as registered Democrats. *See Medine v. Wash. Mut., FA*, 185 F.R.D. 366, 368-70 (S.D. Fla. 1998) (finding plaintiffs stated claim for fraud where alleged entities engaged in a marketing scheme that induced specific, targeted customers to invest in mutual funds they would not have purchased otherwise); *cf. McGee v. JP Morgan Chase Bank, NA*, No. 12–10472, 520 F. App'x 829, 832 (11th Cir. 2013) (plaintiffs could not prove alleged misrepresentation was "a substantial factor in determining the course of conduct that result[ed] in [their] loss" and stating that a "[t]hreadbare recitation" of the reliance element of a negligent misrepresentation claim, with no more, was insufficient to prove reliance) (citations and quotation marks omitted).

In attempting to remediate their CPPA claims, Plaintiffs construct a novel theory whereby a political party and its chair could be held liable under an Act that, by its terms, applies *only* to consumer-merchant relationships, if individuals make unsolicited political donations through a third party that charges a transaction fee. *See* Pls.' Br. 13-15. Plaintiffs cite no remotely analogous authority to support this theory, which is any event barred by *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. Ct. App. 1981), limiting the application of the Act to "the merchant, or another merchant further along the supply chain." Plaintiffs do not argue Defendants are "merchants" within the meaning of the Act, nor could they. *See* D.C. St. § 28-3901(a)(3).

That Plaintiffs now assert that they allege their claim for breach of fiduciary duty under D.C. rather than Florida law, *see* Pls.' Mot. 15-16, demonstrates how plainly insufficient the Complaint is to fairly apprise Defendants of the claims asserted against them. In any event, the only cases Plaintiffs cite to support their contention that a political party can be deemed a fiduciary are cases grounded in *New York* law, where some courts have taken the unusual step of explicitly recognized a limited fiduciary duty "to the members of their parties, as opposed to the citizenry at large, at least under certain circumstances." *United States v. Smith*, 985 F. Supp. 2d 547, 603 (S.D.N.Y. 2014). None can plausibly support Plaintiffs' claims against Defendants here.

Finally, Plaintiffs' contention that *Case v. Miami Beach Healthcare Grp.*, Ltd., 166 F. Supp. 3d 1315 (S.D. Fla. 2016), did not account for the cases upon which Plaintiffs rely to support their negligence claim, *see* Pls.' Br. 6 n.5, is flatly incorrect. *Case* references a footnote in *Resnick v. AvMed, Inc.*, that explicitly refers to the cases that Plaintiffs cite. *See Case*, 166 F. Supp. 3d at 1318 (citing *Resnick*, 693 F.3d 1317, 1323 n.1 (11th Cir. 2012)). Moreover, the *Case* opinion surveyed additional *in-circuit* case law to strengthen its conclusion that speculative harm is insufficient to confer standing alleging injury from a data breach. 166 F. Supp. 3d at 1318. Plaintiffs fail to explain why this Court should find that analysis flawed.

## II.   CONCLUSION

For the reasons set forth in Defendants' motion to dismiss and herein, the First Amended Complaint should be dismissed in its entirety with prejudice.

Dated:  October 14, 2016 Respectfully submitted,

*s/ Gregg D. Thomas*
Gregg D. Thomas
Florida Bar No.: 223913
601 South Boulevard P.O. Box 2602 (33601)
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
gthomas@tlolawfirm.com


*s/ Elisabeth C. Frost*
Marc E. Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Graham Wilson (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
Ruthzee Louijeune (admitted *pro hac vice*)
PERKINS COIE LLP
700 13th Street, N.W. , Suite 600
Washington, D.C. 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
bspiva@perkinscoie.com
gwilson@perkinscoie.com
efrost@perkinscoie.com
rlouijeune@perkinscoie.com

*Attorneys for Defendants*

_____
## CERTIFICATE OF SERVICE
_____

    I HEREBY CERTIFY that a true and correct copy of the foregoing Reply In Support of Motion to Dismiss was served by CM/ECF on October 14, 2016 on all counsel or parties of record on the service list.

                                                          *s/ Gregg D. Thomas*
                                                            Attorney

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:16-CV-61511-WJZ**

| | |
|---|---|
| CAROL WILDING, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>DNC SERVICES CORP., d/b/a<br>DEMOCRATIC NATIONAL COMMITTEE,<br>et al.,<br><br>      Defendants. | |

**SERVICE LIST**

Jared H. Beck
Elizabeth Lee Beck
Email: jared@beckandlee.com
Email: elizabeth@beckandlee.com
BECK & LEE TRIAL LAWYERS
12485 SW 137th Ave., Suite 205
Miami, FL 33186
Tel: 305-234-2060
Fax: 786-664-3334

Antonio Gabriel Hernandez
Email: hern8491@bellsouth.net
ANTONIO G. HERNANDEZ P.A.
4 SouthEast 1st Street, 2nd Floor
Miami, FL 33131
Tel: 305-282-3698
Fax: 786-513-7748

Cullin Avram O'Brien
Email: cullin@cullinobrienlaw.com
CULLIN O'BRIEN LAW, P.A.
6541 NE 21st Way
Ft. Lauderdale, FL 33308
Tel: 561-676-6370
Fax: 561-320-0285

13